## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

BLUEGREEN VACATIONS UNLIMITED, INC., a Florida corporation; and BLUEGREEN VACATIONS CORPORATION, a Florida corporation,

Plaintiffs,

Case No. _____

v.

TIMESHARE TERMINATION TEAM, LLC, a Colorado limited liability company; VINDALOO TRAVEL NETWORK, LLC d/b/a TIMESHARE TERMINATION TEAM a/k/a TIMESHARE TERMINATION TEAM, LLC, a Colorado limited liability company; FREEDOM CONSUMER SERVICES, LLC, d/b/a Timeshare Freedom Group, d/b/a Timeshare Freedom, a Nevada limited liability company; SYSTEMA MARKETING, INC., a Nevada corporation; BRIAN STEPHEN WILBUR, an individual; HOLLY WILBUR, an individual; JORDAN SALKIN, an individual; SHAYNA G. SCHROEDER, an individual; HAROLD O. MILLER, an individual; MICHAEL A. MOLFETTA, an individual; and MOLFETTA LAW, LLC, a California limited liability company,

Defendants.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Bluegreen Vacations Unlimited, Inc. ("BVU") and Bluegreen Vacations Corporation ("BVC") (collectively, "Plaintiffs" or "Bluegreen") sue Defendants, Timeshare Termination Team, LLC and Vindaloo Travel Network, LLC d/b/a Timeshare Termination Team a/k/a Timeshare Termination Team, LLC (collectively, "TTT"), as well as Freedom Consumer Services, LLC d/b/a Timeshare Freedom Group d/b/a Timeshare Freedom ("TFG"), Systema Marketing, Inc. ("Systema"), Brian Stephen Wilbur ("Brian Wilbur"), Holly Wilbur, Jordan

Salkin ("Salkin"), Shayna G. Schroeder ("Schroeder"), Harold O. Miller ("Miller"), Michael A. Molfetta ("Molfetta") and Molfetta Law, LLC ("Molfetta Law") (collectively, "Defendants") for damages and injunctive relief and, in support, state:

## I.   Introduction

1.     This is a case predicated upon Defendants' false advertising and overall unfair, unlawful, and deceptive scheme, which mischaracterizes the nature of Defendants' services while improvidently and tortiously interfering with Bluegreen's contracts with its Bluegreen timeshare owners. This scheme targets Bluegreen, a Florida entity.

2.     Bluegreen is a global leader in the development of timeshare properties.

3.     Individuals who purchase timeshare interests through Bluegreen ("Bluegreen Owners") enter into valid and binding purchase agreements, also referred to as Owner Beneficiary Agreements.

4.     If a Bluegreen Owner obtains financing for their purchase, the Bluegreen Owner may also execute a promissory note ("Note") (the Note, together with the Owner Beneficiary Agreements, collectively referred to as the "Timeshare Contracts").

5.     The Timeshare Contracts control the benefits and obligations of vacation ownership through Bluegreen and the relationship between Bluegreen and the Bluegreen Owners.

6.     Defendants conspire to harm Bluegreen and, in connection therewith, Bluegreen's owners in an unlawful plot further described in detail below.

7.     Defendants are not parties to the Timeshare Contracts between Bluegreen and the Bluegreen Owners; yet, they falsely advertise "timeshare exit services" that purport to "cancel" Bluegreen Owners' Timeshare Contracts.

8.     Defendants misrepresent the nature of Defendants' timeshare exit services. By way of example, the advertisements in which Defendants participate misleadingly claim that the Defendants have a method to legally release the Bluegreen Owner from their Timeshare Contract. Defendants claim that they have the ability to permanently "cancel" the Bluegreen Owner's Timeshare Contract.

9.     Below is a representative sample of such claim on TTT's website:



https://timeshareterminationteam.com/ (December 27, 2020).

10.     Below is a representative sample of such claim on TFG's website

Our team of **timeshare cancellation attorneys and advisors** will get you completely out of your timeshare contract – legally and permanently. We pride ourselves on excellent service, making the process of cancelling your timeshare contract easy and painless.  Get Out of Your Timeshare Contract for good!

https://timesharefreedomgroup.com/ (December 27, 2020).

11.     However, Defendants do not and cannot provide any such legal means of "cancellation".

12.     Indeed, under Florida law, the "cancellation" of a Timeshare Contract is a specific, non-waivable rescission right held by Bluegreen Owners that can only be exercised within a certain time period following the execution of a Timeshare Contract. Fla. Stat. § 721.10.

13.     In truth, the "cancellation" of a Timeshare Contract is not a service that can be advertised, sold, or provided in commerce.

14.     It is inherently false and deceptive to advertise to Bluegreen Owners, who are not within the applicable rescission period, that Defendants can relieve the Bluegreen Owner of all further liability regarding their Bluegreen Timeshare Contracts.

15.     Rather than legally "cancelling" the Bluegreen Owners' Timeshare Contracts, Defendants' scheme is instead designed to and does cause the Bluegreen Owners to stop fulfilling their legally required payment obligations under the Timeshare Contracts.

16.     Once Bluegreen Owners are hooked by Defendants' false and misleading claims, Defendants further direct, persuade, induce, convince, deceive, or otherwise cause the Bluegreen Owners' non-payment of their payment obligations to Bluegreen.

17.     This is often accomplished by luring the Bluegreen Owners into stop making payments to Bluegreen in connection with their Bluegreen timeshare interests by expressing to such Bluegreen Owners that not making the legally required payments will assist in the exit or by soliciting Bluegreen Owners under the false premise that Defendants' service allows the Bluegreen Owner to legally and safely cease payments to Bluegreen.

18.     In order to solicit Bluegreen Owners, Defendants' advertisements create a false narrative that Defendants' services are equivalent to legal representation. In fact, Harold Miller, Michael Molfetta, and Molfetta Law, LLC (the "Lawyer Defendants") do little to nothing for their so-called "clients," often interacting with them very little or not at all, and do not form traditional attorney-client relationships with the Bluegreen Owners.

19.     In fact, the Lawyer Defendants are not paid by the Bluegreen Owners; instead, the Lawyer Defendants receive a flat fee from the other Defendants, who are the ones that actually solicit the Bluegreen Owners.

20.     The Lawyer Defendants are not acting in the Bluegreen Owners' best interests

as a proper lawyer must, but in their own interests and for a cut of the profits of the scheme. Essentially, the Lawyer Defendants are renting out their bar licenses to the conspiratorial scheme, allowing the direct solicitation of Bluegreen Owners for what amounts to illusory legal services.

21.     Ultimately, this scheme and Defendants' procurement of the Bluegreen Owners' non-payment of their Timeshare Contracts results in breach, default, termination of the timeshare interest, and damaged credit, as well as economic losses to Bluegreen.

## II.     Parties, Jurisdiction, and Venue

### A.     Plaintiffs

22.     Plaintiff BVC is a Florida corporation with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431.

23.     Plaintiff BVU is a Florida corporation with its principal place of business located at 4960 Conference Way North, Suite 100, Boca Raton, Florida 33431. BVU is a wholly owned subsidiary of BVC.

### B.     Defendants

24.     Defendant Timeshare Termination Team, LLC ("TTT-1") is a Colorado limited liability company located at 12835 E. Arapahoe Road, Tower 1, Suite 500, Centennial, Colorado 80112. Its registered agent is the Law Office of Paul Miller LLC, located at PO Box 24463, Denver, Colorado, 80224.

25.     TTT-1 was first registered in Colorado effective November 7, 2018, with a designated Colorado Secretary of State ID Number of 20181879681. On December 11, 2020, TTT-1 filed two (2) statements of dissolution, with the first indicating that the company would be immediately dissolved, and the second statement indicating a dissolution effective December 30, 2020.

26.     Defendant Vindaloo Travel Network, LLC d/b/a Timeshare Termination Team a/k/a Timeshare Termination Team, LLC ("TTT-2") is a Colorado limited liability company located at 12835 E. Arapahoe Road, Tower 1, Suite 500, Centennial, Colorado 80112. Its registered agent is the Law Office of Julia M. Knearl, LLC, 945 Front Street, Louisville, CO 80027.

27.     On December 11, 2020, the same day that TTT-1 filed statements of dissolution, TTT-2 (Colorado Secretary of State ID Number 20111523867) changed its name to "Timeshare Termination Team, LLC" effective January 1, 2021.

28.     TTT-1 and TTT-2 (collectively "TTT") should be treated as one and the same entity, with the corporate formalities between them disregarded, as each have operated, in tandem, the tortious scheme described herein, and with both having common ownership.  In fact, these entities are mere instrumentalities of one another, with the purported corporate formalities between the two solely serving as an obvious attempt to avoid liability. As such, all liability attributed to TTT-1 herein must be imposed jointly and severally upon TTT-2 and vice versa.

29.     In the alternative, and at a minimum, TTT-2 is the successor to TTT-1, with TTT-2 having expressly or impliedly assumed the liabilities of TTT-1, these entities having engaged in a defacto merger, using TTT-2 to operate as a mere continuation of TTT-1, with both entities sharing the same trade name ("Timeshare Termination Team"), operating from the same location, and having the same owners/members.

30.     Moreover, with TTT's owners, Brian and Holly Wilbur, aware of multiple separate lawsuits filed against the Lawyer Defendants for their role in the scheme, the impending dissolution of TTT-1 and the name change of TTT-2 serves no legitimate purpose

other than as a fraudulent effort to avoid the clear liability of TTT and its owners, such that all liability attributed to TTT-1 herein must be imposed jointly and severally upon TTT-2, and vice versa.

31.     Defendant Brian Wilbur is a founder and co-owner of TTT-1 and TTT-2. Brian Wilbur resides at 6511 Village Road, Parker, Colorado 80134. As described below, Brian Wilbur has directed and personally engaged in TTT's advertising, and personally selected and met with Miller in Sarasota, Florida in order to facilitate the tortious scheme. Brian Wilbur is responsible for, and personally directs, TTT's mode of operation wherein TTT intends to cause the breach of the Timeshare Contracts.

32.     Defendant Holly Wilbur is a founder and co-owner of TTT-1 and TTT-2. Holly Wilbur resides at 6511 Village Road, Parker, Colorado 80134. As described below, Holly Wilbur has directed and personally engaged in TTT's advertising, and personally selected and met with Miller in Sarasota, Florida in order to facilitate the tortious scheme. Holly Wilbur is responsible for, and personally directs, TTT's mode of operation wherein TTT intends to cause the breach of the Timeshare Contracts.

33.     Both TTT-1 and TTT-2 were founded by Brian Wilbur and Holly Wilbur, who are responsible for the entire sales model of TTT, responsible for the decision to provide illusory legal services, and responsible for TTT's tortious mode of operation which fundamentally misrepresents the nature of TTT's service and causes the breach of the Timeshare Contracts. Brian Wilbur and Holly Wilbur have dominated and controlled TTT to the extent that TTT is indistinguishable from them, who have directed all of TTT's wrongful acts described herein. TTT's corporate form was used for an improper purpose, and that improper purpose caused harm to Bluegreen.  Moreover, Brian Wilbur and Holly Wilbur failed to observe

the corporate formalities between the two entities, failed to adequately capitalize each entity, and used the corporate form and purported corporate formalities between the entities to avoid liability. As such, Brian and Holly Wilbur serve as the alter ego for both TTT-1 and TTT-2, and the corporate veil should be pierced to hold Brian Wilbur and Holly Wilbur individually liable for the conduct of both TTT-1 and TTT-2.

34.     Defendant TFG is a d/b/a of Freedom Consumer Services LLC, a Nevada LLC (which is also d/b/a Timeshare Freedom) and has various locations, including a regional office at 8333 NW 53rd Street, Suite 450, Doral, Florida 33166. It purports to have a principal address located at 23046 Avenida de la Carlota, Suite 600, Laguna Hills, California 92653, though it is not apparently registered to do business in California. TFG's registered agent is Anderson Registered Agents, 3225 McLeod Drive, Suite 110, Las Vegas, Nevada 89121. Raising further suspicion, Freedom Consumer Services, the Nevada LLC under which TFG runs as a d/b/a, lists P.O. Box 4470, Stateline, Nevada as its mailing address on its wire transfers. TFG's website is timesharefreedomgroup.com and is owned and operated by Salkin, whom personally and individually owns TFG's domain name.

35.     Defendant Systema is a Nevada corporation, owned and operated by Salkin. It operates as a sister shell company which is fully interchangeable with TFG – as they are one in the same, with the corporate formalities between them disregarded, as each have operated, in tandem, the tortious scheme described herein, and with both having common ownership. Systema's address on its Nevada LLC filings is listed as P.O. Box 4470, Stateline, Nevada— conveniently the same address as TFG. Systema's registered agent is Nevada Commercial Agents, LLC, 4265 West Nevso Drive, Suites 2 and 3, Las Vegas, Nevada 89103. Systema also utilizes a regional office in Miami-Dade County, located at 8333 NW 53rd Street, Suite 450,

Doral, Florida 33166. In fact, these entities are mere instrumentalities of one another. As such, all liability attributed to TFG herein must be imposed jointly and severally upon Systema and vice versa.

36.     Defendant Salkin is an individual and resident of the State of California who resides in Irvine, California. Salkin is the owner of TFG's domain name and is personally liable for TFG's actions as he is the owner of that domain in his own name. Salkin is the owner of Systema and is personally liable as the owner and chief executive officer of that closely held corporation. Further, he is the owner, decisionmaker and personally directs and controls the actions of both TFG and Systema- again, interchangeable entities that are essentially one and the same.

37.     Defendant Schroeder is an individual and resident of the State of California who resides in Costa Mesa, California. Schroeder was listed as the Treasurer of Systema in 2018 and is currently listed as its President. Schroeder personally runs and manages the day-to-day operations of TFG and Systema, both, to some degree under Salkin's direction, but also through her own individual decision-making power. Schroeder is similarly personally liable for TFG and Systema's actions as she is the President of Systema and, is personally involved in and makes decisions for the day-to-day and regular operations of both TFG and Systema.

38.     Defendant Miller is an individual, residing in Sarasota, Florida, and a member of the Florida Bar, practicing law as a sole proprietorship.

39.     Defendant Molfetta is an individual, an attorney, and resident of the state of California, who resides in California and is licensed and barred as an attorney in the state of California only.

40.     Defendant Molfetta Law is a California law firm and limited liability company.

It is owned and operated solely by Molfetta as a solo practitioner. Molfetta Law is owned and operated by Molfetta and acts as an alter ego for Molfetta.  Molfetta and Molfetta Law are one in the same

41.     A chart showing the links between the Defendants and others in the scheme that is the subject of this litigation is annexed hereto as **Exhibit "1."**

### C.     Subject Matter Jurisdiction

42.     This Court has subject matter jurisdiction over the claims sounding in the Lanham Act alleged herein pursuant to 28 U.S.C. §§ 1331 and 1338.

43.     This Court has subject matter jurisdiction over the claims sounding in state law alleged herein pursuant to 28 U.S.C. § 1367, as the state law claims are so related to the Lanham Act claims that they form part of the same case or controversy.

### D.     Personal Jurisdiction

44.     This Court has personal jurisdiction over Defendants pursuant Fla. Stat. §§ 48.193(1), as Defendants are engaged in business in this state, have committed tortious acts in this state and have and are reaching into and affecting this state and its citizens, including the Florida citizen Plaintiffs, causing injury to residents in this state who suffer such injury in this state, and participating in a conspiracy targeted toward this state.

45.     The Court's exercise of personal jurisdiction over Defendants would not offend the traditional notions of fair play and substantial justice.

46.     Specifically, among other things, as part of this Florida-targeted conspiracy, Defendants intentionally target, interfere with, and cause the breach of, contracts with payment obligations owing to Bluegreen, a Florida-headquartered company. Such payments are due to be made to Bluegreen and the contracts are thereby breached in the state of Florida.

47.     Further, Defendants have sent over 700 sham demand letters to Bluegreen in Florida, purportedly on the Bluegreen Owners' behalf, including on behalf of said owners who reside in Florida and/or purchased a Bluegreen vacation ownership interest in Florida.

48.     Further, as to TTT, TFG, TFG's sister shell company Systema, TFG, TTT's principals, Brian and Holly Wilbur, and TFG and Systema's principals, Salkin and Schroeder (the "Marketing Defendants"), they operate active internet-based operations that do business over the Internet by entering into contracts with residents of the State of Florida and/or soliciting residents of the State of Florida and/or otherwise providing their services to Bluegreen Owners vacationing in the State of Florida through their websites, which involves the repeated transmission of computer files over the Internet and allows Florida residents and Florida visitors to exchange their contact information with a host computer, thus subjecting them to personal jurisdiction in Florida.

49.     The Marketing Defendants have further subjected themselves to this Court's jurisdiction as they have purposefully utilized and selected a Florida attorney, Miller, to perpetuate the scheme.

50.     Moreover, as to TFG, it has also targeted Florida residents by advertising that it maintains at least two (2) offices in the State of Florida.

51.     Additionally, as to Brian Wilbur and Holly Wilbur, they personally selected a Florida attorney, Miller, to execute on TTT's scheme for purposes of sending sham demand letters to Bluegreen. Brian and Holly Wilbur personally traveled to Florida on at least three (3) occasions where they met with Miller near his home in Sarasota, Florida and worked with him in concert to devise the scheme. The customers sent to Miller, including Bluegreen Owners, were further solicited as a result of advertising personally directed and approved by Brian and Holly

Wilbur. Brian and Holly Wilbur were also responsible for wire transfers made between TTT and Miller. As described below, in some instances, Brian Wilbur himself has appeared in videos advertising TTT, which such advertising contained false and misleading statements, and which were directed to or accessible by Bluegreen Owners in Florida.

52.      As another example, Brian and Holly Wilbur orchestrated a paid advertisement for TTT which targeted Florida residents through a local ABC news channel in Tampa, Florida. On or about September 26, 2018, TTT's YouTube page further published this video advertisement (that misleading appears as though it were a genuine news segment, which it is not), and which can be accessed at: https://www.youtube.com/watch?v=ibYM4NFNL3k. Brian Wilbur traveled to Florida to personally appear in this paid advertisement on the local TV show "Tampa Bay's Morning Blend", where he advertised the services of TTT to viewers in Florida, purposefully targeting the Florida market.

53.      As to Miller himself, he is a Florida resident and is subject to personal jurisdiction in Florida based on his participation in the activities described herein. As the remaining Defendants participate in and act in active concert with Miller, they are subject to personal jurisdiction in Florida for the same reasons as Miller and by virtue of their conspiracy.

**E.      Venue**

54.      Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because, as described herein, as a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, Bluegreen is located in the Southern District, TFG advertises that it maintains an office in the Southern District, and certain of Defendants' conduct giving rise to the claims set forth herein (specifically, their repeated sending of sham legal demand letters to Bluegreen) occurred in this District.

**F.      Other**

55.      All conditions precedent to the bringing and maintenance of this action have been performed, were waived, would be futile if attempted, or have otherwise been satisfied or occurred.

56.      Bluegreen has retained the services of undersigned counsel to represent them in this matter and have obligated themselves to pay reasonable attorneys' fees, which are recoverable against Defendants pursuant to 15 U.S.C. § 1117, Fla. Stat. § 501.2105 and as otherwise applicable and appropriate.

**III.   Defendants' Scheme**

57.      As described above, Defendants falsely and misleadingly advertise a "guaranteed" ability to "cancel" timeshare contracts, including the Timeshare Contracts, on behalf of consumers, including Bluegreen Owners.

58.      In fact, Defendants possess no such ability.

59.      Instead, Defendants take large, up-front fees from consumers and then do little or nothing on their behalf other than directing the consumer to stop making payments to their timeshare developers, including Bluegreen, and eventually causing the Bluegreen Owner to default on their timeshare obligations, resulting in termination of the relationship between Bluegreen and the Bluegreen Owners and substantial harm to both Bluegreen and the Bluegreen Owners.

60.      The scheme comprises two main components: (i) the Marketing Defendants, consisting of TTT, TFG, TFG's sister shell company Systema, TFG, TTT's principals, Brian Wilbur and Holly Wilbur, and Systema's principals, Salkin and Schroeder; and (ii) the Lawyer Defendants, consisting of Miller, Molfetta, and Molfetta Law.

**A.      The Marketing Defendants**

61.     The first component of Defendants' conspiracy is a marketing operation which engages in false and/or misleading advertising to lure unsuspecting Bluegreen Owners into Defendants' scheme.

62.     TTT, a marketing company, along with its principals, Brian and Holly Wilbur, constitute one part of the marketing operation.

63.     Brian Wilbur and Holly Wilbur are the masterminds behind TTT's scheme, having personally developed the false narrative regarding TTT's ability to cancel timeshares, and later selecting Miller as the attorney designated to "perform" TTT's illusory legal services.

64.     TFG and Salkin, who controls TFG's domain and website, as well as the businesses and websites utilizing same (as well as sister shell company Systema and their owner Salkin and operator Schroeder), constitute the other part of the marketing operation.

65.     The Marketing Defendants operate through a variety of means, including, without limitation:

      a.     a national webpage—owned by Salkin and operating as TFG—hosted at the domain <timesharefreedomgroup.com>;

      b.     other national websites associated with TFG including TFG's Facebook and Twitter pages;

      c.     a national website operated by TTT hosted at the domain <timeshareterminationteam.com>;

      d.     radio and TV advertisements controlled by TTT;

      e.     false and misleading call scripts and telephone pitches; and

      f.     additional as yet unknown means.

66.     The Marketing Defendants engage in false and/or misleading advertising through

- 14 -

the channels set forth *supra*, which are placed into interstate commerce. Specific false and/or misleading advertisements that the Marketing Defendants place into interstate commerce are set forth in detail below in the False and Misleading Advertisements Section (Section IV).

67.    The marketing arm of the scheme functions as follows: Once a Bluegreen Owner is "hooked" by Defendants' false and/or misleading advertising, the Marketing Defendants enter into a contract with the Bluegreen Owner for the provision of Defendants' fraudulent and illusory services. The Bluegreen Owner is generally charged large sums of money—in the thousands or tens-of-thousands of dollars—which money is improperly split amongst the various Defendants.

68.    The Marketing Defendants instruct, persuade, convince, deceive, trick, direct, and/or otherwise cause the Bluegreen Owner to cease making payments under their Timeshare Contracts to Bluegreen.

69.    There is no legitimate basis for instructing Bluegreen Owners to cease making payments under the Timeshare Contracts. The Marketing Defendants instruct and/or relay to Bluegreen Owners to stop making payment under their Timeshare Contracts with the purpose of causing the Bluegreen Owners to default on their Timeshare Contracts, which causes an unlawful termination of the Timeshare Contracts.

70.    The Marketing Defendants later falsely tell the Bluegreen Owner that the Marketing Defendants were "successful" in "cancelling" the Timeshare Contract when, in reality, the Bluegreen Owner went into default, their interest was unlawfully terminated and the contract breached, damaging the Bluegreen Owner's credit, a result any consumer could obtain for free, and without having to pay Defendants exorbitant fees, by simply refusing to make payments due under the Timeshare Contract.

71. By directing Bluegreen Owners to cease making payments to Bluegreen, the Defendants accomplish several objectives, including but not limited to: (1) persuading prospective customers to sign up with Defendants on the premise that they can safely and immediately cease payments to Bluegreen, and instead pay the Defendants a fee; and (2) the direction to cease payments sets in motion the eventual default, which the Defendants tout as a "success", thereby relieving the Defendants of having to honor their money-back guarantee.

72. In essence, the Marketing Defendants' false and/or misleading advertisements are utilized by the Defendants to divert funds from Bluegreen to Defendants.

73. To lend credibility to the nefarious scheme, and to justify the large up-front fees, the Marketing Defendants further solicit Bluegreen Owners by claiming that they will be providing the services of an attorney.

74. While the Marketing Defendants are not lawyers, and none of the entities which do business as "Timeshare Freedom Group" or "Timeshare Termination Team" are law firms, the Marketing Defendants themselves mischaracterize their service as constituting legal services.

75. Once signed up, the Defendants also instruct the Bluegreen Owners to have no contact with Bluegreen. At the same time, the Defendants utilize the Lawyer Defendants, whom play their own critical role and intentionally targeted role in the scheme, as detailed below, to send form demand letters to Bluegreen that seek to redirect all communication by Bluegreen to its Bluegreen Owners, to the Lawyer Defendants themselves.

76. By cutting off the Bluegreen Owners communications with Bluegreen, the Defendants can more effectively achieve their goal of causing the Bluegreen Owners to go into default, as notice of their delinquency and default is now filtered through the Lawyer Defendants.

77.     Thus, the Marketing Defendants are crucial to the scheme, and in fact, receive the majority of the fees charged to Bluegreen Owners.

**B.     The Lawyer Defendants**

78.     The Lawyer Defendants form the other half of the conspiratorial scheme.

79.     Despite Miller and Molfetta being licensed to practice law in select states, they purport to represent Bluegreen owners located all across the country.

80.     By working with the Marketing Defendants, the Lawyer Defendants have attempted to circumvent prohibitions on lawyers attendant to direct solicitation and fee-sharing, which such prohibitions govern the practice of law.

81.     In return for a flat fee, Lawyer Defendants are expected to do nothing more than lend their name and signature to form letters sent to Bluegreen.

82.     A representative form letter purportedly from Miller is attached hereto as **Exhibit "2.**" A representative form letter purportedly from Molfetta and Molfetta Law is attached hereto as **Exhibit "3."**

83.     These form letters are designed to cut off any communication between Bluegreen and the Bluegreen Owners, and constitutes the entirety of any purported "service" that the Lawyer Defendants perform.

84.     The Lawyer Defendants do nothing more than send a form letter to Bluegreen and then let their purported "clients" default, without any or much communication between the Defendants and their so-called clients or between Defendants and Bluegreen.

85.     Defendants' intent is to facilitate and encourage the Owner's non-payment and prevent contact directly between Bluegreen and the Owners, as the Bluegreen Owner may no longer receive notification of their delinquency.  At that point, Bluegreen is stonewalled from

communicating with its owners and the Bluegreen Owners, whom have been duped and left in the dark, are further victimized by Defendants and, amongst other things, left with their credit damaged.

86.     The submission of the form letter also serves as a false validation of the illusory service, providing the impression that monies paid to the marketing arm of the scheme has resulted in some legal action having taken place on their behalf.

87.     Subsequent to referral of the Bluegreen Owners by the Marketing Defendants to the Lawyer Defendants, it is not Defendants' practice to provide any subsequent litigation services to such Bluegreen Owners. Nor would engagement for such litigation services reasonably be expected based on the amount of the fee that the Marketing Defendants share with the Lawyer Defendants.

88.     In sum, the Lawyer Defendants are an integral part of Defendants' overall scheme, without which the scheme would not and could not function. Because the marketing entities advertise "legal" solutions and the involvement of lawyers, they need a law firm in order to maintain the façade that they are performing a legal function. Miller and through his sole proprietorship, Miller Law, along with Molfetta and Molfetta Law, fulfill that role and receive a portion of the fees charged to Bluegreen Owners.

89.     The Marketing Defendants and the Lawyer Defendants are inextricably intertwined in their joint efforts to reach their goals in the conspiracy and work in tandem.  For example, all of the paperwork that Miller used for his purported clients was created and authored by TFG, with no substantive modification from him.

90.     Systema, at the direction of Salkin and Schroeder, wired payments to Miller in order to keep the scheme funded and running. Systema and TFG were sister shell companies,

both operating interchangeably under Salkin's control and direction and Schroder's further direction and control through her management of the day to day operations of these entities.

91.     Molfetta Law is a solo practice run by Molfetta. Molfetta uses Molfetta Law's logo and website, and his Molfetta Law email address, on his sham demand letters to Bluegreen. Thus, Molfetta Law and Molfetta are essentially alter egos, making Molfetta Law and Molfetta equally liable.

92.     Molfetta is a close associate of Salkin's and TFG's, and TFG regularly refers clients to Molfetta.

93.     As to Systema and TFG's customers, Molfetta took over for Miller's role in the scheme when Miller was previously sued by another timeshare developer.

94.     Miller, however, continued his involvement in the scheme through referrals received from Brian and Holly Wilbur, which were obtained through TTT's advertising.

95.     TTT has also attempted to hire "in-house" counsel to provide the illusory legal services it advertises in lieu of, or in addition to, using Miller.

IV.    **The False and Misleading Advertising**

96.     Each of the Defendants took part in the false and misleading advertising, as described above and set forth below.

97.     TTT and TFG were the primary drivers of this advertising. Salkin and Schroeder, as well as TFG's sister shell company Systema, actively directed and participated in TFG's advertising. Brian Wilbur and Holly Wilbur personally directed TTT's advertising and participated in it. The Lawyer Defendants, whom consented to the false advertising, and based on their ethical obligations as attorneys, were required to oversee and approve the advertising, and by accepting the customers of TTT and TFG, contributed to and benefited from the

advertising, such that but for the Lawyer Defendants acceptance of the Marketing Defendants customers, the Marketing Defendants would have been unable to advertise Defendants' illusory legal services.

98.     The false advertising consisted of, among other things, false website advertisements, false and misleading call scripts and telephone pitches, as well as radio and TV advertisements (together, the "False and Misleading Advertisements").

99.     The False and Misleading Advertisements bring the Bluegreen Owners in the door and cause them to stop paying Bluegreen, ultimately resulting in the Bluegreen Owners default and subsequent further harm.

**A.     TTT's False and Misleading Advertisements**

100.    TTT     publishes     the     website     located     at     the     domain: https://timeshareterminationteam.com/ ("TTT's Website").

101.    A copy of the false and misleading advertising contained on TTT's Website is attached hereto as **Exhibit "4."**

102.    The content of TTT's Website was personally approved by both Brian Wilbur and Holly Wilbur, who each, independently and individually, contributed to its content.

103.    The TTT Website directs prospective customers to contact TTT, and provides various means for a prospective customer to speak with a representative of TTT, including via telephone and an online form.

104.    Bluegreen Owners are exposed to TTT's False and Misleading Advertisements both through the content of TTT's Website and other advertisements, as well as during the subsequent telephone sales pitch.

105.    Brian Wilbur and Holly Wilbur have each appeared in video advertisements for TTT.

106.     TTT's Website contains numerous false and misleading statements which mischaracterize the nature of TTT's services.

107.     By example, TTT, at the direction of Brian Wilbur and Holly Wilbur, have published numerous false and misleading statements which claim that TTT has a safe, legal, and permanent method to cancel a timeshare, including:

a.     On TTT's Website home page:



(Ex. 4; https://timeshareterminationteam.com/)

b.     As well as on secondary pages: "*We're dedicated to helping you achieve that freedom – safely, legally and permanently.*" (Ex. 4).

c.

## Legal Solutions for Getting Out of Your Timeshare Mortgage

Fortunately, there are ways to get out of a timeshare contract if you still have a mortgage on the property, and Timeshare Termination Team can help. It's important to understand that safely and permanently getting out of a timeshare mortgage requires a legal strategy developed by attorneys who specialize in this area of law.

(https://timeshareterminationteam.com/can-i-get-out-of-a-timeshare-mortgage/)

d.     The TTT Website home page also contains an embedded video further advertising that TTT can terminate a timeshare "*safely, legally, permanently*":



(https://youtu.be/cLu0DYwH6dU)

        e.      Brian Wilbur himself has personally, and falsely, claimed in video advertisements that: "*we can legally and safely get you out of your timeshare contract*."



(https://www.youtube.com/watch?v=_0afaFNX5u4)

      f.    TTT's Website further includes a "Step-By-Step Exit Map", which states, in part, that TTT has a "*legal, safe, and permanent process.*"



(https://timeshareterminationteam.com/wp-content/uploads/2020/11/TTT-Exit-Map-v2.pdf).

108.    At the direction of Brian and Holly Wilbur, TTT misleads consumers, including Bluegreen Owners, by falsely equating removal of the consumer's name from the title of the timeshare with a legal and permanent release of all future obligations. By example:

      a.    The TTT Website states: "*At the end of the process, you will receive supporting documentation, proving the legal and permanent removal of your name from the ownership agreement.*"

      b.    The FAQ section of the TTT Website similarly claims that removal from the "title" results in a complete release from all elements of the timeshare interest:



109.    TTT's advertisements also claim that TTT has a **100% success rate**.

110.    In fact, Brian Wilbur has personally appeared in certain advertisements wherein he affirmed the claim that TTT is the "*only timeshare cancellation company out there who*

*doesn't have one single complaint.*"



(https://www.youtube.com/watch?v=mMvW4zldTSo).

111.     TTT's claim of 100% success is both literally false, as well as deceptive, as TTT's method of terminating a Bluegreen Owners Timeshare Contract through default does not result in a legal release of the Bluegreen Owner and ultimately harms the Bluegreen Owner's credit.

112.     Moreover, the claim of a "100% success rate" process further promotes TTT's goal of causing the Bluegreen Owner to immediately stop payments to Bluegreen, as TTT can claim to prospective customers that the service allows them to safely stop payments immediately upon signing up with TTT, since TTT's process is 100% effective.

113.     TTT's claim of a 100% success rate is published on the home page of TTT's Website via an embedded YouTube video:

- 24 -



(https://youtu.be/cLu0DYwH6dU)

114.    **The FAQ Section of TTT's Website states:**

> ### How will I know if this will work for my timeshare contract?
>
> We have a 100% success rate of getting people out of their timeshare contracts. Through a consultation, we will review your situation and ensure we will be able to get you out of your timeshare. If, for some reason, we know we won't be able to help you, we'll tell you upfront.

115.    TTT's Website also advertises a "Money-Back Exit Guarantee" claiming that TTT "guarantees that we will provide you with a legal and permanent exit solution within a clearly defined period of time, or you will receive a full refund."

116.    TTT's "Money-Back Exit Guarantee" is false and misleading, as well as illusory, as TTT considers a default of the Timeshare Contract to constitute a legal and permanent exit solution.

117.    TTT's Website also contains false and misleading claims regarding the legal

services that TTT advertises, as well as overstating the experience of its attorneys. By example:

      a.    TTT states that "*Our team of expert timeshare attorneys have been helping people legally cancel their timeshares for many years*" and that "*we've joined forces with the premier legal teams in the industry with years of experience getting people out of complicated contracts like yours*." (Ex. 4, https://timshareterminationteam.com/timeshare-lawyers/).

      b.    TTT also claims that their method of "timeshare cancellation" involves a "legal process."

> When it comes to timeshare cancellation, there are many methods out there, but not all of them involve a legal process. And they're certainly not all permanent solutions.

118.    In reality, TTT partnered with non-lawyers to create a fake law firm which utilized the name of a retired Florida attorney, Miller.

119.    Miller has never met any Bluegreen Owner sent to him by TTT.

120.    Miller also did not prepare the letters sent to Bluegreen on behalf of Bluegreen Owners.

121.    Letters purportedly sent to Bluegreen by Miller, on behalf of customers of TTT, were in reality prepared by non-lawyers and others not employed by Miller, but who used Miller's name.

122.    Moreover, these Miller letters contained both an email address and telephone number which were responded to by these non-lawyers and others.

123.    Far from "joining forces with a premier legal team", TTT utilized the name of a semi-retired Florida attorney, Miller, to send generic form letters to Bluegreen which were prepared by non-lawyers and others.

124.     Brian Wilbur and Holly Wilbur personally selected Miller to receive TTT's customers, including Bluegreen Owners.

125.     In fact, Brian Wilbur and Holly Wilbur personally met with Miller in Sarasota, Florida on several occasions where they discussed the business relationship.

126.     On one such occasion, Brian and Holly Wilbur held a meeting with Miller at the Columbia Restaurant located at 411 St. Armands Circle in Sarasota, Florida where they discussed TTT's referrals to Miller.

127.     Brian Wilbur and Holly Wilbur personally directed TTT's referral relationship with Miller and, in connection therewith, negotiated the compensation that Miller would receive from TTT.

128.     Holly Wilbur personally directed wire transfer payments to Miller, who was located in Florida.

129.     TTT paid Miller $1,000 per customer for each TTT customer who had a mortgage.

130.     Despite the fact that Miller was a semi-retired attorney without an office, and operating out of a residential apartment in Sarasota, Florida, Brian and Holly Wilbur directed the referral of hundreds of TTT customers to Miller.

131.     Based upon pure volume alone, Brian and Holly Wilbur knew that no legal action could be taken by Miller on behalf of the numerous TTT customers being referred to Miller.

132.     Regardless, this relationship with Miller was still satisfactory to TTT, Brian Wilbur, and Holly Wilbur, as Miller was never expected to take any actual legal action on behalf of TTT's customers.

133.     Instead, TTT's customers with a mortgage who were being referred to Miller had been advised by TTT that they could stop making payments on their timeshare.

134.     Therefore, TTT's intent was not to obtain a "cancellation" through legal action, as claimed in advertisements, but rather, via non-payment and default.

135.     By partnering with Miller, TTT was able to keep a majority of the fees collected while simultaneously giving TTT's customers the false impression that they were receiving the valuable services of an attorney.

136.     Miller's letters furthered the conspiracy by cutting off all contact between Bluegreen and its now defaulting Bluegreen Owners.

137.     In fact, Miller himself was aware or, at a minimum, became aware of the fact that TTT was directing customers (his supposed clients) to stop paying.

138.     In 2019, TTT transmitted hundreds of thousands of dollars in wire transfer payments to Miller.

139.     In December 2019, with TTT owing Miller for files sent between July and November of that year, Holly Wilbur proposed that TTT would make five monthly payments to Miller between January and May of 2020, totaling $272,000.

140.     Holly Wilbur's proposal to pay $272,000 to Miller was based upon the referral of 323 customers to Miller between July and November of 2019.

141.     Brian and Holly Wilbur continued to direct customers to Miller, including Bluegreen Owners, and advertised the expertise of TTT's attorneys, despite having met Miller, and, to that end, having actual knowledge that he would be incapable of personally providing any meaningful legal services to TTT's customers.

142.     Despite this, Brian and Holly Wilbur continued their relationship with Miller

throughout 2020, even after a federal court entered a permanent injunction against Miller for his participation in a similar timeshare exit scheme. *Wyndham Vacation Ownership, Inc., et al. v. Harold O. Miller, Esq., et al.,* Case No.: 6:19-cv-817-Orl-40EJK, Doc. 131 (M.D.Fla. June 3, 2020).

143.   As TTT's entire business model is a sham, TTT is forced to advertise its "process" in only vague terms.

144.   As an example, despite numerous promotional videos on TTT's YouTube page, none provide any description of how exactly the service will be performed, other than to indicate that the potential customer should attend a "free consultation."

145.   In one advertisement, Brian Wilbur falsely claims that TTT has a "*patented process where we can help you find an exit route through our process.*" In truth, there is no such "patented process."



(https://www.youtube.com/watch?v=jgLQmhtljp4).

146.    In another paid advertisement, Brian Wilbur makes the ambiguous and false claim that "*we legally take permanent action to cancel the contracts, and we're very good at what we do.*"



(https://www.youtube.com/watch?v=ibYM4NFNL3k).

147.    TTT also advertises the "You First Approach", which purportedly includes a comprehensive "Straight Facts Exit Guide", a "Money-Back Exit Guarantee", and an "exclusive Step-by-Step Exit Map."

148.    On the TTT Website, TTT claims that they are the "only timeshare consumer advocacy company in the U.S. providing a **You First Approach™** guaranteed to get you out of your timeshare permanently."



(Ex. 4).

149.    However, TTT fails to provide any meaningful description of the actual service in its "You First Approach."

150.    TTT's "Step-By-Step Exit Map" contains no specifics regarding how the "exit" will be achieved, or even what TTT considers to be a successful exit. The "Step-by-Step Exit Map" claims that by signing a professional service agreement with TTT, the customer is "*taking your first step to freedom from your timeshare burden*."



(Ex. 4).

151.    TTT claims that in Step 6, an attorney begins "*work on your file*." (Ex. 4).

152.    In Step 7, TTT then claims that the customer can "*sit back and rest*" because "*we are advocating on your behalf to get you out as soon as possible*." (Ex. 4).

153.    In reality, all TTT has done is direct the submission of form letters containing Miller's name.

154.    As a result of the vague description of TTT's actual service, Bluegreen Owners, in determining whether to sign up with TTT, are all the more reliant on simply trusting TTT's false claims in its advertising that the process is 100% successful and that it is safe, legal, and permanent.

155.    By example, TTT has solicited customers through a video testimonial from a supposedly satisfied customer of TTT wherein the customer states: "*The main feature, I think,*

*that sold me on the service of Timeshare Termination Team was their guarantee. A hundred percent guarantee. A hundred percent success rate. You don't hear that, and, they did it.*"



(https://www.youtube.com/watch?v=jgLQmhtljp4).

156.   In addition to the TTT Website, TTT utilizes radio and TV advertisements which make similar false and misleading claims as seen on the TTT Website.

157.   TTT has paid for radio ads on nationally syndicated radio broadcasts which claim that TTT has a 100% success rate.

158.   TTT has also paid for sponsored "news" segments which have been broadcasted on TV, and which describe TTT's service. Brian and Holly Wilbur have each participated and appeared in various sponsored "news" segments, which, in reality, are not actual news segments.

159.   These "news" segments appear to the viewer as if they are a legitimate local news broadcast, when in fact they are the paid advertising of TTT.

160.   These paid "news" segments, as well as other video advertisements, contain false

and misleading statements regarding TTT's service, and can be accessed on TTT's YouTube page: https://www.youtube.com/channel/UCwN8TpnniYMObbOrsIJRdXw.

**B.      TFG's False and Misleading Advertisements**

161.     TFG     publishes     the     website     located     at     the     domain: https://timesharefreedomgroup.com/  ("TFG's Website").

162.     A copy of the false and misleading advertising contained on TFG's Website is attached hereto as **Exhibit "5."**

163.     The TFG Website directs prospective customers to contact TFG, and provides various means for a prospective customer to speak with a representative of TFG, including via telephone, online chat, and through the submission of online forms.

164.     TFG's Website specifically advertises to and targets Florida residents by claiming to maintain regional offices in Florida, including in Miami and Orlando. https://timesharefreedomgroup.com/locations/



165.     Bluegreen Owners are exposed to TFG's False and Misleading Advertisements both through the content of TTT's Website and other advertisements, as well as during the subsequent telephone sales pitch where the Bluegreen Owner is solicited to sign up with TFG for its services.

166.    TFG's Website contains numerous false and misleading statements which mischaracterize the nature of TFG's services.

167.    By example, the TFG Website includes numerous false and misleading statements which claim that TFG can cancel a timeshare "legally and permanently."

168.    TFG's website claims, "Every month, Timeshare Freedom Group helps timeshare owners like yourself eliminate their unwanted, costly timeshares, legally and permanently. No matter your situation, we will fight to help get you out of your contract," and "Our team of timeshare cancellation attorneys and advisors will get you completely out of your timeshare contract—legally and permanently." (**Ex. 5**). These advertisements are false and misleading because TFG does not have any "legal" process to "eliminate" timeshares.

169.    TFG's "legal" process is nothing more than a scheme by which Defendants lure Bluegreen Owners into an unlawful breach and early unlawful termination of their timeshare interests. Moreover, their advertisement of attorneys' services is false and misleading because the "law firms" that Defendants engage, as described throughout herein, are part of an unfair and deceptive scheme and these "attorneys" do not actually perform any meaningful service or create a true attorney-client relationship with Bluegreen Owners.

170.    TFG's website claims that after using TFG's services, "You are now Timeshare Free. The timeshare cancellation is official and you will receive written confirmation that you are free and clear of all ownership duties, financial obligations and contractual obligations from the timeshare. Congratulations, you finally have Timeshare Freedom." (**Ex. 5**).

171.    This advertisement is false and misleading because it conceals from the Bluegreen Owners that TFG's method of "cancellation" involves an unlawful breach and foreclosure, which will result in serious adverse financial consequences for the timeshare

owners, including Bluegreen Owners.

172.     TFG also advertises that it has been "in business since 2010." (**Ex. 5**). This advertisement is false and misleading because it conceals from the Bluegreen Owners that TFG has only been a registered entity since 2018. The entity for which TFG operates as a d/b/a, Freedom Consumer Services, LLC, was registered as a "shelf" company in 2010—not actually operating as a timeshare exit company back then, but simply registered to create the "prestige" of an older company and lend a false sheen of credibility to TFG.

173.     TFG advertises a "100% money back guarantee," further stating that, "There have been only 2–3 instances in our companies [sic] history where this has actually needed to happen." (**Ex. 5**).

174.     This advertisement is false and/or misleading because not only can Defendants *not* offer a "100% guarantee," they cannot guarantee that Bluegreen will make an offer to end the Bluegreen Owners' timeshare obligations—they can only "guarantee," in reality, a default and unlawful termination of the timeshare interest, destroying the timeshare owner's credit, including Bluegreen Owners credit, which no reasonable consumer would consider to be the services being advertised.

175.     Upon information and belief, TFG uses other nefarious forms of false and misleading advertisements, including through its telephone sales pitches.

176.     Through these False and Misleading Advertisements by TFG (approved and directed by Salkin, and with the assistance of and daily operation and management by Schroeder, benefiting TFG's sister shell company, Systema, and further encouraged, enabled by, and benefiting Miller, Molfetta, and Molfetta Law), the Defendants initiate the unlawful scheme, which is then ultimately brought to completion by the Lawyer Defendants.

177.     As such, all of the Defendants named herein act in active concert with each other in furtherance of and to carry out this unlawful conspiratorial scheme.

**COUNT I**
**False Advertising in Violation of 15 U.S.C. § 1125(a)(1)**
(Against TTT, Brian Wilbur, and Holly Wilbur)

178.     Bluegreen adopts and realleges paragraphs 1 through 160 as if fully set forth herein.

179.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), against Timeshare Termination Team, LLC and Vindaloo Travel Network, LLC d/b/a Timeshare Termination Team a/k/a Timeshare Termination Team, LLC, Brian Wilbur, and Holly Wilbur (collectively the "TTT Defendants").

180.     The TTT Defendants willfully, deliberately, and egregiously made false or misleading statements of fact in commercial advertisements, intended to mislead consumers. The statements described above and incorporated herein, more specifically, TTT's False and Misleading Advertisements, were literally false, either on their face or by necessary implication, and/or were misleading.

181.     TTT's False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for the TTT Defendants' own financial gain, for the purpose of influencing Bluegreen Owners to retain the TTT Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

182.     TTT's False and Misleading Advertisements either deceived and/or had the capacity of deceiving a substantial segment of the consuming public.

183.     TTT Defendants' deception is material in that it is likely to influence the

consumers' decisions whether to retain the TTT Defendants' services or to cease making payments to Bluegreen.

184.    The TTT Defendants' advertised services affect interstate commerce.

185.    TTT Defendants operate as competitors to Bluegreen. Once a Bluegreen Owner enters into an agreement with TTT, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his/her/their business from Bluegreen, effectively converting those individuals from a Bluegreen Owner to a customer of TTT.

186.    TTT's False and Misleading Advertisements cause consumers to utilize the TTT Defendants' false exit services, which directly results in the Bluegreen Owners defaulting on their legal obligations by ceasing to pay on their contracts, all at the TTT Defendants' instruction. Without these false and/or misleading advertisements, the Bluegreen Owners would have continued to make payments on their timeshare interests.

187.    Bluegreen has been and continues to be injured as a result of the TTT Defendants' false and misleading statements.

188.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover: (i) its actual damages sustained as a result of the false advertising; (ii) the TTT Defendants' profits resulting from their false advertising to Bluegreen Owners; and (iii) the costs of the action.

189.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by the TTT Defendants of 15 U.S.C. § 1125(a).

### COUNT II
**Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1)**
(Against Miller)

190.    Bluegreen adopts and realleges paragraphs 1 through 160 and 178 through 189 as

if fully set forth herein.

191.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C.
§ 1125(a)(1), against Miller.

192.    The TTT Defendants willfully, deliberately, and egregiously made false or
misleading statements of fact in their commercial advertisements and intended to mislead
consumers, specifically by way of TTT's False and Misleading Advertisements. TTT's False and
Misleading Advertisements were literally false and/or misleading, either on their face or by
necessary implication, as set forth herein.

193.    Bluegreen has been and continues to be injured as a result of these false and
misleading statements.

194.    Miller has contributed and continues to contribute to this false and/or misleading
advertising by knowingly inducing or causing the conduct, or by materially participating in it by
providing a necessary element of the false and misleading advertising, and reaping the benefits
therefrom.

195.    Specifically, Miller explicitly or implicitly encourages the false and/or misleading
advertising by permitting TTT to advertise legal services, to make claims regarding the legal
expertise that TTT's customers will receive, by allowing TTT to charge customers fees based
upon the premise that the customer will receive the services of Miller, and by accepting direct
wire transfer payments from TTT for the referral of its customers.

196.    Miller is aware of TTT's False and Misleading Advertising, encourages it, and
materially participates in it by continuing to permit his name to appear on form demand letters
prepared by non-lawyers, and by managing the transfer of funds from TTT to Miller, which
perpetuates the scheme.

197.    Miller also explicitly or implicitly has encouraged the false and/or misleading advertising because he has permitted TTT to advertise "legal services" and promote Miller as providing these "legal services" to Bluegreen Owners, who are deceived into believing that they are receiving legal representation from Miller, when they are, in fact, not.

198.    TTT's False and Misleading Advertisements are public, serious, and widespread, and Miller has full knowledge of such advertising and condones it, enables it, and participates in it.

199.    Miller financially benefits from TTT's False and Misleading Advertisements in the form of receiving the revenue generated by TTT, via wire transfer payments.

200.    Miller financially benefits from TTT's False and Misleading Advertisements in the form of a flat fee cut, client referrals, and improper fee-splitting with TTT.

201.    The revenue generated by TTT and Miller from Bluegreen Owners is derived entirely or substantially through their reliance on TTT's False and Misleading Advertisements.

202.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover: (i) its actual damages sustained as a result of the False and Misleading Advertisements; (ii) Miller's profits resulting from the false and misleading advertising to Bluegreen Owners; and (iii) the costs of the action.

203.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable to prevent further contributory violations by Miller of 15 U.S.C. § 1125(a).

## COUNT III
### False Advertising in Violation of 15 U.S.C. § 1125(a)(1)
(Against TFG and Salkin)

204.    Bluegreen adopts and realleges paragraphs 1 through 99 and 161-177 as if fully

set forth herein.

205.     This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), against TFG and Salkin.

206.     TFG and Salkin willfully, deliberately, and egregiously made false or misleading statements of fact in commercial advertisements, intended to mislead consumers. The statements described above and incorporated herein, more specifically, TFG's False and Misleading Advertisements, were literally false, either on their face or by necessary implication, and/or were misleading.

207.     TFG's False and Misleading Advertisements were commercial speech made by a defendant acting in competition to Bluegreen by trying to interfere with Bluegreen's business relationships for Defendants' own financial gain, for the purpose of influencing Bluegreen Owners to retain Defendants' services, and were disseminated sufficiently to the timeshare owning public to constitute advertising or promotion within the timeshare industry.

208.     TFG's False and Misleading Advertisements either deceived and/or had the capacity of deceiving a substantial segment of the consuming public.

209.     TFG and Salkin's deception is material in that it is likely to influence the consumers' decisions whether to retain Defendants' services or to cease making payments to Bluegreen.

210.     TFG and Salkin advertised services affect interstate commerce.

211.     TFG and Salkin are operating as competitors to Bluegreen. Once a Bluegreen Owner enters into an agreement with TFG, the sole purpose of that agreement is to cause that Bluegreen Owner to withdraw his/her/their business from Bluegreen, effectively converting those individuals from a Bluegreen Owner to a customer of TFG.

212.    TFG's False and Misleading Advertisements cause consumers to utilize TFG and Salkin false exit services, which directly results in the Bluegreen Owners defaulting on their legal obligations by ceasing to pay on their contracts, all at the Defendants' instruction. Without these false and/or misleading advertisements, the Bluegreen Owners would have continued to make payments on their timeshare interests.

213.    Bluegreen has been and continues to be injured as a result of TFG's false and misleading statements.

214.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover: (i) its actual damages sustained as a result of the false advertising; (ii) TFG and Salkin's profits resulting from their false advertising to Bluegreen Owners; and (iii) the costs of the action.

215.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable, to prevent further violations by TFG and Salkin of 15 U.S.C. § 1125(a).

## COUNT IV
### Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1)
(Against Systema, Schroeder, Miller, Molfetta, and Molfetta Law)

216.    Bluegreen adopts and realleges paragraphs 1 through 99, 161 through 177, and 204 through 215, as if fully set forth herein.

217.    This is an action for a contributory violation of the Lanham Act, 15 U.S.C. § 1125(a)(1), against Systema, Schroeder, Miller, Molfetta, and Molfetta Law.

218.    TFG and Salkin willfully, deliberately, and egregiously made false or misleading statements of fact in their commercial advertisements and intended to mislead consumers, specifically by way of TFG's False and Misleading Advertisements. TFG's False and Misleading

Advertisements were literally false and/or misleading, either on their face or by necessary implication, as set forth herein.

219.   Bluegreen has been and continues to be injured as a result of these false and misleading statements.

220.   Systema, Schroeder, Miller, Molfetta, and Molfetta Law have contributed and continue to contribute to this false and/or misleading advertising by knowingly inducing or causing the conduct, or by materially participating in it by providing a necessary element of the false and misleading advertising, and reaping the benefits therefrom, as described below.

221.   Specifically, Systema and Schroeder explicitly or implicitly encourage the false and/or misleading advertising because Systema and TFG are operating as sister shell companies, interchangeable with one another under the ownership and control of Salkin. Schroeder runs and manages the day-to-day of Systema's and TFG's operations, both at Salkin's direction and under her own decision-making power. As Salkin and TFG commit the false advertising, Systema and Schroeder are aware of it and encourage it and materially participate in it by continuing to fund and benefit from the scheme.

222.   Further, specifically, the Lawyer Defendants explicitly or implicitly encourage the false and/or misleading advertising because they permit their co-conspirators to advertise "legal services" and promote the Lawyer Defendants as providing these "legal services" to Bluegreen Owners, who are deceived into believing that they are receiving legal representation when they are, in fact, not.

223.   TFG's False and Misleading Advertisements are public, serious, and widespread, and Systema, Schroeder, Miller, Molfetta, and Molfetta Law have full knowledge of such advertising and condone it, enable it, and participate in it.

224.    Systema and Schroeder financially benefit from the False and Misleading Advertisements in the form of receiving the revenue generated by TFG and Systema, which are operated interchangeably as sister shell companies by Salkin.

225.    Miller, Molfetta, and Molfetta Law financially benefit from the False and Misleading Advertisements in the form of a flat fee cut, client referrals, and improper fee-splitting with the Marketing Defendants.

226.    The revenue generated by Systema, Schroeder, Miller, Molfetta, and Molfetta Law from Bluegreen Owners is derived entirely or substantially through their reliance on TFG's False and Misleading Advertisements.

227.    Pursuant to 15 U.S.C. § 1117, Bluegreen is entitled to recover: (i) its actual damages sustained as a result of the False and Misleading Advertisements; (ii) Systema, Schroeder, Miller, Molfetta, and Molfetta Law's profits resulting from the false and misleading advertising to Bluegreen Owners; and (iii) the costs of the action.

228.    Pursuant to 15 U.S.C. § 1116, Bluegreen seeks an injunction upon such terms as the Court may deem reasonable to prevent further contributory violations by Systema, Schroeder, Miller, Molfetta, and Molfetta Law of 15 U.S.C. § 1125(a).

### COUNT V
### Tortious Interference with Contractual Relations
(Against TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law)

229.    Bluegreen adopts and realleges paragraphs 1 through 99 and 161 through 177 as if fully set forth herein.

230.    This is a cause of action for tortious interference with contractual relations against TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law.

231.    Bluegreen has established contractual relationships with Bluegreen Owners

through the Timeshare Contracts.

232.    TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law have actual, constructive, and/or specific knowledge of the contractual relationships between Bluegreen and the Bluegreen Owners. The very fact that Bluegreen has a business relationship with the Bluegreen Owners is the basis upon which Defendants and their co-conspirators sought to establish a relationship with the Bluegreen Owners at issue in this suit. Indeed, if it were not for the existence of the contractual relationships between Bluegreen and the Bluegreen Owners, these Defendants and their co-conspirators would have no reason to market their timeshare exit services.

233.    These Defendants, through various interrelated entities as described herein, have successfully solicited Bluegreen Owners and caused or induced them to breach and/or terminate their contractual relationships with Bluegreen.

234.    In particular, these Defendants have intentionally procured the breach of Bluegreen's contractual relationships by soliciting Bluegreen Owners and persuading them to hire Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. Such breach is procured by these Defendants who instruct, direct, persuade, convince, deceive, trick, or otherwise cause Bluegreen Owners to stop making legally obligated payments on their Timeshare Contracts to Bluegreen.

235.    If Bluegreen Owners knew the truth about these Defendants' illusory services or about how these Defendants' actions would adversely impact them, they would not pay exorbitant fees to these Defendants nor unlawfully terminate (through breach) their timeshare interests.

236.    These Defendants have utilized improper and/or illegal means to interfere with

Plaintiffs' contractual relations.

237.    These Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Bluegreen or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from Defendants' actions and without reasonable grounds for Defendants to believe that their actions were justified and proper.

238.    As a direct and proximate result of these Defendants' intentional misconduct, Bluegreen Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs before the expiration of the terms of those contracts. These terminations, and attempted terminations, also interfere with Bluegreen's ability to enter into subsequent transactions with those same Bluegreen Owners.

239.    These Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as these Defendants are strangers to the contractual relationships between Bluegreen and its Bluegreen Owners, and their interference with Bluegreen's business is willful and malicious.

240.    Furthermore, these Defendants profit greatly by advertising their timeshare exit services as legal representation and thereby receiving significant "fees" from Bluegreen Owners, despite the Lawyer Defendants not forming legitimate attorney-client relationships with these Bluegreen Owners or performing any meaningful legal service.

241.    As a direct and proximate result of the foregoing, Plaintiffs suffered economic damages arising from Bluegreen Owners' default of their payment obligations under the Timeshare Contracts and termination of such obligations.

242.    Plaintiffs are entitled to damages against Defendants TFG, Systema, Salkin,

Schroeder, Miller, Molfetta, and Molfetta Law jointly and severally.

243.    Defendants TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

244.    These Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction to prevent this irreparable harm from continuing.

**<u>COUNT VI</u>**
**Tortious Interference with Contractual Relations**
(Against TTT, Brian Wilbur, Holly Wilbur, and Miller)

245.    Bluegreen adopts and realleges paragraphs 1 through 160 as if fully set forth herein.

246.    This is a cause of action for tortious interference with contractual relations against TTT, Brian Wilbur, Holly Wilbur, and Miller.

247.    Bluegreen has established contractual relationships with Bluegreen Owners through the Timeshare Contracts.

248.    These Defendants have actual, constructive, and/or specific knowledge of the contractual relationships between Bluegreen and the Bluegreen Owners. The very fact that Bluegreen has a business relationship with the Bluegreen Owners is the basis upon which these Defendants and their co-conspirators sought to establish a relationship with the Bluegreen Owners at issue in this suit. Indeed, if it were not for the existence of the contractual relationships between Bluegreen and the Bluegreen Owners, these Defendants and their co-conspirators would have no reason to market their timeshare exit services.

249.    These Defendants, through various interrelated entities as described herein, have

successfully solicited Bluegreen Owners and caused or induced them to breach and/or terminate their contractual relationships with Bluegreen.

250.    In particular, these Defendants have intentionally procured the breach of Bluegreen's contractual relationships by soliciting Bluegreen Owners and persuading them to hire these Defendants to help "cancel" (in reality, breach) their Timeshare Contracts. Such breach is procured by these Defendants who instruct, direct, persuade, convince, deceive, trick, or otherwise cause Bluegreen Owners to stop making legally obligated payments on their Timeshare Contracts to Bluegreen.

251.    If Bluegreen Owners knew the truth about these Defendants' illusory services or about how these Defendants' actions would adversely impact them, they would not pay exorbitant fees to these Defendants nor unlawfully terminate (through breach) their timeshare interests.

252.    These Defendants have utilized improper and/or illegal means to interfere with Plaintiffs' contractual relations.

253.    These Defendants' actions were done with an improper motive and not made in good faith, but rather were made with the knowledge and predominant purpose to injure Bluegreen or with reckless disregard for the attendant consequences naturally, directly, and proximately resulting from these Defendants' actions and without reasonable grounds for these Defendants to believe that their actions were justified and proper.

254.    As a direct and proximate result of TTT, Brian Wilbur, Holly Wilbur, and Miller's intentional misconduct, Bluegreen Owners have terminated, or have baselessly sought to terminate, their contractual relationships with Plaintiffs before the expiration of the terms of those contracts. These terminations, and attempted terminations, also interfere with Bluegreen's

ability to enter into subsequent transactions with those same Bluegreen Owners.

255.    These Defendants did not and do not have any justification or privilege in procuring the breach of such contractual relationships, as these Defendants are strangers to the contractual relationships between Bluegreen and its Bluegreen Owners, and their interference with Bluegreen's business is willful and malicious.

256.    Furthermore, these Defendants profit greatly by advertising their timeshare exit services as legal representation and thereby receiving significant "fees" from Bluegreen Owners, despite Miller not forming a legitimate attorney-client relationship with these Bluegreen Owners or otherwise provide any meaningful legal service.

257.    As a direct and proximate result of the foregoing, Plaintiffs suffered economic damages arising from Bluegreen Owners' default of their payment obligations under the Timeshare Contracts and termination of such obligations.

258.    Plaintiffs are entitled to damages against TTT, Brian Wilbur, Holly Wilbur, and Miller, jointly and severally.

259.    TTT, Brian Wilbur, Holly Wilbur, and Miller's conduct is intentional and willful and entitles Plaintiffs to an award of punitive damages.

260.    TTT, Brian Wilbur, Holly Wilbur, and Miller's ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction to prevent this irreparable harm from continuing.

### COUNT VII
### Conspiracy to Commit Tortious Interference with Bluegreen's Timeshare Contracts
(Against TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law)

261.    Bluegreen adopts and realleges paragraphs 1 through 99, 161 through 177, and 229 through 244, as if fully set forth herein.

262.    This is a cause of action for civil conspiracy to commit tortious interference against Defendants TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law, wherein these Defendants have acted in concert to tortiously interfere with Bluegreen's contractual relationships with Bluegreen Owners.

263.    These Defendants are parties to this civil conspiracy. Defendants have a common design to interfere with Bluegreen's contractual relationships with Bluegreen Owners, each these Defendant having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

264.    These Defendants have committed various overt acts in furtherance of their conspiracy to tortiously interfere with Bluegreen's Timeshare Contracts, including but not limited to, wrongfully soliciting Bluegreen Owners through false statements and misrepresentations regarding Defendants' services, misleading Bluegreen Owners about their ability to cancel the Timeshare Contracts, soliciting Bluegreen Owners to terminate or cancel their Timeshare Contracts with Bluegreen, and inducing Bluegreen Owners to stop making payments related to their timeshare interest.

265.    These Defendants have made agreements to perform separate aspects of this conspiracy in concert, and then divide the compensation generated from this scheme among the Defendants.

266.    These Defendants operate under the imprimatur of a law firm via the Lawyer Defendants, while unlawfully evading ethical standards and rules governing lawyers which

would limit the direct solicitation of Bluegreen Owners as well as preclude the sharing of legal fees with non-lawyers.

267.    As a direct and proximate result of these Defendants' acts, Bluegreen has suffered economic losses, including damages arising from terminations of the Timeshare Contracts with which these Defendants have interfered. Bluegreen has suffered these losses and damages in the past, and will continue to suffer such losses and damages in the future.

268.    Defendants TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction against Defendants TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law to prevent this irreparable harm from continuing.

<u>**COUNT VIII**</u>
**Conspiracy to Commit Tortious Interference with Bluegreen's Timeshare Contracts**
(Against TTT, Brian Wilbur, Holly Wilbur, and Miller)

269.    Bluegreen adopts and realleges paragraphs 1 through 160 and 245 through 260 as if fully set forth herein.

270.    This is a cause of action for civil conspiracy to commit tortious interference against TTT, Brian Wilbur, Holly Wilbur, and Miller, wherein these Defendants have acted in concert to tortiously interfere with Bluegreen's contractual relationships with Bluegreen Owners.

271.    These Defendants are parties to this civil conspiracy. Defendants have a common design to interfere with Bluegreen's contractual relationships with Bluegreen Owners, each of

these Defendants having the intent, and knowledge of the others' intent, to accomplish by concerted action unlawful purposes and/or lawful purposes by unlawful means.

272.    These Defendants have committed various overt acts in furtherance of their conspiracy to tortiously interfere with Bluegreen's Timeshare Contracts, including but not limited to, wrongfully soliciting Bluegreen Owners through false statements and misrepresentations regarding these Defendants' services, misleading Bluegreen Owners regarding their ability to cancel the Timeshare Contracts, soliciting Bluegreen Owners to terminate or cancel their Timeshare Contracts with Bluegreen, and inducing Bluegreen Owners to stop making payments related to their timeshare interest.

273.    These Defendants have made agreements to perform separate aspects of this conspiracy in concert, and then divide the compensation generated from this scheme among these Defendants.

274.    By example, Miller, Brian Wilbur, and Holly Wilbur have together met in Sarasota, Florida on at least three (3) occasions where they planned their concerted actions. Holly Wilbur has facilitated the payment of hundreds of thousands of dollars to Miller, who relies upon the advertising and solicitation of Bluegreen Owners performed and/or directed by Brian Wilbur, Holly Wilbur, and TTT.

275.    TTT operates under the imprimatur of a law firm via Miller, while unlawfully evading ethical standards and rules governing lawyers which would limit the direct solicitation of Bluegreen Owners as well as preclude the sharing of legal fees with non-lawyers.

276.    Moreover, at the direction of Brian Wilbur and Holly Wilbur, TTT's sales staff has induced Bluegreen customers with a mortgage to stop making payments on their Timeshare Contracts. Therefore, Miller relies on Brian Wilbur and Holly Wilbur to send him TTT

customers who will default on their payment obligations, such that Miller does not have to perform any actual services.

277.    As a direct and proximate result of the acts of TTT, Brian Wilbur, Holly Wilbur, and Miller, Bluegreen has suffered economic losses, including damages arising from terminations of the Timeshare Contracts with which these Defendants have interfered. Bluegreen has suffered these losses and damages in the past, and will continue to suffer such losses and damages in the future.

278.    The ongoing conduct of these Defendants has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction against TTT, Brian Wilbur, Holly Wilbur, and Miller to prevent this irreparable harm from continuing.

## COUNT IX
### Violation of Florida's Deceptive and Unfair Trade Practices Act
(Against TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law)

279.    Bluegreen adopts and realleges paragraphs 1 through 99 and 161 through 177 as if fully set forth herein.

280.    This is a cause of action for violation of Fla. Stat. §§ 501.201 *et seq.*, Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), against TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law.

281.    TFG and Salkin, by advertising, soliciting, offering, and providing their timeshare exit scheme to timeshare customers, are engaged in "trade or commerce" as defined under Fla. Stat. § 501.203(8). They have intentionally engaged in deceptive and unfair trade practices in violation of Fla. Stat. § 501.204(1) by soliciting Bluegreen Owners through false and misleading

advertising and marketing materials, including but not limited to, TFG's False and Misleading Advertisements.

282.    Systema, Schroeder, Miller, Molfetta, and Molfetta Law have participated in the aforesaid deceptive and unfair trade practices by enabling and participating in the activities of TFG and Salkin, specifically in being aware of and approving TFG's False and Misleading Advertisements, by enabling those advertisements to advertise for "legal services" as to the Lawyer Defendants, and by profiting greatly from such advertisements.

283.    Moreover, as to the Lawyer Defendants, they have engaged in unethical practices as part and parcel of this scheme, including rules against direct solicitation, fee-sharing with non-lawyers, as well as purporting to create attorney-client relationships with the Bluegreen Owners when they actually do not and have very little or no communication with said Owners, constituting unfair and deceptive practices.

284.    In addition to TFG's False and Misleading Advertisements, these Defendants also conspired to design, create, and participate in this overall unfair scheme, which is unlawful and deceptive above and beyond said advertisements as described herein.

285.    These Defendants have willfully engaged in said practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Bluegreen and Bluegreen Owners.

286.    As a direct and proximate result of these Defendants' unfair and deceptive trade practices, Bluegreen has suffered economic losses.

287.    Bluegreen's losses will increase unless these Defendants are permanently enjoined from continuing their deceptive and unfair business practices. These Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable

harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction against these Defendants to prevent this irreparable harm from continuing.

288.     Bluegreen is entitled to recover its attorneys' fees and costs from these Defendants under Fla. Stat. §§ 501.2105 and 501.211.

**COUNT X**
**Violation of Florida's Deceptive and Unfair Trade Practices Act – Injunctive Relief Only**
(Against TTT, Brian Wilbur, Holly Wilbur, and Miller)

289.     Bluegreen adopts and realleges paragraphs 1 through 160 as if fully set forth herein.

290.     This is a cause of action for violation of Fla. Stat. §§ 501.201 *et seq.*, Florida's Deceptive and Unfair Trade Practices Act ("FDUPTA"), against TTT, Brian Wilbur, Holly Wilbur, and Miller.

291.     TTT, Brian Wilbur, and Holly Wilbur, by advertising, soliciting, offering, and providing their timeshare exit scheme to timeshare customers, are engaged in "trade or commerce" as defined under Fla. Stat. § 501.203(8). They have intentionally engaged in deceptive and unfair trade practices in violation of Fla. Stat. § 501.204(1) by soliciting Bluegreen Owners through false and misleading advertising and marketing materials, including but not limited to, TTT's False and Misleading Advertisements.

292.     Miller has participated in the aforesaid deceptive and unfair trade practices by enabling and participating in the activities of TTT, specifically in being aware of and approving TTT's False and Misleading Advertisements, by enabling those advertisements to advertise for "legal services", and by profiting greatly from such advertisements.

293.     Moreover, as to Miller, he has engaged in unethical practices as part and parcel of

this scheme, including rules against direct solicitation, fee-sharing with non-lawyers, as well as purporting to create attorney-client relationships with the Bluegreen Owners when he actually does not and has very little or no communication with said Owners, constituting unfair and deceptive practices.

294.    In addition to TTT's False and Misleading Advertisements, Miller also conspired to design, create, and participate in this overall unfair scheme, which is unlawful and deceptive above and beyond said advertisements as described herein.

295.    These Defendants have willfully engaged in said practices for their own commercial advantage when they knew that such practices were unfair, misleading, false, and/or deceptive to Bluegreen and Bluegreen Owners.

296.    As a direct and proximate result of these Defendants' unfair and deceptive trade practices, Bluegreen has suffered economic losses.

297.    Bluegreen's losses will increase unless these Defendants are permanently enjoined from continuing their deceptive and unfair business practices. These Defendants' ongoing conduct has caused and, if not permanently enjoined, will continue to cause irreparable harm to Bluegreen in the disruption of customer and other contractual relations; therefore, Bluegreen does not have an adequate remedy at law. Bluegreen seeks an injunction against these Defendants to prevent this irreparable harm from continuing.

298.    Bluegreen is entitled to recover its attorneys' fees and costs from these Defendants under Fla. Stat. §§ 501.2105 and 501.211.

### **Prayer for Relief**

Wherefore, Bluegreen respectfully requests the Court enter Final Judgment in its favor and against the Defendants, jointly and severally, for the following:

a) preliminary injunctive relief as to all Counts;

b) permanent injunctive relief as to all Counts;

c) actual damages as to Counts I through VIII, including, without limitation, disgorgement of profits;

d) corrective advertising;

e) treble damages as to Counts I, II, III, and IV;

f) punitive damages;

g) attorneys' fees;

h) costs;

i) pre- and post- judgment interest; and

j) such other and further relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Eric C. Christu*
**ERIC C. CHRISTU, ESQ.**
Florida Bar No. 434647
ecchristu@shutts.com
**SHUTTS & BOWEN, LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

and

**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL QUINN, ESQ.**
Florida Bar No. 84587
mquinn@shutts.com

**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile: (407) 849-7255

*Counsel for Plaintiffs*

Dated: December 30, 2020.

ORLDOCS 18219417 4