## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-cv-25318-BLOOM/Otazo-Reyes

BLUEGREEN VACATIONS UNLIMITED, INC.,
and BLUEGREEN VACATIONS CORPORATION,

      Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC,
*et al.*

      Defendants.

_____/

### OMNIBUS ORDER ON PLAINTIFFS' MOTIONS TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

**THIS CAUSE** is before the Court upon Plaintiffs' Unopposed in Part and Opposed in Part Motion to Strike Affirmative Defenses from Systema Marketing, Inc. and Shayna G. Schroeder's Answer, ECF No. [57], Plaintiff's Motion to Strike Defendant Harold O. Miller's Affirmative Defenses, ECF No. [62], and Plaintiffs' Motion to Strike Defendant Vindaloo Travel Network, LLC, Timeshare Termination Team, LLC, Brian Stephen Wilbur, and Holly Wilbur's Affirmative Defenses, ECF No. [89], (collectively, the "Motions"). The Motions have been briefed and are ripe for consideration. *See* ECF Nos. [68], [75], [82], [98], [108]. The Court has carefully reviewed the Motions, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motions are granted in part and denied in part.

### I.    BACKGROUND

This case involves an alleged scheme by Defendants to offer timeshare owners a guaranteed way to get out of their contracts. According to the Complaint, individuals purchase

timeshare interests through Bluegreen. ECF No. [1] ¶ 3. Defendants are not parties to the contracts between Bluegreen and the individuals who purchase timeshare interests ("Bluegreen Owners"); however, Defendants are alleged to falsely advertise timeshare exit services that purport to cancel the Bluegreen Owners' contracts. *Id*. ¶ 7. As alleged in the Complaint, Defendants do not have the ability to cancel the contracts and through their coordinated scheme, Defendants eventually cause the Bluegreen Owners to default on their timeshare obligations to Bluegreen. *Id*. ¶¶ 57-59. Plaintiffs further allege that the scheme involves Marketing Defendants (which include Defendants Timeshare Termination Team, LLC ("TTT"), Brian Wilbur and Holly Wilbur, and Shayna G. Schroeder), and Lawyer Defendants (which include Defendant Miller). *Id*. ¶ 60. The Marketing Defendants employ false and misleading advertising, enter contracts to provide their services to Bluegreen Owners, and cause the Bluegreen Owners to cease making payments under their contracts with Bluegreen. *Id*. ¶¶ 67-68. The Lawyer Defendants then send a form letter to Bluegreen designed to cut off communication between Bluegreen and the Bluegreen Owners, with the overall purpose of diverting payments from Bluegreen to the Marketing and Lawyer Defendants, resulting in damage to the Bluegreen Owners' credit. *Id*. ¶¶ 71, 84-85.

As a result of Defendants' alleged actions, Plaintiffs assert claims for false advertising (Counts I, III), contributory false advertising (Counts II, IV), tortious interference with contractual relations (Count V, VI), conspiracy to commit tortious interference with timeshare contracts (Counts VII, VIII), violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Counts IX, X). In the Motions, Plaintiffs request that various of Defendants' asserted affirmative defenses be stricken. The Court will consider each Motion in turn.

## II.    LEGAL STANDARD

"An affirmative defense is one that admits to the complaint, but avoids liability, wholly or partly, by new allegations of excuse, justification, or other negating matters. A defense that simply points out a defect or lack of evidence in the plaintiff's case is not an affirmative defense." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D. 668, 671 (S.D. Fla. 2013) (internal citations omitted).

Rule 12(f) of the Federal Rules of Civil Procedure permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). District Courts have "broad discretion in considering a motion to strike under Fed. R. Civ. P. 12(f)." *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1317–18 (S.D. Fla. 2005). Despite this discretion, "'[a] motion to strike is a drastic remedy[,]' which is disfavored by the courts and 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" *Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d 1345, 1348 (M.D. Fla. 2002) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962) and *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978)).

"Courts have developed two schools of thought regarding the pleading standard required for affirmative defenses, and the Eleventh Circuit has not yet resolved the split in opinion." *Ramnarine v. CP RE Holdco 2009-1, LLC*, No. 12-61716-CV, 2013 WL 1788503, at *1 (S.D. Fla. Apr. 26, 2013). Some courts in the Eleventh Circuit have concluded that affirmative defenses are subject to the heightened pleading standard of Rule 8(a), as set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See, e.g. Moore v. R. Craig Hemphill Assocs.*, No. 3:13-CV-900-J-39, 2014 WL 2527162, at *2 (M.D. Fla. May 6, 2014); *see also Adams v. JP Morgan Chase Bank, N.A.*, No. 3:11-CV-337-J-37, 2011 WL

2938467, at *2-3 (M.D. Fla. July 21, 2011). Others have held that affirmative defenses are subject to less stringent standard under Rules 8(b) and 8(c), and that affirmative defenses need only "provide fair notice of the nature of the defense and the grounds upon which it rests." *See e.g., Sparta Inc. Co. v. Colareta*, No. 13-60579-CIV, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013) (denying in part plaintiff's motion to strike defendant's affirmative defenses because the affirmative defenses provided plaintiff with fair notice); *Ramnarine*, 2013 WL 1788503 at *1 (denying motion to strike affirmative defenses). The Eleventh Circuit has stressed that providing notice is the purpose of Rule 8(c) and it simply guarantees that the opposing party has fair notice of issues that may be raised at trial so that they are prepared to properly litigate the issues. *Id.* at *3.

As this Court has previously opined, the difference in the language between Rule 8(a) and (b) is "subtle but significant." *Northrop & Johnson Holding Co., Inc.*, 16-cv-63008-BLOOM/Valle, 2017 WL 5632041, at *2 (citing *Laferte v. Murphy Painters, Inc.*, No. 17-CIV-60376, 2017 WL 2537259, *2 (S.D. Fla. June 12, 2017). While Rule 8(a) requires "a short and plaint statement of the claim showing that the pleader is entitled to relief," Rule 8(b) merely requires that a party "state in short and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(a) and (b). In plain terms, the language of Rule 8(a) requires the party to "show" that they are entitled to relief, while Rule 8(b) does not. *See Moore*, 2014 WL 2527162, at *2.

This Court has previously concluded that "affirmative defenses are not subject to the heightened pleading standard elucidated in *Twombly* and *Iqbal*." *See Northrop & Johnson Holding Co., Inc.*, 2017 WL 5632041, at *2; *Laferte*, 2017 WL 2537259, at *2; *Abajian v. HMSHost Corp.*, WL 1929134, *3 (S.D. Fla. Apr. 21, 2020); *S.E.C. v. 1 Global Capital LLC*, 331 F.R.D. 434 (S.D. Fla. 2019); *Longhini v. Kendall Lakes Office Park Condo Ass'n, Inc.*, No. 20-cv-23352-

BLOOM/Louis, 2020 WL 7074641, at *3 (S.D. Fla. Dec. 3, 2020). As noted by one district court, "to artificially supply Rules 8(b)(1) and 8(c)(1) with the unique language of Rule 8(a)(2) requiring 'showing' is to contravene well-established principles of statutory construction, which have been found applicable to interpreting the Federal Rules of Civil Procedure." *E.E.O.C. v. Joe Ryan Enterps., Inc.*, 281 F.R.D. 660, 663 (M.D. Ala. 2012) (citing *Bus. Guides v. Chromatic Commc'ns Enterps., Inc.*, 498 U.S. 533, 540-41, 111 S. Ct. 922, 112 L. Ed. 2d 1140 (1991)). Furthermore, "when one considers that a defendant must answer the complaint within 21 days, imposing a different standard for defenses is not unfair." *Floyd v. SunTrust Banks, Inc.*, No. 1:10-cv-2620-RWS, 2011 WL 2441744, at *8 (N.D. Ga. June 13, 2011).

Even so, under this standard, "'an affirmative defense must be stricken when the defense is comprised of no more than 'bare-bones, conclusory allegations' or is 'insufficient as a matter of law.'" *Northrop & Johnson Holding Co., Inc.*, 2017 WL 5632041, at *3 (quoting *Adams*, 294 F.R.D. at 671 and *Home Mgmt. Sols., Inc. v. Prescient, Inc.*, No. 07-20608-CIV, 2007 WL 2412834, at *2 (S.D. Fla. Aug. 21, 2007)). "A defense is insufficient as a matter of law only if: (1) on the face of the pleadings, it is patently frivolous, or (2) it is clearly invalid as a matter of law." *Microsoft Corp. v. Jesse's Computers & Repair, Inc.*, 211 F.R.D. 681, 683 (M.D. Fla. 2002).

## III.   DISCUSSION

### A.   Plaintiffs' Motion to Strike Systema Marketing, Inc. and Shayna G. Schroeder's Affirmative Defenses, ECF No. [57]

Plaintiffs move to strike the Fifth, Sixth, Seventh, Tenth, Twelfth, Fifteenth, Sixteenth, Eighteenth, Nineteenth, Twentieth, and Twenty-Third Affirmative Defenses asserted by Defendants Systema Marketing, Inc. and Shayna G. Schroeder (together, "Systema Defendants").[1]

---

[1] Plaintiffs contend that the Court should strike the Fifteenth through Twentieth Affirmative Defenses, yet they make no argument specifically with respect to the Seventeenth Affirmative Defense. Accordingly, the Court will assume Plaintiffs are not seeking to strike the Seventeenth Affirmative Defense.

Plaintiffs argue that Systema Defendants' defenses fall into two general categories: (1) defenses that are insufficiently pleaded; and (2) defenses that are legally insufficient and inapplicable on their face.

### i.   Insufficiently pleaded defenses

Plaintiffs argue that Defendants' Tenth Affirmative Defense based upon the statute of limitations should be stricken because it states simply that "Plaintiffs' claims are barred in whole or in part by the applicable statutes of limitations." ECF No. [48] at 28. Plaintiffs rely on *Lynch v. Continental Group, Inc.*, No. 12-21648-CIV, 2013 WL 166226, at *5 (S.D. Fla. Jan. 15, 2013), in which the court granted the request to strike a statute of limitations defense where there were no facts pleaded to support the defense. However, the court in *Lynch* was applying the *Twombly/Iqbal* standard, which this Court has determined does not apply to affirmative defenses. Indeed, the statute of limitations is expressly listed in Rule 8(c) of the Federal Rules of Civil Procedure as a valid affirmative defense, and "simply stating that Plaintiff's claims are barred by the statute of limitations is sufficient to put Plaintiff on notice of a statute of limitations defense." *Sport Mgmt. Sys., LLC v. Woolley Grp., LLC*, No. 15-cv-62224-BLOOM/Valle, 2016 WL 8793334, at *2 (S.D. Fla. May 11, 2016) (quoting *Smith v. Wal-Mart Stores, Inc.*, No. 1:11-CV-226-MP-GRJ, 2012 WL 2377840, at *5 (N.D. Fla. June 25, 2012)). Accordingly, the Court denies the request to strike the Tenth Affirmative Defense.

Plaintiffs also argue that Defendants' Twelfth Affirmative Defense asserting that "Plaintiffs' claims are barred by the doctrines of waiver, acquiescence, and estoppel," should be stricken. The Systema Defendants do not oppose Plaintiffs' request. Accordingly, the Court grants Plaintiffs' request to strike the Twelfth Affirmative Defense without prejudice.

### ii.  Legally insufficient defenses

Plaintiffs move to strike Systema Defendants' Fifth Affirmative Defense on the basis that it does not apply because the existence of any liquidated damages provision is irrelevant to the determination of whether Systema Defendants engaged in the actions alleged in the Complaint. The Fifth Affirmative Defense states that

> Pursuant to Plaintiffs' contracts with Bluegreen Owners and other documents governing Bluegreen Owners' relationship with Plaintiffs, Plaintiffs are entitled to and receive liquidated damages when Bluegreen Owners' default. Plaintiffs are barred from recovering additional damages beyond the liquidated damages they recover.

ECF No. [48] at 27. Plaintiffs' argument misses the mark. While the Court agrees that the existence of a liquidated damages provision is irrelevant to the substantive determination of Plaintiffs' claims, the provision may be relevant with respect to determining the measure of any potential damages with respect to Plaintiffs' tortious interference claim against Systema Defendants. As such, Plaintiffs fail to demonstrate that the Fifth Affirmative Defense should be stricken.

Plaintiffs also request that the Court strike the Sixth Affirmative Defense based on the litigation privilege. In the Sixth Affirmative Defense, Systema Defendants assert that

> The litigation privilege is extended to Defendants by virtue of their, or their co-Defendants, serving as agents for timeshare owners with respect to timeshare owners' attempts to obtain legal services and the rendition of same. The litigation privilege provides absolute immunity with respect to communications made in furtherance of the litigation privilege and extends to legal services provided in contemplation of litigation, including pre-suit demand letters and similar actions. The litigation privilege extends to Defendants by virtue of an agency relationship with Bluegreen Owners (the potential litigant) and the integral role in supporting the pre-litigation actions of Lawyer Defendants.

ECF No. [48] at 27. Plaintiffs argue that Systema Defendants' assertion of the litigation privilege is misplaced because they have not sued anyone on behalf of their Bluegreen clients. In response, Systema Defendants argue that the litigation privilege can apply to pre-suit activity and whether it

Case No. 20-cv-25318-BLOOM/Otazo-Reyes

does apply is a question of fact. Systema Defendants are correct that the litigation privilege can extend to pre-suit activities. *See Kelly v. Palmer, Reifler, & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1368-69 (S.D. Fla. 2010) (recognizing that the litigation privilege may apply to pre-suit communications). In addition, the Court agrees that whether the privilege may apply is an issue of fact. The authorities cited by Plaintiffs involved cases at the summary judgment stage, and do not establish otherwise. *Orange Lake Country Club, Inc. v. Reed Hein & Assocs., LLC*, 367 F. Supp. 3d 1360, 1372 (M.D. Fla. 2019) (letters not protected in the absence of evidence that they were required by statute or by contract as a conditions precedent to suit, or related to the prosecution or defense of a suit); *Westgate Resorts, Ltd. v. Sussman*, 387 F. Supp. 3d 1318, 1354 (M.D. Fla. 2019) (no litigation privilege where party admitted that communications did not contemplate litigation and stated so).[2] As a result, the Court denies the request to strike the Sixth Affirmative Defense.

Plaintiffs next move to strike the Systema Defendant's Seventh Affirmative Defense based on unclean hands. Systema Defendants assert that

> Plaintiffs' claims are barred by the doctrine of Unclean Hands. Plaintiffs induce consumers into purchasing worthless timeshare interests at "today only" high-pressure timeshare sales presentations and refuse to offer consumers relief from their perpetual financial obligations associated with the same. Plaintiffs promote the "value" of their timeshare products and the ease consumers can sell or dispose of their timeshare interests. Plaintiffs then refuse to work in good-faith with, and in many instances even respond to, its consumer-victims' agents/attorneys who contact Plaintiffs on consumers' behalf and instead follow their internal contract termination procedure to take the timeshare interests back to resell for ever-increasing monetary amounts.

ECF No. [48] at 27. Plaintiffs argue that this defense should be stricken because Systema Defendants cannot assert unclean hands based on a third party's alleged injury—in this case, the

---

[2] Plaintiffs' reliance on *Trent v. Mort. Electronic Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007), is misplaced. In *Trent*, the court did not find that pre-suit communications could never be protected by the litigation privilege; rather, the court declined to extend the privilege to pre-suit communications where the parties agreed that they were not required by law. Here, there is no such agreement.

Bluegreen owners. The Court agrees. The doctrine of unclean hands requires that a party be personally injured by the alleged wrongful actions. *Calloway v. Partners Nat'l Health Plans*, 986 F.2d 446, 451 (11th Cir. 1993) ("[T]he plaintiff's wrongdoing does not bar relief unless the defendant can show that it was personally injured by her conduct." (citations omitted)). Systema Defendants assert that they, as the Bluegreen owners' agents, are personally injured by Plaintiffs' "horrible treatment" of the Bluegreen owners. However, as written, the Seventh Affirmative Defense does not state that Systema Defendants are personally harmed by Plaintiffs' treatment of the Bluegreen owners, nor have Systema Defendants cited any authority to support their contention that the allegations fall within their roles as agents for the Bluegreen owners. Accordingly, the Court strikes the Seventh Affirmative Defense as insufficient.

Plaintiffs also request that the Court strike Systema Defendants' Fifteenth Affirmative Defense, which states that "[t]he plain language and intent of the Lanham Act does not provide Plaintiffs a claim for contributory false advertising." ECF No. [48] at 28. Indeed, the United States Court of Appeals for the Eleventh Circuit has held that a plaintiff may bring a claim for contributory false advertising. *Duty Free Ams., Inc. v. Estee Lauder Cos., Inc.*, 797 F.3d 1248, 1276 (11th Cir. 2015). In response, Systema Defendants argue that the Fifteenth Affirmative Defense should not be stricken because several courts outside of the Eleventh Circuit have reached the opposite conclusion and that the Eleventh Circuit will likely be asked to revisit its decision in the near future. However, *Duty Free Americas, Inc.* is binding on the Court unless and until the Eleventh Circuit reconsiders its decision, and therefore the Fifteenth Affirmative Defense is legally insufficient and will be stricken with prejudice.

Next, Plaintiffs argue that Systema Defendants' agency defenses should be stricken because they are specious and misapprehend the law of agency. Specifically, Plaintiffs request that

the Court strike the Sixteenth, Eighteenth, and Nineteenth Affirmative Defenses. The Sixteenth Affirmative Defense asserts that "Plaintiffs' claims based upon tortious interference are barred because Defendants or co-Defendants are timeshare owners' agents and thus Defendants could not have interfered with or conspired to interfere with their principals' timeshare contracts." ECF No. [48] at 28-29. The Eighteenth Affirmative Defense states that "Plaintiffs' claims against Defendants for tortious interference are barred because Defendants, or co-Defendants, enjoy the competition privilege to interfere and any interference was in Defendants' economic interest." *Id*. at 29. The Nineteenth Affirmative Defense states that "[a]ny interference with a contract was justified, in the Bluegreen Owners' best interest, and served the public interest because, among other reasons, Bluegreen Owners rarely if ever incur actual damages and the underlying subject contracts are oppressive, unfair and in many cases illegal." *Id*.

Plaintiffs argue that false representations and fraudulent misrepresentations render any agent or attorney liable for tortious interference, and the allegations are that Systema Defendants use false and/or misleading representations to induce owners to breach their contracts. However, whether the representations made by Systema Defendants are false or fraudulent is an issue of fact, and therefore, the agency defenses are not legally insufficient. *See Westgate Resorts, Ltd.*, 387 F. Supp. 3d at 1353 (finding that evidence in the record at summary judgment demonstrated that defendant's directions were fraudulent and wrongful). As such, the Court denies the request to strike the Sixteenth, Eighteenth, and Nineteenth Affirmative Defenses.

In the Twentieth Affirmative Defense, Systema Defendants assert that Plaintiffs' claim for civil conspiracy is barred by the intra-corporate conspiracy doctrine." ECF No. [48] at 29. Plaintiffs argue that this defense should be stricken because there are no facts pleaded in support, and it is inapplicable in this case. "[U]nder the [intra-corporate conspiracy] doctrine, a corporation

cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves." *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). In response, Systema Defendants argue that the Complaint contains allegations that Schroeder and Defendant Jordan Salkin are officers of Systema Marketing, Inc. and Freedom Consumer Services, LLC, that the two entities are shell companies and interchangeable, and that these defendants are parties to the same conspiracy. ECF No. [1] ¶¶ 34-37, 261-68. Plaintiffs also allege that Systema Defendants conspired with other defendants in the case, *see id.* ¶ 262; however, to the extent that Plaintiffs' conspiracy claim is based upon the actions amongst Schroeder, Salkin, Systema Marketing, Inc. and Freedom Consumer Services, LLC, the Court agrees that the intra-corporate conspiracy doctrine may apply. Accordingly, the Court denies Plaintiffs' request to strike the Twentieth Affirmative Defense.

Finally, Plaintiffs argue that the Twenty-Third Affirmative Defense should be stricken as legally insufficient. The Twenty-Third Affirmative Defense states that "Plaintiffs lack standing under FDUTPA for the conduct alleged because Plaintiffs are not consumers and did not engage in consumer transactions with Defendants." ECF No. [48] at 29. According to Systema Defendants, a business may only assert a FDUTPA claim if the business engaged in a transaction to purchase goods or services.

FDUTPA is to be construed "liberally" to promote its underlying policies. Fla. Stat. § 501.202. In order to have standing to recover damages under FDUTPA, a claimant must be a "person," and "anyone aggrieved" by a FDUTPA violation may seek declaratory or injunctive relief. *See* Fla. Stat. § 501.211(2) (conferring standing on "a person who has suffered a loss as a result of a violation of this part") and § 501.211(1) (stating that "anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates

this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.").

Under Florida law, a party need not be a consumer to bring a FDUTPA claim. *See Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 166-69 (Fla. 4th DCA 2015) (reversing trial court's dismissal of FDUTPA claim where the lower court determined that plaintiff lacked standing because it was not in a consumer relationship with defendant, and noting that "while the claimant would have to prove that there was an injury or detriment to consumers in order to satisfy all of the elements of a FDUTPA claim, the claimant does not have to be a consumer to bring the claim") (emphasis omitted); *see also Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016) (explaining that competitors have standing to bring FDUTPA claims and that recovery of damages under the FDUTPA is not limited to consumers).

The Court acknowledges that it has previously determined that a "person" under FDUTPA only applies to "'consumers' who engage in the 'purchase of goods and services,'" *Raimbeault v. Accurate Machine & Tool, LLC*, No. 14-cv-20136, 2014 WL 5795187, at *7 (S.D. Fla. Oct. 2, 2014); however, this determination no longer reflects current Florida law.[3] The *Raimbeault* decision was based on *Carrol v. Lowes Home Centers, Inc.*, No. 12-23996-CIV, 2014 WL 1928669 (S.D. Fla. May 6, 2014), which concluded that FDUTPA is "ambiguous as to who can bring suit under Fla. Stat. § 501.211(2)" and recognized that at that time, there was "no Florida state court decision on point" regarding whether the 2001 statutory amendment "expanded the statute to reach non-consumers[.]" *Id.* at *3. That court ultimately determined that "person" "applies only to

---

[3] For the same reason, Systema Defendants' reliance on *Taft v. Dade Cnty. Bar Assoc., Inc.*, No. 15-cv-22072-KMM, 2015 WL 5771811, at *4 (S.D. Fla. Oct. 2, 2015) and *Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290 (S.D. Fla. 2014) is misplaced.

'consumers'" and that the Florida legislature "did not intend to expand the FDUTPA to non-consumers." *Id.*

Since then, Florida state courts have ruled uniformly that non-consumers can bring FDUTPA actions. *See, e.g., Caribbean Cruise Line, Inc.*, 169 So. 3d at 169 ("This change indicates that the legislature no longer intended FDUTPA to apply to only consumers, but to other entities able to prove the remaining elements of the claim as well."); *Bailey v. St. Louis*, 196 So. 3d 375, 383 (Fla. 2d DCA 2016); *Off Lease Only, Inc. v. LeJeune Auto Wholesale, Inc.*, 187 So. 3d 868, 869 n.2 (Fla. 3d DCA 2016) (noting that it is "correct that section 501.211(2) no longer requires one to be a 'consumer' to maintain an action for damages under FDUTPA"). *See also Chiron Recovery Ctr., LLC v. AmeriHealth Hmo of N.J., Inc.*, No. 9:16-CV-82043, 2017 WL 4390169, at *6-7 (S.D. Fla. Oct. 3, 2017) (following the "determinations of the Florida District Courts of Appeal that non-consumers may sue under FDUTPA" because although there is a split in the federal district courts, "the state appellate courts that have ruled on the issue have determined that non-consumers have standing under FDUTPA" and "federal district courts interpreting state law 'are bound to follow any decisions of the state's intermediate appellate courts" when a state supreme court has not ruled on an issue) (citations omitted). While a FDUTPA claim involves a trade or commerce component, whether Plaintiffs can ultimately "prove the remaining elements of the claim," *Caribbean Cruise Line, Inc.*, 169 S. 3d at 169, does not otherwise affect their standing. Accordingly, the Court grants Plaintiffs' request to strike the Twenty-Third Affirmative Defense with prejudice.

**B. Plaintiffs' Motion to Strike Defendant Harold O. Miller's Affirmative Defenses, ECF No. [62]**

Plaintiffs move to strike the Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, Thirteenth, Sixteenth, Nineteenth, Twentieth, and Twenty-First Affirmative Defenses asserted by

Defendant Harold O. Miller ("Miller"). Plaintiffs argue that Miller's defenses fall into two general categories, (1) defenses that are insufficiently pleaded, and (2) defenses that are legally insufficient and inapplicable on their face.

### i. Insufficiently pleaded defenses

Plaintiffs move to strike Miller's antitrust defenses – the Eighth and Ninth Affirmative Defenses – for failing to set forth sufficient predicate facts to discern the conduct Miller contends violates the Sherman and Clayton Acts. The Eighth Affirmative Defense states that "Plaintiffs' claims fail and are barred because Plaintiffs are impermissibly asking for relief which would prevent Miller from engaging in counseling and representing disaffected timeshare owners in restraint of trade and in violation of the Sherman Antitrust Act, 15 U.S.C. § , et seq." ECF No. [34] at 18-19. The Ninth Affirmative Defense similarly states that "Plaintiffs' claims fail and are barred because Plaintiffs are impermissibly asking for relief which would prevent Miller from engaging in counseling and representing disaffected timeshare owners in restraint of trade and in violation of the Clayton Antitrust Act, 15 U.S.C. § 12, et seq." *Id*. at 19. Thus, Miller is asserting that the relief Plaintiffs are seeking constitutes an unfair restraint of trade in violation of antitrust laws because it would prevent him from representing his timeshare owner clients. Upon review, Plaintiffs have not demonstrated that the defenses are patently frivolous or invalid as a matter of law, *see Microsoft Corp.*, 211 F.R.D. at 683. Accordingly, the request to strike the Eighth and Ninth Affirmative Defenses is denied.

Plaintiffs next move to strike Miller's statute of limitations defense as insufficiently pleaded. The Twenty-First Affirmative Defense states that "[e]ach count of the Complaint against Miller is barred by the applicable specific statute of limitations to the extent any of the actions complained of against Miller occurred outside of applicable specific statutes of limitations for each

count." ECF No. [34] at 21. The statute of limitations is expressly listed in Rule 8(c) of the Federal Rules of Civil Procedure as a valid affirmative defense, and "simply stating that Plaintiff's claims are barred by the statute of limitations is sufficient to put Plaintiff on notice of a statute of limitations defense." *Sport Mgmt. Sys., LLC*, 2016 WL 8793334, at \*2. Thus, the Court denies the request to strike Miller's Twenty-First Affirmative Defense.

Finally, on the basis that they are insufficiently pleaded, Plaintiffs seek to strike the Nineteenth and Twentieth Affirmative Defenses. The Nineteenth Affirmative Defense states that "Plaintiffs' alleged damages are due, in whole or in part, to their own actions, inaction, fault, or lack of due diligence." ECF No. [34] at 21. The Twentieth Affirmative Defense states that "Plaintiffs' alleged injuries or damages were due, in whole or in part, to the actions or fault of third parties for whom Miller is not responsible." *Id*. Plaintiffs argue that these defenses should be stricken because they do not explain how Plaintiffs or other unidentified third parties were responsible for the damages alleged in the Complaint. However, Plaintiffs have provided no citations to authority to support their contention that an affirmative defense such as these must explain how it applies in the context of a particular case. Indeed, these defenses adequately put Plaintiffs on notice of the nature of the defenses. Therefore, Plaintiffs fail to demonstrate that the Nineteenth and Twentieth Affirmative Defenses should be stricken.

### ii.  Legally insufficient defenses

Plaintiffs seek to strike the remaining challenged affirmative defenses as legally insufficient. First, Plaintiffs argue that the Court should strike Miller's First Amendment and privilege defenses, which include the Third, Fourth, Fifth, Sixth, Seventh, and Tenth Affirmative Defenses.

In the Third Affirmative Defense, Miller asserts that "Plaintiffs' claims fail and are barred because Miller's speech is protected by the First Amendment of the United States Constitution, including but not limited to, Miller's right to provide legal advice to clients and the clients' right to freely receive such advice from the lawyer of their choosing." ECF No. [34] at 17. The Tenth Affirmative Defense states that

> Plaintiffs' claims fail and are barred because they constitute transparent attempts to intimidate defrauded and/or disadvantaged timeshare consumers and/or the attorneys for such consumers and thereby restrict and/or inhibit the right of such consumers to petition for redress of grievances before the judicial branches of government, as protected by the First Amendment to the Unites States Constitution, as well as by the comparable and applicable provisions enacted in other jurisdictions of the United States, including, but not limited to, Article 1, § 5 of the Florida Constitution.

*Id.* at 19. The Fifth Affirmative Defense states that "Plaintiffs' claims fail and are barred by the litigation immunity privilege. The alleged wrongful conduct of Miller consists of nothing more than actions taken to protect and advance clients' legal rights and to secure a favorable outcome for clients and actions reasonably attendant to litigation." *Id.* at 18. The Sixth Affirmative Defense similarly asserts that "Plaintiffs' claims fail and are barred by the Noerr Pennington Doctrine. The alleged wrongful conduct of Miller consists of nothing more than actions taken to protect and advance clients' legal rights and to secure a favorable outcome for clients and actions reasonably attendant to litigation." *Id.*

Plaintiffs argue that these defenses should be stricken because they are conclusory and duplicative of each other. In addition, Plaintiff contends that courts have rejected these and similar defenses in almost identical cases, holding that sending baseless demand letters—especially when they are not followed by actual litigation—is not protected activity. However, as the Court previously held with respect to Systema Defendants' similar defenses, whether the demand letters allegedly sent were baseless is an issue of fact, and the cases relied upon by Plaintiffs were

determined at the summary judgment stage, and are therefore not particularly helpful in this case at this stage. *See supra* pp. 8-9. Plaintiffs additionally rely on *Island Company LLC v. Abercrombie & Fitch Co.*, No. 13-80333-CIV-DIMTROULEAS/SNOW, 2014 WL 12488575, at *1 (S.D. Fla. Feb. 19, 2014), as a basis to strike the First Amendment defenses. However, in *Island Company LLC*, the court applied the *Twombly/Iqbal* standard to affirmative defenses, which this Court has held does not apply. Accordingly, Plaintiffs fail to demonstrate that the Third, Fifth, Sixth, or Tenth Affirmative Defenses should be stricken.

Plaintiffs argue next that the Fourth Affirmative Defense, which states that "[t]o the extent Plaintiffs' claims against Miller [are] premised upon legal advice to breach a contract, such advice is privileged and cannot form a legally-cognizable basis for the claims against Miller," ECF No. [34] at 18, should be stricken because courts evaluating nearly identical behavior have held that such instructions are not privileged. However, Plaintiffs rely upon *Westgate Resorts, Ltd.*, in which the court, on summary judgment and with a developed record, determined that the "context in which [the attorney] gives these statements makes them fraudulent." *See* 387 F. Supp. 3d at 1352. Here, there is no record before the Court, and therefore, the Court will not strike the Fourth Affirmative Defense.

Next, Plaintiffs argue that the Court should strike the Seventh Affirmative Defense asserting judgmental immunity because the doctrine does not apply here. The Seventh Affirmative Defense states that "Plaintiffs' claims fail and are barred by the doctrine of judgmental immunity. The alleged wrongful conduct of Miller consists of nothing more than actions taken to protect and advance clients' legal rights and to secure a favorable outcome for clients and actions reasonably attendant to litigation." ECF No. [34] at 18. The judgmental immunity doctrine "provides malpractice immunity to attorneys making good faith tactical decisions or decisions on a fairly

debatable point of law." *Inlet Condo. Ass'n, Inc. v. Childress Duffy, Ltd., Inc.*, 615 F. App'x 533, 534 (11th Cir. 2015) (quoting *Crosby v. Jones*, 705 So. 2d 1356, 1358 (Fla. 1998) (quotations and alterations omitted). In Florida, an "attorney may be held liable for damages incurred by a client based on the attorney's failure to act with a reasonable degree of care, skill and dispatch." *Crosby*, 705 So. 2d at 1358. Plaintiffs argue that the judgmental immunity defense is inapplicable here because Plaintiffs are not Miller's clients, nor is this a malpractice case against Miller. In response, Miller acknowledges that the doctrine of judgmental immunity applies in the context of legal malpractice but contends that the claims in this case are similar to legal malpractice claims. Therefore, Miller should be entitled to claim judgmental immunity as a defense. However, Miller provides no citation to authority for the proposition that the judgmental immunity doctrine would apply outside the context of an attorney's relationship with his own client or to a claim other than malpractice. Accordingly, the Court grants the request to strike the Seventh Affirmative Defense with prejudice.

Plaintiffs next move to strike the Thirteenth Affirmative Defense, which asserts that Plaintiffs' claims fail and are barred because Plaintiffs fail to identify the specific contracts and relationships with which Miller allegedly interfered." ECF No. [34] at 20. This defense, however, merely attempts to point out a pleading deficiency, and is not a proper affirmative defense. In order to state a claim for tortious interference with contractual relations, a plaintiff need allege "(1) the existence of a contract; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the contract's breach; (4) the absence of any justification or privilege; and (5) damages resulting from the breach." *U.S. Life Ins. Co. v. Logus Mfg. Corp.,* 845 F. Supp. 2d 1303, 1320 (S.D. Fla. 2012) (citation omitted). A tortious interference claim is not subject to a heightened pleading standard. *ThermoLife Int'l LLC v. Vital Pharms. Inc.*, No. 19-cv-61380-

BLOOM/Valle, 2020 WL 409594, at *3 (S.D. Fla. Jan. 24, 2020). However, rather than striking the Thirteenth Affirmative Defense, the Court will treat it as a denial. *See Laferte*, 2017 WL 2537259, at *3.

Finally, Plaintiffs request that the Court strike the Sixteenth Affirmative Defense, which asserts that "Plaintiffs' claim for civil conspiracy fails and is barred because it is based on the lack of any intentional underlying tort which was the subject of the alleged conspiracy. No such underlying tort exists or has been committed." ECF No. [34] at 20. Under Florida law, "[a]n actionable conspiracy requires an actionable underlying tort or wrong." *Fla. Fern Growers Ass'n, Inc. v. Concerned Citizens of Putnam Cnty.*, 616 So. 2d 562, 565 (Fla. 5th DCA 1993) (citation omitted). Here, Plaintiffs have asserted claims for violations of the Lanham Act, FDUTPA, and tortious interference. As such, Miller's Sixteenth Affirmative Defense constitutes a denial of the claims asserted in the Complaint and the Court will treat it as a denial, rather than strike it.

### C. Plaintiffs' Motion to Strike Defendants Vindaloo Travel Network, LLC, Timeshare Termination Team, LLC, Brian Stephen Wilbur, and Holly Wilbur's Affirmative Defenses, ECF No. [89][4]

Plaintiffs move to strike the Second, Fourth, Fifth, Sixth, Seventh, Eighth, and Tenth Affirmative Defenses asserted by Defendants Vindaloo Travel Network, LLC, Timeshare Termination Team, LLC, Brian Stephen Wilbur, and Holly Wilbur (collectively, "TTT Defendants"). Plaintiffs argue that Miller's defenses fall into two general categories, (1) defenses that are insufficiently pleaded, and (2) defenses that are legally insufficient and inapplicable on their face.

---

[4] The Court acknowledges that TTT Defendants filed their Answer, Affirmative Defenses, and Amended Counterclaim on June 1, 2021, *see* ECF No. [114], which supersedes the prior Answer, Affirmative Defenses, and Counterclaim, ECF No. [74]. However, the affirmative defenses asserted are identical to those in the pleading to which Plaintiffs' Motion to Strike is directed. As such, and in the interests of efficiency and judicial economy, the Court will address the merits of the Motion to Strike since TTT Defendants did not amend their affirmative defenses.

### i.   Insufficiently pleaded defenses

Plaintiffs move to strike the Fourth and Tenth Affirmative Defenses on the basis that they state legal conclusions with no factual support. The Fourth Affirmative Defense asserts that "Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, acquiescence, and estoppel." ECF No. [74] at 35; ECF No. [114] at 35. The Tenth Affirmative Defense asserts that "Plaintiffs' claim for civil conspiracy is barred by the intra-corporate civil conspiracy doctrine." *Id*. at 36. Plaintiffs argue that these defenses should be stricken because they do not present any factual basis to indicate the relevance of either defense. With respect to the Fourth Affirmative Defense, the Court agrees because the defense does not provide any facts to indicate which of Plaintiffs' actions TTT Defendants contend would constitute waiver, acquiescence, and/or estoppel. *See Laferte*, 2017 WL 2537259, at *4 (denying motion to strike estoppel defense where defendants stated factual basis for application of the defense). As such, the Court strikes the Fourth Affirmative Defense.

However, Plaintiffs fail to demonstrate that the Court should strike the Tenth Affirmative Defense. As with Systema Defendants, the Complaint contains allegations that the Wilburs are founders and co-owners of TTT, and that TTT is indistinguishable from them. ECF No. [1] ¶¶ 31-33. In addition, the Complaint alleges that TTT Defendants, along with Miller, are parties to the same conspiracy. *Id*. ¶¶ 269-78. As such, to the extent that Plaintiffs' conspiracy claim is based upon the actions among TTT Defendants, the intra-corporate conspiracy doctrine may apply. Accordingly, the Court denies Plaintiffs' request to strike the Tenth Affirmative Defense.

### ii.   Legally insufficient defenses

Plaintiffs next move to strike the Second, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses as legally insufficient and inapplicable. The Court considers each in turn.

Case No. 20-cv-25318-BLOOM/Otazo-Reyes

The Second Affirmative Defense states as follows:

Plaintiffs' claims are barred, in whole or in part, by the doctrine of unclean hands. Plaintiffs have fraudulently misrepresented the value of their services to the Bluegreen owners by falsely claiming that timeshare interests have resale value. Plaintiffs have also misrepresented their willingness to buy back timeshare interests from the Bluegreen Owners when the Bluegreen Owners wish to terminate their Timeshare Contracts and failed to fully disclose the perpetual financial obligations attendant to the Timeshare Contracts. Plaintiffs have further refused to honor provisions of the Timeshare Contracts at issue here, such as clauses allowing termination of timeshare interests by the Bluegreen Owners for hardship. Instead, Plaintiffs have continually attempted to sell the Bluegreen Owners additional timeshare interests with greater associated costs and fees while refusing to allow the Bluegreen Owners additional timeshare interests with greater associated costs and fees while refusing to allow the Bluegreen Owners to terminate or sell back their interests and refusing to communicate with the Bluegreen Owners' agents and attorneys.

ECF No. [74] at 34; ECF No. [114] at 34. Plaintiffs argue that this defense should be stricken because TTT Defendants do not point to an injury they have personally suffered as a result of Plaintiffs' alleged actions. As such, the unclean hands defense is legally insufficient. TTT Defendants respond that they have alleged an injury to themselves—"refusing to communicate with the Bluegreen Owners' agents and attorneys." *Id*. However, as alleged, the Second Affirmative Defense relates to injuries sustained by the Bluegreen Owners, and although TTT Defendants assert that the refusal to negotiate is their injury, the factual allegations do not support the assertion. Accordingly, the Court strikes the Second Affirmative Defense.

The Fifth Affirmative Defense states that "Plaintiffs' claims are barred, in whole or in part, due to Plaintiffs' lack of standing to assert the rights of third parties, in particular the timeshare owners who have engaged Defendant TTT's services." ECF No. [74] at 35; ECF No. [114] at 35. Plaintiffs argue that this defense should be stricken because they are not asserting claims on behalf of any third parties, and therefore that the defense is inapplicable and irrelevant. TTT Defendants respond that the defense is relevant to the extent that Plaintiffs may seek to introduce any issues

regarding the rights of third parties. TTT Defendants point to the Complaint which alleges fraudulent practices toward third-party Bluegreen Owners who have contractual rights with TTT. Upon review, the Court agrees with TTT Defendants. The affirmative defense provides fair notice of the nature of the defense as it puts into issue relevant legal and factual issues, and Plaintiffs have not shown that they will be prejudiced by allowing the defense to stand. *See JazAtlanta 519 LLC v. Beazley Underwriting, Ltd.*, No. 18-cv-60498-BLOOM/Valle, 2018 WL 4743634, at *4 (S.D. Fla. Oct. 2, 2018). Accordingly, the Court will deny Plaintiffs' request to strike the Fifth Affirmative Defense.

> The Sixth Affirmative Defense states that
>
> Plaintiffs' claims are barred, in whole or in part, because the litigation privilege extends to the TTT Defendants as the Bluegreen Owners' agents with respect to the Bluegreen Owners' attempts to obtain legal services and results. The TTT Defendants' actions are therefore absolutely privileged with regards to communications made in furtherance of the litigation privilege. This privilege extends to legal services provided in contemplation of litigation, including pre-suit demand letters and similar actions. The TTT Defendants' role supporting Defendant Harold O. Miller as the Bluegreen Owners' agents extends this privilege to the TTT Defendants through Defendant Miller.

ECF No. [74] at 35; ECF No. [114] at 35. Plaintiffs argue that this defense should be stricken because the litigation privilege does not apply to the letters sent on behalf of Bluegreen Owners, and that TTT Defendants are not attorneys to whom the privilege would extend in any event. TTT Defendants respond that Plaintiffs are improperly seeking to impose their factual theories of the case, relying upon the same cases they did in arguing the Systema Defendants' litigation privilege defense is insufficient. *See supra* pp. 7-8. Upon review, the Court agrees. Whether or not the letters in this case are ultimately protected by the litigation privilege, and to whom that privilege will ultimately extend, are factual issues not properly resolved upon a motion to strike. Accordingly, the Court denies the request to strike the Sixth Affirmative Defense.

The Seventh Affirmative Defense states that "Plaintiffs' claims for tortious interference and civil conspiracy are barred, in whole or in part, because the TTT Defendants' actions were taken as agents of the Bluegreen Owners for purposes of legally terminating the Bluegreen Owners' Timeshare Contracts. The TTT Defendants' actions on behalf of the Bluegreen Owners are therefore privileged." ECF No. [74] at 35-36; ECF No. [114] at 35-36. Similar to the argument made with respect to Systema Defendants' agency defenses, Plaintiffs argue that this defense is specious, misapprehends the law of agency, and fails because TTT Defendants are accused of engaging in widespread false and misleading advertising to secure their clients. However, as the Court determined with Systema Defendants' agency defenses, whether the representations made by TTT Defendants are false or fraudulent is an issue of fact. As such, TTT's agency defense is not legally insufficient. *See Westgate Resorts, Ltd.*, 387 F. Supp. 3d at 1353 (finding that evidence in the record at summary judgment demonstrated that defendant's directions were fraudulent and wrongful). As such, the Court denies the request to strike the Seventh Affirmative Defense.

Finally, Plaintiffs argue that the Eighth Affirmative Defense should be stricken. The Eighth Affirmative Defense asserts that "Plaintiffs' claims for tortious interference and civil conspiracy are barred, in whole or in part, because the TTT Defendants and the other Defendants enjoy the competition privilege to interfere and any interference was in Defendants' economic interests." ECF No. [74] at 36; ECF No. [114] at 36. Plaintiffs acknowledge that the privilege to compete can justify interference with a contract; however, they argue that the privilege is defeated if a defendant uses improper means to interfere. *See Bluesky Greenland Env't Sols., LLC v. 21st Century Planet Fund, LLC*, 985 F. Supp. 2d 1356, 1367 (S.D. Fla. 2013). Plaintiffs argue that because TTT Defendants' interference is alleged in the Complaint to be improper, the defense is clearly invalid as a matter of law. Once again, however, Plaintiffs rely on *Bluesky*, a procedurally distinguishable

case in which the court considered the applicability of the competition privilege upon summary judgment. *Id*. Plaintiffs have not provided the Court with authority to support striking such a defense, which ultimately involves issues of fact, nor do they contend that the defense fails to sufficiently put them on notice. As such, the Court denies the request to strike the Eighth Affirmative Defense.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiffs' Motions, **ECF Nos. [57]**, **[62] and [89]**, are **GRANTED IN PART AND DENIED IN PART** as follows:

1.  Plaintiffs' Motion to Strike Systema Defendants' Defenses is **GRANTED** with respect to the Seventh Affirmative Defense and Twelfth Affirmative Defense, which are stricken without prejudice, and with respect to the Fifteenth Affirmative Defense and Twenty-Third Affirmative Defense, which are stricken with prejudice. With respect to the Fifth, Sixth, Tenth, Sixteenth, Eighteenth, Nineteenth, and Twentieth Affirmative Defenses, Plaintiffs' Motion is **DENIED**.

2.  Plaintiffs' Motion to Strike Miller's Defenses is **GRANTED** with respect to the Seventh Affirmative Defense, which is stricken with prejudice. With respect to the Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Thirteenth, Sixteenth, Nineteenth, Twentieth, and Twenty-First Affirmative Defenses, Plaintiffs' Motion is **DENIED**.

3.  Plaintiffs' Motion to Strike TTT Defendants' Defenses is **GRANTED** with respect to the Second Affirmative Defense and Fourth Affirmative Defense, which are stricken without prejudice. With respect to the Fifth, Sixth, Seventh, Eighth, and Tenth Affirmative Defenses, Plaintiffs' Motion is **DENIED**.

Case No. 20-cv-25318-BLOOM/Otazo-Reyes

4. Systema Defendants and TTT Defendants may amend their affirmative defenses **no later than June 25, 2021**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 17, 2021.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record