**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 20-cv-25318-BLOOM/Otazo-Reyes**

BLUEGREEN VACATIONS UNLIMITED, INC., a
Florida corporation, *et ano.*

      Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC, a
Colorado limited liability company, *et al.,*

      Defendants.

_____/

**CORRECTED AMENDED MOTION BY DEFENDANTS MOLFETTA LAW, LLC AND**
**MICHAEL A. MOLFETTA FOR SANCTIONS AGAINST PLAINTIFFS**
**PURSUANT TO FED. R. CIV. P. 11**

Defendants Molfetta Law, LLC ("Molfetta Law") and Michael A. Molfetta (collectively "Molfetta") file this corrected (to comply with page limits, pursuant to [DE 296]) amended Rule 11 motion against Plaintiffs Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Unlimited Corp. (collectively, "Bluegreen").

## I.      INTRODUCTION

> I deserve a way out. I deserve dignity and respect. A timeshare should never be a burden to my family and their physiological needs. There is no protection of the consumer who is deceived into a lifetime of payments. Everything else in ou[r] country can be sold, but a timeshare. Believe me, I tried. I tried to rent. I tried to sell. All adding up to advertising costs, I could never recoup. Not once was I able to rent. Not one buyer, let alone an offer presented. There is no escaping a timeshare, other than by legal recourse. I hope this make[s] my stand clear. I am battered by the costs of this timeshare, facing a financial hardship due to my job loss, my wife's mounting medical bills and loss of my dignity. Please accept my plea, and release me from this life-long burden.[1]

Molfetta represents approximately 400 timeshare owners in their disputes with Bluegreen (collectively "Clients" or "400 Clients").  This Client's "plea" explains why lawyers like Molfetta are needed.  Bluegreen filed this fraudulent lawsuit to strip the 400 Clients of legal counsel and prevent other victims from obtaining legal representation.

This case is a textbook Rule 11 violation, multiplied by 400.  Bluegreen falsely accused Molfetta of systematic, wholesale, and severe misconduct regarding all 400 Clients, including the Client quoted above, with no factual support and for improper purposes.  On January 13, Molfetta served its first Rule 11 Motion.[2]  On the last day of the safe harbor period, Bluegreen moved to amend its Complaint, admitting that "Molfetta Defendants do not provide [the] instruction" to the Clients "to cease making their contractually required payments to Bluegreen."  [DE   267 at 2]. However, while Bluegreen withdrew the substantive tortious interference claim against Molfetta (Count V), it re-pleaded the rest of the Complaint, necessitating this Amended Rule 11 Motion.

---

[1] Excerpt of statement from Bluegreen owner on reasons for hiring Molfetta, included in composite **Exhibit A** at 5-6. Ex. A consists of this and other sample statements, provided by Molfetta Clients when they first retained Molfetta, with names and other identifying information redacted.  These were produced by Molfetta to Bluegreen based on fact-specific waivers, on or about January 20, 2022. As these representative samples show, Bluegreen duped, defrauded, and cheated the Clients into buying timeshares, points, and upgrades, and abused and mistreated them afterwards. Molfetta providing desperately needed counseling and advice to Bluegreen's victims cannot possibly create liability under any theory, as Bluegreen already knows.

[2] The first Rule 11 Motion is attached, without exhibits, as **Exhibit B**.

Other than removing Molfetta from one claim, the Amended Complaint changed nothing about this fraudulent lawsuit. *First*, in continued violation of Rule 11, the Amended Complaint re-alleged other baseless and false allegations, *e.g.*, that Molfetta formed no attorney-client relationship with its 400 Clients; provided no bona fide legal services to the Clients; pretended to act as the Clients' counsel while acting against their interests and harming them; and defrauded and withheld key information from all 400 Clients. *Second*, notwithstanding Bluegreen's admission that it has no evidence Molfetta told the Clients not to pay Bluegreen [DE 267 at 2], its Amended Complaint re-alleged just that, in continued violation of Rule 11.[3]   Bluegreen's contention in the motion to amend—that the Amended Complaint reframes the case to allege that Co-Defendant Timeshare Freedom Group ("TFG") alone induced the Clients to default, with Molfetta liable as conspirator or accessory [DE 267 at 2]—is false.   The Complaint and the Amended Complaint alleged that TFG and Molfetta each induced the 400 Clients to stop paying Bluegreen, and each was the but-for cause of 400 defaults.[4]   Under either theory, the claims are frivolous, and were made and perpetuated for improper purposes.

## II.      MOLFETTA

Michael Molfetta is a highly regarded California lawyer.  He has been lead counsel in over 300 jury trials.  Molfetta Law is a law firm in California, owned by Michael Molfetta.[5]  Molfetta has several practice areas, including: (1) criminal defense; (2) sports work; and (3) consumer protection timeshare work, in which Molfetta represents timeshare owners.  Molfetta did no timeshare work until 2020, when it began to take on pro bono clients.  Between employees and their dependents, approximately 60 people rely on Molfetta Law's continued operation.  Due to the financial hardships from this lawsuit, Molfetta Law will have to start firing employees.

## III.     BLUEGREEN ALLEGED THAT MOLFETTA ENGAGED IN SYSTEMATIC, WHOLESALE, AND SEVERE MISCONDUCT

Bluegreen is suing Molfetta for conspiracy to tortiously interfere with Bluegreen's relationship with the 400 Clients (Count VII), violations of the Florida Deceptive and Unfair Trade

---

[3]  *See, e.g.*, ¶ 16 in DE 1 and DE 270 (alleging that all Defendants, including Molfetta and TFG, "direct, persuade, induce, convince, or otherwise cause" Clients to stop paying Bluegreen and default); *see also* ¶¶ 17, 21, 46, 59, 71, 169, 264 in DE 1 and DE 270.

[4] *See* n.3, *supra*.

[5] *See* https://michaelmolfettalaw.com.

Practices Act for the 400 Clients (Count IX), and contributory Lanham Act violations for the 400 Clients (Count IV), based on its allegations that Molfetta engaged in systematic, wholesale, and severe misconduct. The allegations[6] include:

- "[Molfetta] . . . direct, persuade, induce, convince, deceive, or otherwise cause the [400 Clients'] non-payment of their payment obligations to Bluegreen." [DE 270 ¶16].

- "[Molfetta] do[es] not form attorney-client relationships with its [400 Clients]." *Id.* ¶ 18.

- "[Molfetta is] not acting in the [400 Clients'] best interests as a proper lawyer must." *Id.* ¶ 20.

- "[Michael Molfetta is] renting out [his] law license[] . . . for what amounts to illusory legal services." *Id.*

- "[Molfetta's] procurement of the [400 Clients'] non-payment of their [contracts] results in breach, default, termination of the timeshare interest, and damaged credit [to the 400 Clients.]" *Id.* ¶21.

- "[Molfetta] intentionally target, interfere with, and cause the breach of, contracts with payments obligations owing to Bluegreen[.]" *Id*. ¶ 46.

- "[Molfetta] do[es] little or nothing on [the 400 Clients'] behalf other than directing the [Clients] to stop making payments to . . . Bluegreen" *Id.* ¶ 59.

- [Molfetta[]"direct[s] [the 400 Clients] to cease making payments to Bluegreen, *Id.* ¶71.

- Molfetta's "intent is to facilitate and encourage the [400 Clients'] non-payment" of monies allegedly due and not paid to Plaintiffs. *Id.* ¶ 85.

- Molfetta "duped" all of its 400 Clients, causing the Clients to have "their credit damaged" from defaults. *Id.*

- Molfetta provides only "illusory" services, does not act as counsel to the Clients, but provides a false "facade" of providing legal services to the Clients. *Id*. ¶ 86.

- Molfetta's representation of the Clients "is nothing more than a scheme by which [Molfetta] lure[s] [the 400 Clients] into an unlawful breach" of their contracts with Bluegreen. *Id.* ¶ 169.

- Molfetta's 400 Clients "are deceived into believing that they are receiving legal representation [from Molfetta] when they are not." *Id.* ¶ 222.

---

[6] A copy of the Amended Complaint, with the allegations at issue in yellow highlight, is attached as **Exhibit C**.

- Molfetta "solicit[ed] [its 400 Clients] to terminate or cancel their Timeshare Contracts with Bluegreen, and induc[ed] [its 400 Clients] to stop making payments related to their timeshare interest[s]." *Id.* ¶ 264.

- Molfetta "purported[] to create attorney-client relationships with Bluegreen owners when [Molfetta] actually do not . . . . " *Id.* ¶ 283.

## IV.   RELEVANT FACTS

### A.   BLUEGREEN ALLEGED SYSTEMATIC, WHOLESALE, SEVERE MISCONDUCT WITH NO EVIDENTIARY SUPPORT

#### 1.   Bluegreen's Interrogatory Answers Show No Evidentiary Support

Molfetta's interrogatories requested the factual basis for the allegations, including the identification of witnesses and the substance of their testimony.  Bluegreen's initial answers, served on October 18, 2021, did not provide the requested information. [DE 212-2].  After months of meeting and conferring, *and after receiving the original Rule 11 Motion,* Bluegreen served verified amended answers on February 2, 2022,[7] which confirm Bluegreen has no evidence.[8]

For example, when asked for evidence that Molfetta "left [its 400 Clients] in the dark" and "duped" them about their delinquency status, *Bluegreen admitted that its allegation is not based on testimony of knowledgeable witnesses*:

> The witnesses . . . are  Molfetta Defendants and the timeshare owners themselves.  Bluegreen has **no knowledge** of these witnesses' testimony. [9]

Yet, Bluegreen maintains the allegation is justified:

> Bluegreen bases this allegation on the fact that Molfetta requests that all communications [from Bluegreen] be directed to his office rather than the Bluegreen timeshare owners.[10]

Molfetta directing that communications go through counsel provides *no support* for alleging that Molfetta did not keep his Clients informed and "duped" them.  Bluegreen alredy *knew this allegation was false* from (a) Molfetta's privilege log, which identified emails from Molfetta to

---

[7] Bluegreen served an unsworn copy of the amended answers on February 1, 2022.

[8] **Exhibit D**, Bluegreen Vacations Unlimited's Amended and Supplemental Answers to Molfetta Law's First Set of Interrogatories; *see* Ex. D, Answers 13-23.

[9] Ex. D, Answer 15 (regarding ¶ 85) (emphasis supplied).

[10] *Id.*

Clients attaching Bluegreen account notices,[11] and (b) the recorded call discussed below, initiated by the Client in response to the delinquency notice he received while represented by Molfetta.[12]

As another example, the interrogatories asked for evidence that Molfetta "instruct, direct, persuade, convince, deceive, trick, or otherwise cause Bluegreen owners to stop making legally obligated payments on their Timeshares Contracts to Bluegreen."[13]  *Bluegreen admitted that this allegation is not based on testimony of knowledgeable witnesses*, stating, "Bluegreen has **no knowledge** of what the [non-Bluegreen] witnesses will say."[14]  Bluegreen argues that because Molfetta has not yet sued Bluegreen and because Bluegreen purportedly "typically" refuses to negotiate with Molfetta, Molfetta is incapable of providing value to the Clients.  *Id.*[15]  Bluegreen's uninformed assessment of the value of Molfetta's legal services to the Clients provides *no support* for alleging that Molfetta told the Clients not to pay Bluegreen.  Nor does it overcome Bluegreen's admission in its motion to amend the Complaint (filed the day after serving its amended answers) that Molfetta did *not* tell Clients not to pay Bluegreen.[16]

---

[11] A sample of relevant excerpts of the privilege log, produced on December 23, 2021, is attached as **Exhibit E** (see, e.g., Control Numbers M1.OE.00235097 through M1.OE.0023325, at 2-5, referencing emails between Molfetta and Clients regarding resort bills and billing statements). Molfetta also produced these non-privileged attachments.  Redacted samples are attached as composite **Exhibit F**. Unredacted copies will be provided upon the Court's request.

[12] *See infra* Section III(C)(2).

[13] *See* Ex. D, Interrogatory 21 (regarding ¶ 234).  Paragraph 234 is not alleged against Molfetta as of the filing of the Amended Complaint on February 3, because it is in substantive tortious interference claim (Count V).  However, the substantially similar allegation is re-alleged against Molfetta in Paragraph 16 of the Amended Complaint.

[14] *See* Ex. D, Answer 21 (regarding ¶ 234), incorporating Answer 14 (emphasis supplied). Bluegreen made substantially the same admission in its amended Answers 13-21.

[15] Bluegreen provided similar amended answers in response to Interrogatories 14, 16, 17, and 22.

[16] Bluegreen provided a similar amended answer when asked for Bluegreen's evidence for alleging that Molfetta "do[es] not actually perform any meaningful legal service or create [or have] a true attorney-client relationship with Bluegreen owners," adding its uninformed belief that the Clients first represented by co-Defendant Harold Miller allegedly did not consent to Molfetta substituting for Miller.  *See* Ex. D, Answer 17 (regarding ¶ 169).  Bluegreen's uninformed belief provides *no support* to allege Molfetta performs no meaningful legal services or had no attorney-client relationship with the many Clients previously represented by Miller (or the other Clients).  And its uninformed belief is refuted by Molfetta's December 2021 production containing Miller engagement letters signed by Clients and Molfetta engagement letters signed by those same Clients

### 2.      Bluegreen's Responses to Requests for Admission Confirm No Evidentiary Support

Molfetta served requests for admissions respecting Bluegreen's allegations that (a) Molfetta did not have a true attorney-client relationship with the Clients, and (b) Molfetta caused the Clients to not pay Bluegreen.  On October 18, 2021, Bluegreen responded:

> After a reasonable inquiry into this matter and based on the information it knows or can readily obtain, Bluegreen is **unable to either admit or deny** this Request.[17]

Bluegreen admitted it does not know if the allegations are true, because it has no evidence of them.[18]

### 3.      Bluegreen's Rule 26(a) Disclosures Confirm No Evidentiary Support

Bluegreen's initial Rule 26(a) disclosures, served on February 24, 2021, disclosed no witness testimony supporting the allegations for any of the 400 Clients.  [DE 212-1].  After months of meeting and conferring, *and after receiving the original Rule 11 Motion,* Bluegreen served its amended Rule 26(a) disclosures on February 2, 2022, listing all 400 Clients without identifying what testimony any Client would provide.[19]  Bluegreen still cannot identify a single witness with testimony that supports the re-filed allegations.[20]

---

months if not years later, showing their consent to retaining Molfetta.  Redacted samples are attached as composite **Exhibit G**. Unredacted copies will be provided upon the Court's request.

[17] *See, e.g.*, Bluegreen Vacation Unlimited's Responses to Admission Requests 1-3, attached as **Exhibit H**; Bluegreen Vacation Corp.'s Responses to Admission Requests 1-3, attached as **Exhibit I** (emphasis supplied).

[18] Bluegreen also admitted it does **not know** if the Clients had any factual or legal basis to not pay monies demanded by Bluegreen, *see* Exs. H and I, Admission Response 9, *thereby admitting Bluegreen had no evidentiary basis to allege the 400 Clients were legally obligated to pay Bluegreen*.  [*See, e.g.*, DE 270 ¶¶ 3, 14, 17, 46, 69].  *One Bluegreen plaintiff claimed Bluegreen does not know, even as a general matter, if a lawyer in the United States is permitted to advise a client whether to perform under a contract* (while the other Bluegreen plaintiff objected to this Admission Request).  *See* Exs. H and I, Admission Response 10.

[19] Attached as **Exhibit J**, at 7-49.  Names of all third parties are redacted in Ex. J.  An unredacted copy will be provided at the Court's request.

[20] Bluegreen's counsel deposed Michael Molfetta in a similar case in which Bluegreen's counsel represents another developer.  Bluegreen's counsel used seven hours to fish around and harass Mr. Molfetta pointlessly, including badgering him with a baseless accusation of an extra-marital affair. [Molfetta Depo T. 119:6-17], attached as **Exhibit K**.  The deposition, conducted well into fact discovery in that case, revealed no evidence of the allegations.

**B.**   **BLUEGREEN'S MOTION TO AMEND SHOWS BLUEGREEN'S DETERMINATION TO PERPETUATE THIS FRAUDULENT LAWSUIT**

After filing the Complaint in violation of Rule 11, Bluegreen held firm.  Bluegreen litigated its frivolous allegations through pitched discovery disputes, expensive and time consuming Epiq discovery, Molfetta's motion for leave to seek early summary judgment (in response to which Bluegreen argued it should be free to complete fact discovery in the hope it might find some evidence),[21] and Bluegreen's written discovery responses, which, as noted above, show Bluegreen had no evidence of its allegations and could neither admit nor deny them.  It took the serious threat of sanctions in Molfetta's service of the first Rule 11 Motion for Bluegreen to finally admit that *one* of its allegations was false.  But, because the lawsuit was filed for improper purposes, Bluegreen re-pleaded this false allegation and the other baseless and false allegations in the Amended Complaint, to side-step the first Rule 11 Motion and perpetuate the fraudulent lawsuit.

**C.**   **BLUEGREEN'S CLAIMS WERE FILED FOR IMPROPER PURPOSES**

**1.   Bluegreen Knows It's Claims Are Frivolous**

This case is about Bluegreen timeshare owners who wanted to get out of their timeshares so badly that they were willing to pay thousands of dollars to an exit company just to be rid of Bluegreen.  [DE 270 ¶ 67].   Bluegreen alleges that TFG is its "competitor."  *Id.* ¶¶ 207, 211.  If you are a vacation destination and your competitor is an exit company charging thousands of dollars just to help your customers get rid of you—and you are *losing* to the competition—then you are to blame for losing your customers.  Bluegreen knows it cannot prove the 400 Clients defaulted *only because* someone else told them to, or due to an alleged material falsity in TFG's advertisements (which do *not* tell timeshare owners to stop paying Bluegreen), as opposed to because of everything Bluegreen did to the Clients that caused the Clients to hire TFG and Molfetta in the first place.[22]   Bluegreen brought and is perpetuating its false, inflammatory, and highly injurious claims against Molfetta for improper purposes.

---

[21] [DE 231 at 8].

[22] Bluegreen, therefore, was not surprised to see that Clients told Molfetta, upon first signing up with the law firm, that they were already at their wits end and flat out done paying Bluegreen.  *See, e.g.*, Ex. A at 6 ("I feel I have paid enough . . . I will never recommend anyone sign a contract with Blue Green and I just want this nightmare to be over with."); Ex. A at 9 ("This is so discouraging and unfair to us on a whole as owners. We need to exit this contract ASAP."); Ex A at 3 ("How can I support my family on a fixed income, my wife's medical bills and my home; I know I need – a misrepresented timeshare which has already cost me thousands of dollars, is draining my

2.      **Smoking     Gun—Bluegreen's     Secret     Policy     of     Fraudulently Manufacturing Defaults of the Clients**

Bluegreen has a secret policy of manufacturing defaults for timeshare owners that retained Molfetta.   Knowing this, Bluegreen fraudulently accused Molfetta and TFG of being the actual causes of 400 Client defaults.   Bluegreen's  policy would remain concealed, but for a complaining Client ("Complaining Client" or "CC") recording a Bluegreen representative admitting to the policy.   This Complaining Client sent the recording to Molfetta, after first sending it to TFG.   As evidenced from the transcript of the recording,[23] the contract between the Complaining Client and Bluegreen required Bluegreen to withdraw funds from the Complaining Client's checking account to pay Bluegreen the monthly mortgage payments.   Bluegreen notified the Complaining Client that he was in default, even though the Complaining Client did not stop Bluegreen from withdrawing funds from his checking account.   When Complaining Client called Bluegreen about this, the Bluegreen representative ("Bluegreen Representative" or "BGR") made the bombshell admission that it was manufacturing defaults for Molfetta Clients:

CC:     . . . I want to talk to you about this final notice of delinquency.  First of all, I never received any information that my account was in arrears, and I don't know why y'all stopped taking the money out of my checking account like the contract said, so—

BGR:   Well, it looks like, Mr. [Complaining Client], that you worked with a law firm.

CC:     Well, that's none of your business.

BGR:   Well, yeah, it's our business. It has everything to—can I finish? It has everything to do with—because you filed with the company to pretty much represent you for whatever reason, so we have your account coded in legal status, so that's our business.

_____

limited budget.  I am going further into debt.  Why?  I shouldn't have to loose [sic] my real home where I live every day over a timeshare I never use.").

[23] Attached as **Exhibit L**.  The names of the Complaining Client and Bluegreen Representative are redacted.  The audio file is undated.  The Complaining Client emailed the audio file to TFG on June 23, 2021, and then forwarded the email and audio file to Molfetta, with a privileged cover email, on July 6, 2021.  As it did in serving the first Rule 11 Motion, Molfetta will include in its service of this Amended Rule 11 Motion the name of the Complaining Client, a copy of the audio file, a copy of the email sending the audio file to TFG, and an unredacted copy of the attached transcript.  In addition, on December 24, 2021, Molfetta produced to Bluegreen the audio file and the unredacted email from Complaining Client to TFG, redacting the forwarding email to Molfetta as reflected on the privilege log.  Upon request, Molfetta will provide the audio file and unredacted transcript to the Court.

CC:     Well no, it's not.

BGR:    It does. It does.

CC:     That does not give you the right to stop taking the debit.

BGR:    We do. It does. It does.

CC:     You have that right?

BGR:    It does because of the fact that you have this attorney representing you, and this pseudo fake attorney that you paid money to get out of your contract or whatever cannot, so you are defaulting on your loan. We have you coded as a legal status, so we can't continue allowing payments to occur when you have solicited a company, whether it's a reputable company or not, to do what?  What was the end result you're trying to—

CC:     Let me ask you this, then. I was paying, as my contract said, without interruption.  You stopped it, so—

BGR:    You interrupted it.  You interrupted it, Mr. [Complaining Client].

CC:     I haven't interrupted anything.

BGR:    Yes, you did.   You have an attorney.

. . . .

CC:     You need to know I was paying my bills on time.

BGR:    No sir, answer my question [why your hiring an attorney has nothing to do Bluegreen defaulting you].

CC:     Stop, stop.  Wait a minute, you stopped it.  I have not contacted my bank to stop it.

BGR:    You did stop it.

CC:     I did not stop it with my bank.

BGR:    With your attorney, your attorney stopped it.

CC:     My attorney didn't stop anything.

BGR:    Your attorney provided this letter.  Your attorney has everything to do with it, so here's what we have.  You need to contact your attorney so they can say they're not representing you anymore, so that you, if you want to resume the contract, that's what has to happen.

9

CC:    What I'm willing to do is pay—

BGR   That's what has to happen.  It does not—

CC:    No.  It doesn't have to happen.

BGR:   That's how it has—yes, it does.

      Bluegreen knew its policy was to manufacture defaults for Clients, while falsely claiming, in the original and Amended Complaint, that TFG and Molfetta caused the Clients to default.  For this conversation to have taken place, there has to be other evidence among Bluegreen's top executives, lawyers, and customer service representatives, and other co-conspirators, proving Bluegreen's fraud on the Court, which would have remained concealed but for the recording. [24]

      After being presented with this smoking gun evidence in the first Rule 11 Motion, *Bluegreen made the same false allegations in the Amended Complaint* that TFG and Molfetta each caused the defaults.[25]  In its amended Rule 26(a) disclosures, Bluegreen identified the Complaining Client as someone induced into defaulting by each of TFG and Molfetta.[26]

### D.    ADDITIONAL LITIGATION ABUSES AND IMPROPER PURPOSES

#### 1.    Bluegreen Re-Alleged False Allegations to Violate Molfetta's Due Process Rights and Harm the Clients

---

[24] Bluegreen is still denying its policy of manufacturing defaults for Molfetta's Clients.  *See* Ex. D, Answer 11.  The document Bluegreen identified in this Answer as stating Bluegreen's procedures on exit companies and law firms (not attached because Bluegreen designated it "Attorneys' Eyes Only") does no such thing.

[25] At approximately 9:30 am on February 3—the day after Bluegreen filed its motion to amend and the first day that Molfetta could have filed the first Rule 11 Motion—Bluegreen emailed Molfetta with its response to the recorded call, attempting to justify the filing of the Amended Complaint in the face of this recorded call.  Bluegreen's principal response was that the customer service representative worked for a company other than the two Plaintiff entities and that Molfetta should "govern [it]self accordingly."  A copy of the email, with the name of the customer service representative redacted, is attached as **Exhibit M** at 1.  Whether the representative works for the Plaintiffs or is an affiliate or an agent of Plaintiffs—Bluegreen did not disclose the relationship—Bluegreen does not dispute that, contrary to it its baseless and frivolous lawsuit, the customer service representative's employer was secretly manufacturing the defaults.

[26] As noted, Bluegreen's Amended Rule 26(a)(a) disclosures, attached as Ex. J, have the names redacted.  The Complaining Client's name appears on page 34, and the Client who was quoted in the Introduction appears on page 49.

Bluegreen's amended interrogatory answers, discussed above, highlight the due process violations built into this frivolous lawsuit. Molfetta cannot fully defend the bona fides, counseling, value, and effectiveness of its representations of the Clients without disclosing privileged information and legal strategy. Molfetta and the Clients are being forced to consider privilege waivers, hurting the Clients vis-à-vis Bluegreen, to ensure that Molfetta can prevail and continue to represent the Clients.

### 2. Bluegreen Re-Alleged False Allegations Regarding All 400 Clients That It Will Never Try to Prove

The Amended Complaint re-alleged the false allegations regarding each of the 400 Clients. Given the conduct of Bluegreen's counsel in at least one similar case, Bluegreen will later reveal it seeks to prove the allegations for only a miniscule subset of the Clients.[27] This means that, here, Bluegreen re-alleged unfounded, false allegations related to all 400 Clients, *knowing* that it will never try to prove the allegations for almost all of them.[28] On its best day, Bluegreen will try to show something went awry with a tiny subset of unidentified Clients, *who remain unidentified as discovery winds down*. If *Wyndham* is any indication, that subset will be around 1% of the Clients. Bluegreen has not denied it will do that here and, indeed, just recently admitted that it will.[29]

### 3. Bluegreen Re-Alleged False Allegations to Continue Excessive Discovery

In filing the Amended Complaint, Bluegreen seeks to continue leveraging its baseless and false allegations to justify a massive and expensive discovery fishing trip for no useful purpose.

---

[27] *See Wyndham Vacation Ownership, et al. v. Sussman, et al.*, No. 18-cv-02171 ("*Wyndham*"), [DE 337 at 7, n.4] (noting that of the 250 clients alleged in the claims, Bluegreen's counsel, on behalf of Wyndham, *sought to prove only four clients received instructions not to pay from the lawyer*, Sussman). After finding that none of the four proffered clients supported the claims, the court stated that the developer in that case "therefore, has no evidence that a single owner who was referred to the [counsel] was told to stop making payments". *Id.* There, Bluegreen's counsel blamed its lack of evidence on "the practical constraints imposed by the rules of procedure." *Wyndham* [DE 313 at n.9].

[28] For example, Bluegreen has never established that its payment records are consistent with its allegations regarding the 400 Clients, despite many opportunities to do so, including in its interrogatory answers. They likely are inconsistent with the allegations.

[29] *See* [DE 231 at 9] (not denying, in November 2021, that Bluegreen will do that here) and Ex. J at 51 (admitting, in February 2022, that Bluegreen does not know which of 400 Clients are the "relevant owners" for damages calculation).

Bluegreen's excessive discovery, and related misconduct, [30] include what is set forth in Molfetta's previously filed Objection.  [DE 199; DE 215]. [31] The discovery process that has already cost Molfetta hundreds of thousands of dollars and will cost Molfetta additional hundreds of thousands of dollars to complete, and is based on fraudulent claims that (a) are baseless and false, and (b) for all but an insignificant percentage of the 400 Clients, Bluegreen will never try to prove.

### 4.   Bluegreen Re-Alleged False Allegations to Continue to Seek Extreme, Punitive Relief

Bluegreen still seeks to severely harm Molfetta and the Clients and enrich itself:

- Bluegreen still seeks to recover funds paid to Molfetta to represent the Clients.  *See* Ex. J at 51; *see also* [DE 270 ¶ 227; p. 57 ¶ (c)].

- Plaintiffs still seeks all funds the Clients allegedly are supposed to pay Bluegreen into the future, regardless of Clients' ability or willingness to pay (or whether they would be alive) or defenses they may have.  *See* Ex. J at 51; *see also* [DE 270 ¶ 267].

- Bluegreen still seeks to recover punitive damages, in an amount not yet announced, estimated to be approximately $10,000,000.  *See* Ex. J at 52*; see also* [DE 270, p. 57 ¶ (f)].

- Bluegreen still seeks treble damages.  [DE 270, p. 57, ¶ (e)].

- Bluegreen still seeks to enjoin Molfetta from continuing to represent each of the 400 Clients.  [DE 270 ¶¶ 268, 287; p. 57 ¶ (a)-(b)].

- Plaintiffs still seek to enjoin Molfetta from ever representing any other timeshare owner against Bluegreen, in the future, on any legal theory and for any reason.  [DE 270 ¶¶ 268, 287; p. 57 ¶ (a)-(b)].

---

[30] Bluegreen's misconduct includes factual misrepresentations to the Magistrate to support an order Bluegreen believed denied Molfetta the right to remove non-responsive documents and compelled Molfetta to log non-responsive privileged documents.  [DE 199 at 14 and n.23; 215 at 2 n.1]; *see also* **Exhibit N**, to which Bluegreen never responded.  While the Court ultimately concluded that the Magistrate did not order Molfetta to produce non-responsive document or log non-responsive privileged documents, [DE 262 at 6], Bluegreen made false representations in support of such rulings, which the parties believed were made by the Magistrate.

[31] Bluegreen requested, among other things, all tax and financial records of Mr. Molfetta personally and Molfetta Law, for the last four or five years.  [DE 260; DE 260-2, Requests 17-19; DE 260-4, Requests 17-22].  As the Court did not overrule the Magistrate's order that Molfetta waived its right to object to these requests, other than on privilege grounds, Molfetta is unable to prevent Bluegreen from obtaining this irrelevant personal and confidential information, absent further relief from the Magistrate.

## IV.  LEGAL ARGUMENT

### A.  APPLICABLE LEGAL PRINCIPLES

Rule 11(b)(1) and (3) provides, in pertinent part, that, in signing or filing any pleading or paper:

> An attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation [and] (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

"Thus, under Rule 11, a court has the discretion to award sanctions where a party or attorney has signed and filed a pleading that . . . has no reasonable factual basis [or] is filed in bad faith for an improper purpose."[32] A court "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." *Horst v. Parker*, No. 6:07-cv-612-ORL-19KRS, 2007 WL 4557243, at *3, n.1 (M.D. Fla. Dec. 21, 2007).

### B.  THE COURT SHOULD IMPOSE SANCTIONS ON BLUGREEN AND ITS COUNSEL UNDER RULE 11(B)

As this Court recently explained:

> The Eleventh Circuit has developed a two-step inquiry for Rule 11 sanctions that examines (1) whether the claims are objectively frivolous, and (2) whether the person who signed the pleadings should have been aware that the claims were frivolous.

*Grappell*, 2021 WL 5178750, at *8 (citing *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir. 1998)). Since the standard is an objective one, "courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Diaz v. First Marblehead Corp.*, 643 F. App'x 916, 921 (11th Cir. 2016) (internal citations omitted) (citing *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)).

Litigants are required to "stop-and-think" before making factual contentions.[33] "Rule 11 stresses the need for some prefiling inquiry.  As such, it imposes an affirmative duty to conduct a

---

[32] *Grappell v. Carvalho*, Case No. 21-cv-22016-BLOOM/Otazo-Reyes, 2021 WL 5178750, at *8 (S.D. Fla. Nov. 8, 2021) (citing *Anderson v. Smithfield Foods, Inc.*, 353 F.3d 912, 915 (11th Cir. 2003) and Fed. R. Civ. P. 11(b)) .

[33] *See Brown v. Generac Power Sys., Inc.*, No. 20-cv-22434-MARTINEZ, 2021 WL 1030229, at *3 (S.D. Fla. Feb. 27, 2021) (quoting Fed. R. Civ. P. 11 advisory committee's note (1993)), *R&R adopted*, 2021 WL 1022872 (S.D. Fla. Mar. 17, 2021). *See also Worldwide Primates, Inc. v.*

reasonable inquiry into the facts and the law before filing, and the applicable standard is one of reasonableness under the circumstances." *Cohen v. Burlington*, Case No. 18-cv-81420-BLOOM, 2020 WL 1033349, at *3 (S.D. Fla. Mar. 3, 2020) (internal quotations and citations omitted). "[I]f the attorney failed to make a reasonable inquiry, then the court must impose sanctions despite the attorney's good faith belief that the claims were sound." *Id.* at 8 (citations omitted). *McGreal*, 87 F.3d at 1254 (citing *Jones v. Int'l Riding Helmet, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995)). Rule 11 sanctions are available against represented parties, among other times, when the party misrepresents facts in the pleadings, as Bluegreen did here.[34]

No objectively reasonable lawyer would think the Amended Complaint is justified. *See Cohen*, 2020 WL 1033349, at *6 ("Appallingly, the Court has not identified a single piece of evidence" supporting the plaintiff's position). There was no "stop[ing]-and-think[ing]"[35] here, except to move forward with frivolous litigation to harm Molfetta. Bluegreen's misconduct is particularly severe, because it filed the baseless allegations *after* receipt of the first Rule 11 Motion, and *after* falsely claiming to have cleaned up the original Complaint by amending.

As stated by the 11th Circuit in upholding Rule 11 sanctions:

> [Plaintiffs' lead counsel] could not have reasonably believed at the time of the filing of the complaint and the signing of the affidavit that the complaint was well-grounded in fact. . . . It is obvious that if the [plaintiffs] knew (must have known) prior to filing this lawsuit that they had no competent evidence, then, this complaint was not well-grounded.[36]

---

*McGreal,* 87 F.3d 1252, 1254 (11th Cir. 1996) (internal citation omitted) ("Absent such extenuating circumstances, an attorney cannot simply rely on the conclusory representations of a client . . .").

[34] *See In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1322 (S.D. Fla. 2011), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 503 F. App'x 677 (11th Cir. 2012) ("Sanctions against a represented party are warranted when the party knew or should have known that the allegations contained in the complaint were frivolous. Generally, sanctions against a client are appropriate only when the client misrepresents facts in the pleadings. When a requested sanction is based on the contention that a pleading or motion was legally frivolous, however, the imposition of sanctions against a client is inappropriate. . . . A client may also be subject to sanctions when it is clear that he is the mastermind behind a frivolous case.") (internal quotations and citations removed).

[35] *Generac Power,* 2021 WL 1030229, at *3.

[36] *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (internal citation omitted) ("Although a litigant proceeding in good faith has a right to use civil discovery in attempts to prove the existence of a colorable claim for relief, filing a lawsuit is not a gratuitous license to conduct infinite forays in search of evidence.").

Indeed, "[t]he Rules of Civil Procedure do not contemplate that a plaintiff may file a complaint rife with conclusory and speculative allegations, hoping to find data and evidence to support the allegations through subsequent discovery." *Moss v. Liberty Mut. Fire Ins.* Co., No. 3:16-cv-677-J-39JBT, 2017 WL 4676629, at *7 (M.D. Fla. Aug. 18, 2017) (discussing Rule 11). As Judge Middlebrooks said in *Jackson*:

> To conclude otherwise would be to sanction a practice of filing a complaint leveling serious accusations of racial discrimination against a party, only thereafter to utilize discovery in a fishing-expedition manner, in the hopes of uncovering some evidence that could support such pejorative allegations. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("We will not find that a district court erred by denying a fishing expedition masquerading as discovery."); *Caplan v. California Pub. Employees' Retirement Sys.*, 1998 WL 575095, at *6 (C.D. Cal. 1998), *aff'd*, 221 F.3d 1348 (9th Cir. 2000) ("Plaintiff has relied on wholly conclusory allegations at the pleading stage while hoping to find data to support his claim through discovery; such fishing expeditions are not permissible under federal rules of discovery."). The Court would be hard-pressed to conclude that this comports with fairness, commonsense, and the strictures of Rule 11 of the Federal Rules of Civil Procedure. Such an über-liberal view of the federal pleading requirements would swing the federal courthouse door wide open to unsupported claims of racial discrimination which, again worth repeating, are of a very serious nature, only later to see whether such claims may be factually supported.

*Jackson v. BellSouth Telecommunications, Inc*., No. 00-cv-7558, 2002 WL 34382751, at *6 (S.D. Fla. June 4, 2002), *aff'd sub nom. Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004). Judge Scola likewise noted in *Delva*:

> Before concluding, the Court notes the troubling nature of one of Plaintiffs' statements. Specifically, in their Response, Plaintiffs state: 'This is a properly pled cause of action. Plaintiff is now entitled to break into discovery and uncover the facts that support its claim. If there is no evidence, summary judgment is the appropriate vehicle to dispose of the claim. What Plaintiffs have described is a fishing expedition. If there is no evidence, Rule 11 sanctions may be imposed. [37]

---

[37] *Delva v. MSC Crociere S.A.*, No. 13-cv-62781-SCOLA, 2014 WL 11706430, at *2 (S.D. Fla. Oct. 24, 2014). *See also Lazarre v. JPMorgan Chase Bank, N.A.*, 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011) (Discovery "is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that he has filed has any basis in fact") (citation and internal quotation marks omitted); *Belik v. Carlson Travel Grp., Inc.*, 864 F. Supp. 2d 1302 (S.D. Fla. 2011) ("Plaintiff's attempt to reverse the logical sequence in litigation—claim first, discovery later—is unavailing.") The foregoing cases involved bare-bones allegations insufficient to merit the case proceeding to discovery. The situation here is worse, with Bluegreen fabricating specific allegations, falsely claiming to have detailed factual support, in violation of Rule 11.

Moreover, Bluegreen and its counsel also had *actual knowledge* that the allegations were false and fraudulent.[38]  Finally, even if Bluegreen is able to justify its allegations regarding any one or two Clients, that would not change the fact that Bluegreen's allegations for each of other 398-99 Clients are unfounded and false, in violation of Rule 11.  Bluegreen does not get a pass for "flooding the zone" with so 400 Rule 11 violations—one for each of Client.  Bluegreen must withdraw the claims for each Client for which it has no evidentiary basis, which is all 400.

## C.   THE COURT SHOULD IMPOSE SANCTIONS ON BLUEGREEN'S COUNSEL UNDER RULE 11(B)(1) FOR FILING ALLEGATIONS FOR IMPROPER PURPOSES

Separately, the Court should impose sanctions on Bluegreen's counsel under Rule 11(b)(1) for filing the allegations in bad faith and for an improper purpose.  *See Cohen*, 2020 WL 1033349, at *8 ("A 'motive to harass' can also be inferred from an attorney's filing of factually or legally frivolous claims") (citation omitted). The improper purposes of re-filing the allegations include punishing, bankrupting, and shutting down Molfetta for representing the Clients, causing irreparable harm to the Clients and all other current and potential Bluegreen timeshare owners, and deterring other counsel from representing Bluegreen owners, and making it harder for them to retain counsel.  Molfetta has a successful practice beyond timeshare clients.  Bluegreen needs to inflict just enough abuse to get Molfetta to decide that this line of work is not worth the costs and hassle from Bluegreen's unchecked abuse.[39]

---

[38] *First,* Molfetta's privilege log and the recorded call disprove the allegation that Molfetta duped its Clients about the status of their accounts.  *Second*, Bluegreen knew the absurdity of its litigation theory that the desperate owners who turned to TFG and Molfetta, like those whose statements are attached in Exhibit A, had to be induced by TFG or Molfetta to leave Bluegreen.  *Third,* Bluegreen knew it had a secret policy of manufacturing defaults for Molfetta's Clients which negates the claims, and which was brought to Bluegreen's attention in the first Rule 11 Motion.  *Fourth*, Bluegreen admitted in the motion to amend that it knows that Molfetta did not tell Clients to default, while nevertheless re-alleging just that in the Amended Complaint.

[39] There are other improper purposes, including creating the predicate for horribly defamatory publications citing and quoting the allegations. [*See* https://timesharesolutionsmx.wordpress.com/molfetta-law/ (capitalizations and bold in original: posing as a consumer protection website; "WARNING[]" that Molfetta Law is "WANTED FOR TIMESHARE CANCELLATION SCAMS" and is accused of "engaging in tortious **institutionalized tortious interference** by instructing timeshare owners to breach their timeshare contracts and cease making payments to their resorts, causing **default** and foreclosure or forfeiture of the underlying timeshare interest, and knowingly subjecting timeshare owners to **adverse and potentially ruinous credit-reporting and tax liability**"; accusing Michael Molfetta, identified

The bad faith is beyond question. There is no other explanation for sophisticated professionals filing baseless and false allegations of systematic, wholesale, and severe misconduct. and then re-filing after receipt of the first Rule 11 Motion.  There is no other explanation for the litigation abuses designed to wear out Molfetta, financially and emotionally, until Molfetta throws in the towel and lets Bluegreen dictate what happens to Molfetta and the Clients, on a fraudulent lawsuit that Bluegreen refuses to quit.

## D.   THE COURT SHOULD DISMISS THE LAWSUIT AND AWARD MOLFETTA ITS FEES AND COSTS

Sanctions should compensate Molfetta for the damages inflicted by the unfounded, false allegations, including its fees and costs in this case.

> Rule 11 provides for a range of penalties, including payment by the offending attorney of 'part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.' As the language of the Rule suggests, it 'permit[s] an award only of those expenses directly caused by the [sanctionable] filing.

*Peer v. Lewis*, 571 F. App'x 840, 845 (11th Cir. 2014) (internal citation omitted).  Sanctions under Rule 11 should be sufficient to "deter repetition of the conduct or comparable conduct by others similarly situated."  *Rivas v. Pollack & Rosen, P.A.,* No. 19-cv-61815-BLOOM, 2020 WL 1272508, at *4 (S.D. Fla. Mar. 17, 2020) (quoting Fed. R. Civ. P. 11(c)(4)).[40]  Here, harm directly

---

with a photograph and described as "**Perpetrator,**" of "not acting in timeshare owners' best interests as a proper lawyer must, but **in his own interests and for a cut of the profits** of an unlawful scheme to tortiously interfere with timeshare contracts; and "**WARNING: Don't be the next victim**" of Molfetta."

[40]  *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1571 (11th Cir. 1991) ("The central goal of Rule 11 is to deter vexatious and frivolous litigation, and to achieve that goal a court may impose sanctions that compensate those injured by unreasonable litigation practices, or punish those who engage in such practices, or both.") (internal quotations and citations omitted).  *See also Pat. Licensing & Inv. Co., LLC v. Green Jets Inc*., No. 11-cv-80689, 2013 WL 12250542, at *3 (S.D. Fla. Feb. 26, 2013), *r&r adopted*, No. 11-cv-80689, 2013 WL 12250425 (S.D. Fla. Mar. 29, 2013):

> The purpose of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (quotation omitted). The sanctions "may be imposed for the purpose of deterrence, compensation and punishment." *Didie v. Howes*, 988 F.2d 1097, 1104 (11th Cir. 1993) (quotation omitted). "Although the Rule must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy, [. . .], any interpretation must give effect to the Rule's central goal of deterrence." *Cooter & Gell*, 496 U.S. 384, 393 (1990).

caused by the unfounded, false allegations and fraudulent litigation position includes Molfetta's fees and costs incurred in defending against them. *See Kendrick v. Zanides*, 609 F. Supp. 1162, 1173 (N.D. Cal. 1985) (ordering payment of all fees and costs incurred by defendants).

The Court should also dismiss the lawsuit. *See Johnson v. 27th Avenue Caraf, Inc.*, 9 F.4th 1300, 1314-16, 1319 n.6 (11th Cir. 2021), in which Judge Huck dismissed plaintiff's American Disabilities Act ("ADA") and Florida Civil Rights Act ("FRCA") claims and imposed other sanctions under Rule 11 and the Court's inherent powers. Although plaintiff (unsuccessfully) appealed the dismissal of his ADA claims which was ordered for various litigation abuses, the Eleventh Circuit noted that "[plaintiff] does not challenge the dismissal of his FCRA claim, nor could he. The FCRA claims were frivolous and thus dismissal was appropriate under both Rule 11 and the Court's inherent powers." *Id.* [41]

Insofar as the Court deems such relief is warranted under the Court's inherent powers, Molfetta seeks such relief based on Bluegreen and its counsel's bad faith.[42] *Chambers v. Nasco*, 501 U.S. 32 (1991) (upholding award of all litigation fees and costs under the Court's inherent powers)*; Johnson,* 9 F.4th at 1314-16, 1319 n.6 (noting complaint was properly dismissed as frivolous under both Rule 11 and the Court's inherent powers); *Brown v. Dist. Unemployment Comp. Bd.*, 411 F.Supp. 1001, 1001–02 (D.D.C. 1975) ("a district court has the power to dismiss a case sua sponte if it is frivolous or brought for some ulterior purpose such as harassment.").

---

[41] *See also Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652, 657 (7th Cir. 2003) (affirming dismissal based on Rule 11 violations and the trial court's inherent powers); *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. 1979) ("Before filing a civil action, the attorney has a duty to make an investigation to ascertain that it has at least some merit, and further to ascertain that the damages sought appear to bear a reasonable relation to injuries actually sustained . . . . A district court has the power to dismiss a complaint if it is frivolous or brought for some ulterior purpose.")

[42] "The key to unlocking a court's inherent power is a finding of bad faith. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument or argues a meritorious claim for the purpose of harassing an opponent." *Eldredge v. Edcare Management, Inc.*, Consolidated Case Nos 13-cv-61373-SCOLA/OTAZO-REYES and 12-cv-61984-SCOLA/OTAZO-REYES, [DE 188] (S.D. Fla. Mar. 31, 2015) (internal citation omitted).

## V.   **THE MOTION SHOULD BE RULED ON NOW, AND NOT DEFERRED UNTIL DISCOVERY IS OVER**

The determination whether to defer resolution of Rule 11 motions should be made "on a case-by-case basis considering the particular purposes of the case."[43]   Here, deferral would be wrong, unjust, and serve no purpose.  Discovery cannot undo or remedy the misconduct—filing unfounded, false allegations with no evidentiary support, knowing they were false and fraudulent, and for improper purposes, and then re-filing them again.  Delay serves only to frustrate the purpose of Rule 11; reward and license the violators and encourage others to commit the same abuse; punish—and increase the irreparable harm to—Molfetta, its employees, and their dependents, as well the  Clients and their dependents; and increase the unsustainable defense costs of this fraudulent lawsuit.  Rule 11 violations do not get better with time.

## VI.   **CONCLUSION**

Molfetta respectfully requests that the Court sanction Bluegreen and its counsel under Rule 11(b)(3), and Bluegreen's counsel alone under Rule 11(b)(1)—or, alternatively, both of them under the Court's inherent powers—now, by dismissing the claims against Molfetta, compensating Molfetta for the harm caused by their misconduct, including awarding Molfetta its attorney's fees and costs, and for all other relief the Court deems fair and just.

Dated: February 11, 2022.                              Respectfully submitted,

By: */s/ Jonathan Etra*
Mark F. Raymond | Fla. Bar No. 373397
Jonathan Etra | Fla. Bar No. 0686905
Christopher Cavallo | Fla. Bar No. 092305
NELSON MULLINS
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, FL 33131
Telephone: 305.373.9400
*Counsel for Michael A. Molfetta, Molfetta Law, LLC*

---

[43] *Sierra v. Univ. of Miami*, No. 10-cv-23745, 2011 WL 13223524, at *3 (S.D. Fla. May 27, 2011), *r&r adopted*, No. 10-cv-23745, 2011 WL 13220934 (S.D. Fla. June 17, 2011).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 11th day of February 2022, a true and correct copy of

the foregoing has been served to counsel for Plaintiffs, in accordance with Fed.R.Civ.P. 11.

By: <u>*/s/ Jonathan Etra*</u>
Jonathan Etra