**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 20-cv-25318-BLOOM/Otazo-Reyes**

BLUEGREEN VACATIONS UNLIMITED, INC., *et al.*,

Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC, *et al.*,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR RULE 37 SANCTIONS**
**AGAINST MICHAEL A. MOLFETTA AND MOLFETTA**
**LAW, LLC AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs, BLUEGREEN VACATIONS UNLIMITED, INC. and BLUEGREEN VACATIONS CORPORATION (collectively "Plaintiffs" or "Bluegreen"), respectfully move, pursuant to Federal Rule of Civil Procedure 37(b) and/or 37(c), and pursuant to [ECF 440], against MICHAEL A. MOLFETTA and MOLFETTA LAW, LLC (together, "Molfetta Defendants") for sanctions, including, entering a default judgement against them, alternatively, striking the Molfetta Defendants' pleadings, and, in either instance, an award of fees, based on their egregious discovery misconduct, which included the withholding of key materials (still not produced) to which Bluegreen was entitled. The misconduct has severely prejudiced Bluegreen's ability to prosecute its case. Admittedly, no lesser sanctions will do.

With discovery now closed and the Court having already denied any request for further extension of the discovery period, there is no other way to address the severe prejudice visited upon Bluegreen in light of the Molfetta Defendants' intentional and pervasive discovery misconduct, pressed through their counsel, and which has been a thread in this litigation throughout. Attorney Molfetta has been unapologetic regarding his respect, or lack thereof, of this Court's jurisdiction, rulings and directives, having testified, under oath, that ". . . I don't care what any judge rules." Ex. 11 at 45:4–7 (Transcript of Molfetta Law, LLC 30(b)(6) Deposition).

At its core, the Molfetta Defendants' weaponized this Court's sanctions order, entered after several hearings and a showing that Molfetta Defendants' discovery misconduct was undeterred, and unilaterally put a bookend on their discovery obligations almost a year prior to discovery closure, in violation of the applicable rules and thumbing their nose at this Court, having admittedly done zero collection of responsive documents during this period, despite a rolling production that concluded after the close of discovery. The withholding of these materials severely prejudiced Bluegreen's prosecution of this case in a myriad of ways. Bluegreen was forced to take trial depositions, and otherwise conduct additional discovery, without critical evidence, which now completely thwarts Bluegreen's ability to make a fair and complete presentation and to prosecute its case at trial as it is not armed with all evidence to which it was entitled. Also problematic, some of the materials improperly withheld and belatedly discovered by Bluegreen reveal exculpatory evidence contrary to the Molfetta Defendants' testimony, under oath, at the Rule 11 evidentiary hearing. *See, e.g.* [ECF 365 at 81:20–82:7 (Molfetta testimony on alleged actual work provided by TFG)]. For example, Molfetta testified, under oath, to this Court that their defaulted co-defendant, business partner and co-conspirator, Timeshare Freedom

1

Group ("TFG") did provide services to clients, yet the withheld evidence includes a video Molfetta Defendants created and widely disseminated to their purported clientele acknowledging that TFG was a scam. They withheld these and other materials (the breadth of which Bluegreen is still not aware) without excuse.  To the contrary, the Molfetta Defendants' position, as argued by its counsel, is that they are above the Rules' mandate to, at a minimum, supplement their discovery.

If that was not enough, the scant materials that Bluegreen has identified further reveal, in some instances on the face of the document, that Molfetta Defendants could have no attorney-client privilege with certain purported clients; yet, Molfetta Defendants and their counsel repeatedly assured this Court that such a privilege existed based on a full review of the evidence, duping the Court into making privilege determinations based on their misrepresentations to the Court and without the benefit of the evidence that proved the falsity of the privilege claim in the first instance.

This intentional pattern of the egregious discovery misconduct cannot be negated. Mr. Molfetta is a seasoned trial attorney, represented by counsel in these proceedings, who created and disseminated materials that were responsive to Bluegreen's discovery and damaging to his case after the artificial end of Molfetta Defendants' self-imposed discovery deadline. Molfetta Defendants and their counsel continue to maintain a meritless legal position that the stoppage of discovery searches after October 2021 was proper and that Rule 26's mandates do not apply here. Under these circumstances, the Molfetta Defendants intentional discovery misconduct cannot be denied and they are due to be sanctioned to the fullest extent of the law.

## I.    INTRODUCTION

As set forth below, on the eve of the discovery deadline, Bluegreen was able to obtain materials from Jordan Salkin ("Salkin"), Molfetta Defendants' co-defendant and business partner, which Molfetta Defendants improperly withheld in this case. This evidence—and undoubtedly additional withheld documents—are critical to Bluegreen's prosecution of its case. First, it establishes, among other things, that as Bluegreen alleged in its Complaint, Salkin's Company, TFG, was effectively a scam and that Molfetta Defendants knew that fact but were actively supporting TFG. Second, these materials establish that Molfetta Defendants knowingly and improperly used the attorney-client privilege throughout this case to shield documents from

discovery and to deprive Bluegreen of the opportunity to fully conduct trial depositions of timeshare owners and others in this case.[1]

Salkin defaulted early in this case and the Court struck his pleadings because he failed to provide any discovery. *See* [ECF 266]. Thus, Bluegreen's main resource for documentary evidence in this case has been Molfetta Defendants. Given that Mr. Molfetta is an attorney, discovery with him should have been routine; yet, he, and apparently as aided by counsel, has done everything possible to ensure it is not. Molfetta Defendants have repeatedly and willfully engaged in discovery misconduct throughout this case in an effort to prejudice Bluegreen.

This Court has entered three separate orders addressing Molfetta Defendants' discovery abuses. The last of those orders took the drastic step of ordering Molfetta Defendants to engage a third-party vendor, Epiq Systems, Inc. ("Epiq"), to collect documents, which occurred in October 2021. Molfetta Defendants have been making rolling productions, apparently limited only to that collection, since that time.

Bluegreen proceeded with discovery based upon hat should have been a complete production, including taking numerous trial depositions.  Then, on the eve of the discovery deadline, and in connection Salkin's deposition, Bluegreen received evidence that the Molfetta Defendants were withholding critical documents.[2] Molfetta Defendants, and as argued through their counsel, now claim that they did not have to produce these documents because they were created after the Epiq collection and/or because they are purportedly privileged. Both arguments are frivolous for multiple reasons.

---

[1] The fact that Bluegreen was able to identify these materials, despite them being hidden by the Molfetta Defendants, on the eve of discovery closure, does nothing to cure the prejudice suffered by Bluegreen. First, the breadth of what has been withheld and the importance to the prosecution of the case remains unknown given the scant production. Second, and more importantly, discovery is closed. Bluegreen was forced to take trial depositions and otherwise conduct discovery with limited documents and information completely thwarting its ability to fully and properly present its position, with supporting admissible evidence, at trial. Most of the witnesses reside outside the jurisdiction of the Court, making these trial depositions the only chance Bluegreen will have to elicit their testimony. This prejudice was intentionally created by the Molfetta Defendants, furthered through misrepresentations made to this Court and must be addressed for justice sake.

[2] Of note, Salkin's production was not complete, but consisted of very scant material, including the video recording, which turned out to be very significant.  A full and complete production from defaulted defendants remains outstanding.

Molfetta Defendants continued to produce documents responsive to Bluegreen's discovery requests until even after the discovery deadline. Any documents in existence at that time, whether collected by Epiq or another source should have been produced. Regardless, Rule 26(e) requires that Molfetta Defendants supplement any prior production with later created documents, especially where the documents were created within weeks of the data collection, and where the documents were responsive and salient to Bluegreen's claims in this litigation. Molfetta Defendants' contention that Rule 26(e) does not apply to them has no merit.

Molfetta's privilege assertion is even more frivolous, and calls into question the legitimacy of Molfetta Defendants' assertion of attorney-client privilege throughout the entire case. To be sure, one of the recently obtained documents expressly disclaims any attorney-client relationship with numerous clients. This document, among others, was created at the same time that Molfetta Defendants were arguing for an expansive use of attorney-client privilege before this Court. Molfetta Defendants have been misleading, if not defrauding, Bluegreen and the Court throughout the entirety of the case.

Severe sanctions, to the fullest extent permitted by law, against Molfetta Defendants are warranted as no other remedy can cure the prejudice to Bluegreen.

## II.     FACTS AND BACKGROUND

### A.     Complaint

Plaintiffs filed their Complaint for Damages and Injunctive Relief against Molfetta Defendants and others on December 30, 2020. [ECF 1]. Plaintiffs filed an Amended Complaint on February 4, 2022. [ECF 270]. Plaintiffs assert claims against the Molfetta Defendants for contributory false advertising in violation of the Lanham Act (Count IV), conspiracy to commit tortious interference with contractual relations (Count VII), and violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count IX). [ECF 270]. Molfetta Defendants filed their Answer and Affirmative Defenses on February 18, 2022. [ECF 273].

Bluegreen alleges that Molfetta Defendants participate in a timeshare exit scheme with marketing companies—Timeshare Freedom Group ("TFG") and Systema Marketing, Inc.—whereby Molfetta Defendants agree to provide legal services advertised by the marketing companies. *See* Compl. at ¶ 18 [ECF 270]. The marketing companies solicit potential customers who are parties to valid contracts with Bluegreen and refer these customers to Molfetta Defendants. Compl. ¶¶ 7–8, 14–21 [ECF 270]. Molfetta Defendants then send demand letters to

Bluegreen, seeking to negotiate or obtain the cancellation of the customer's contract with Bluegreen. [*Id.* at ¶ 75]. During this process of signing up new customers, Bluegreen alleges that the marketing companies instruct Bluegreen customers to stop making their payments to Bluegreen. Compl. ¶¶ 14–21 [ECF 270]. Bluegreen alleges that the Molfetta Defendants are aware that the marketing defendants fail to provide any legitimate services for the amounts charged to Bluegreen owners, but that Molfetta still knowingly works with and supports the marketing defendants' scheme. Compl. ¶¶ 78–95, 216–228 [ECF 270]

Bluegreen brought the instant suit to recoup its losses resulting from this unlawful conduct and obtain injunctive relief to prevent this misconduct in the future.[3]

### B.    History of Discovery Misconduct

Molfetta Defendants have engaged in a years-long effort to obstruct the discovery process in this case. This defense tactic has resulted in numerous discovery motions and multiple sanctions orders from this Court requiring Molfetta Defendants to disclose withheld information. The pertinent history of this litigation abuse is set forth below.

Bluegreen served their first round of discovery on Molfetta Defendants on February 19, 2021, which included both Requests for Production of Documents and Interrogatories. *See* Collective Ex. 1. Relevant here, Bluegreen requested the following documents:

29.    All communications between you and any Bluegreen Owner.

45.    Documents describing the services rendered to Bluegreen Owners by you or any Defendant in regard to such Bluegreen Owners' timeshare interests.

*Id.*[4] Molfetta Defendants failed to timely respond to the discovery requests, but counsel later provided untimely written responses that raised few (but odd) objections and claimed that many of the requested documents did not exist. *See* Collective Ex. 2.

Bluegreen's counsel attempted to confer on these discovery issues, but Molfetta Defendants did not alter their position. Accordingly, following a discovery hearing, the Court overruled Molfetta Defendants' objections (other than privilege) and required Molfetta

---

[3] Molfetta Defendants are no strangers to accusations of illegal conduct. In addition to the lawsuit filed by Bluegreen, they were also defendants in a case filed by Diamond Resorts, *Diamond Resorts U.S. Collection Development, LLC v. Harold O. Miller, et al.*, No. 6:20-cv-1668 (M.D. Fla.), and in a case filed by Wyndham Destinations, *Wyndham Vacation Resorts, Inc., et al. v. Harold O. Miller, et al.*, No. 6:20-cv-618-PBG-EJK (M.D. Fla.).

[4] The definition of "Communication" encompasses audiovisual material.

Defendants to produce all documents withheld on the basis of any non-privilege objection. *See* [ECF 84] (the "Discovery Order").

Thereafter, Molfetta Defendants failed to comply with the Discovery Order [ECF 84], necessitating a second hearing. During that discovery hearing, the Court again ordered Molfetta Defendants to comply with the first Discovery Order and awarded Bluegreen its attorney's fees as a sanction. [ECF 119] (the "First Sanctions Order"). After the First Sanctions Order, Molfetta Defendants—undeterred by the Court's prior two (2) orders—produced only two (2) additional documents, along with an indecipherable privilege log; otherwise, there were no efforts at compliance. *See* [ECF 142]. Bluegreen accordingly set a ***third*** discovery hearing regarding the initial discovery requests and sought additional sanctions.

As a result of Molfetta Defendants' failure to adequately respond to Plaintiffs' discovery requests *and* their failure to abide by the Court's prior two (2) orders, the Court entered an escalated sanction in its Order Granting Plaintiffs' Motion for a Forensic Analysis of Molfetta Defendants' Electronic Media and Other Data Sources, Awarding Plaintiffs' Reasonable Fees and Costs, and Requiring an Amended Privilege Log (the "Second Sanctions Order"). [ECF 163]. The Court explained at that time that "[t]his ruling [was] predicated on Molfetta Defendants' repeated failure to comply with th[e] Court's Orders at [D.E. 84] and [D.E. 119]." [ECF 163 at 1–2]. The nine-page, comprehensive Second Sanctions Order required Molfetta Defendants to retain third-party vendor Epiq to forensically collect the data that Molfetta Defendants had, to date, refused to collect, review, and produce. *See id.*

During the third discovery hearing, in the course of entering the Second Sanctions Order pursuant to Rule 37, the Court made clear to Molfetta Defendants' counsel the gravity of their discovery abuses to date:

> I don't know how strongly you can communicate my message to the Molfetta Defendants, but my sanctions will keep on increasing to the limits of Rule 37 if my orders are not complied with.

Trans. of Aug. 9, 2021 Discovery Hearing (Ex. 3). With that admonition, the Court ordered the involvement of Epiq to gather all data from Molfetta Defendants' systems to identify and produce responsive information.

The Epiq collection mandated by the Second Sanctions Order began a multi-step process that culminated in rolling productions of documents by Molfetta Defendants. Pursuant to the Order, Molfetta Defendants were required to conduct interviews with key employees to

determine the location of potentially responsive data. [ECF 163 at ¶ 5]. Then, Epiq was charged with gathering this data from all relevant custodians. [ECF 163 at ¶¶ 8–9]. Once the parties agreed on search terms, the responsive documents were gathered in October 2021 and then reviewed by Molfetta Defendants' counsel before being produced. The parties ultimately divided the production into two phases, I and II, and rolling productions began at the end of 2021 and concluded in mid-December 2022, after the discovery closure date.

### C.   Molfetta Defendants' False Claim of Attorney-Client Privilege

Molfetta Defendants have abused the assertion of attorney-client privilege in this case. During the course of the litigation, Molfetta Defendants have taken the extreme position that essentially every communication with every Bluegreen Owner is privileged because of Molfetta's representation of them. *See* [ECF 225-1 (declaration of Michael Molfetta claiming expansive use of attorney-client privilege)]. Molfetta Defendants have used this privilege assertion to withhold innumerable documents, including communications with his "clients." *See* Ex. 4 (Molfetta Defendants' privilege log).[5]

The issue of Molfetta Defendants' assertion of privilege was directly raised earlier in this case when Bluegreen filed a Motion to Overrule Privilege Objections based on an inadvertent disclosure of allegedly privileged materials. *See* [ECF 206]. Molfetta Defendants filed a Response in Opposition in which they maintained a broad assertion of privilege as to every Bluegreen Owner they claimed to represent. *See* [ECF 225-1]. At the hearing on this Motion, on December 7, 2021, Molfetta Defendants' counsel maintained this broad assertion of privilege while acknowledging that Molfetta Defendants had not produced retainer agreements for all of these clients. *See* Ex. 5 at 16:3–9 (Trans. of Dec. 7, 2021 Hearing). Bluegreen's counsel pointed out that Molfetta Defendants had not met their burden to show the existence of Molfetta Defendants' attorney-client relationship with the Bluegreen Owners. *See id.* at 27:11–21. The Court required Molfetta Defendants' counsel to provide a sample of these documents for *in camera* review. *See id.* at 53:4–25. In the Court's ultimate order on the Motion, the Court assumed the existence of the attorney-client relationship for all of Molfetta Defendants' clients based on Molfetta Defendants' representations, *see* Ex. 5 at 25:4–11 (counsel noting the existence of the attorney-client privilege between Molfetta and the Bluegreen Owner clients);

---

[5] While marked "Confidential," this redacted document has been previously filed on the public docket by Molfetta Defendants at [ECF 381-2].

[ECF 230 at 4–5 (Molfetta's counsel claiming that a team of Nelson Mullins attorney's worked around the clock to review and confirm privilege assertions)]. As a result, the Court denied Bluegreen's Motion, finding there was no waiver of the privilege. *See* [ECF 247].

    **D.**    **Newly Discovered Evidence Showing Withheld Documents and Non-Existence of Attorney-Client Privilege**

A few days before the close of discovery, and immediately before the deposition of incarcerated Defendant Salkin, Salkin provided limited and scant records to Bluegreen. Among other things, these records included a video recording allegedly distributed to Molfetta Defendants' clients (the "Video") and a series of form email/letter communications sent to Molfetta Defendants' clients (the "Communications"). These records are responsive to Bluegreen's initial discovery requests, are critical evidence in this case, and should have been produced. Moreover, these documents expose a vast misuse of attorney-client privilege assertions and reveal misleading statements on this issue made to the Court. (Notably, the breadth of the withheld documents remains unknown, further exacerbating the prejudice suffered by Bluegreen).

    *1.*    *The Video*

The Video is a recording of Molfetta discussing TFG and the shuttering of their business.[6] According to the video, it was posted on October 21, 2021—only days after Epiq completed their collection of Molfetta Defendants' data pursuant to the Second Sanctions Order. *See id.* During the course of the recording, Molfetta essentially calls TFG out as a scam and advises viewers not to provide any further funds to TFG. *See id.* This video is critical to the allegations in this case, which include that TFG charges exorbitant fees and does not provide any legitimate service to its customers and that Molfetta is aware of that fact. *See* [ECF 270 at 70, 282]. Bluegreen should have, but did not have, the benefit of using this video during its trial depositions of timeshare owners, former TFG employees, and others during the course of discovery and to otherwise conduct additional discovery attendant to these materials.

Moreover, the Video is critical because it establishes that Molfetta Defendants' privilege claims throughout the case were wholly unfounded. Molfetta Defendants have claimed

---

[6] A copy of this video is available at [ECF 452-4], which was filed conventionally under seal on a CD, as part of Plaintiffs' Notice of Conventional Sealed Filing, titled "File 4 – Ex. 28, Salkin Dep. (12/8/22)."

throughout this case that all communications with their clients, even those formerly represented by Harold O. Miller, are privileged. *See* [ECF 225-1 at ¶ 19 ("On their face, the Miller [communications] are privileged communications of the same sort as Molfetta [communications].")]. Despite this assertion, Molfetta claims in the Video that he represents many of these individuals not because they hired him, but because he personally felt that Miller was providing an inadequate service so he chose them as clients. [ECF 452-4 at 1:00–1:15 (video of Michael Molfetta) (claiming that the reason he represents those clients is because they were represented by Harold Miller who decided to stop representing them and Molfetta did not think that was right, so he picked up the cases pro bono).

This method of obtaining clients is wholly insufficient to evidence an attorney-client relationship since the owners never even spoke with Molfetta or assented to the representation. *See, e.g., Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1281 (11th Cir. 2004) ("In the absence of even an informal consultation between the lawyer and the client, no attorney-client relationship was established, notwithstanding the putative client's subjective beliefs."); *Koo v. Rubio's Restaurants, Inc.*, 109 Cal. App. 4th 719, 723 (Cal. 4th DCA 2003) ("We hold that an attorney's unilateral declaration regarding representation cannot, by itself, create an attorney-client relationship where non otherwise exists."). Thus, Molfetta Defendants' claim of privilege with these owners is baseless and Molfetta Defendants have misrepresented the existence of this purported attorney-client relationship to the Court.

2.    *The Communications*

The Communications are a series of form letters/emails purportedly sent to Molfetta Defendants' clients. One communication, dated October 14, 2021—a few days after the Epiq collection—states "[y]ou may be under the impression that Molfetta Law is currently working on your file to exit your timeshare," but that "that is not the truth." (Ex. 6). The letter goes on to say that "Molfetta Law has not started work on your file and does not represent you" because "Timeshare Freedom Group has not paid our firm any retainer fee to initiate work on your file." *Id.* The letter then directs the customer to contact TFG with any questions. *Id.* This further undermines any privilege claim.

Another document, which is undated, is a second form letter that attempts to distance Molfetta Defendants from TFG, including stating that "[w]e cannot stress enough that Molfetta Law is not affiliated nor has any common ownership with Timeshare Freedom Group" and that

"Molfetta Law simply accepted to work on their client's files at a small fee." (Ex. 7). The letter then directs the reader to review their TFG Contract, contact TFG, and reach out to the Federal Trade Commission and the California Attorney General's Office. *Id.* A third undated form letter explains to Molfetta Defendants' clients the process for seeking a refund from TFG. (Ex. 8).

All three of these Communications should have been produced by Molfetta Defendants and would have been utilized by Bluegreen in their depositions in this case and throughout discovery otherwise. However, they were only received from Salkin just a few days before the close of discovery and after all of the depositions had already been conducted. Molfetta's claim that the Communications are privileged is baseless given that one of the Communications expressly disclaims any attorney-client relationship and states: "Molfetta Law has not started work on your file and does not represent you." Ex. 6. Thus, Molfetta Defendants were sending bulk communications to non-clients, so any such communications could not be privileged.

The existence of these documents also raises serious concerns that Molfetta Defendants are sitting on untold additional records that should have been produced.

### 3. *The Discovery Hearing*

Bluegreen accordingly set this issue for hearing as soon as possible with the Court. *See* [ECF 433]. During the conferral that occurred prior to the hearing, opposing counsel indicated that the Second Sanctions Order relieved Molfetta Defendants of any obligation to produce records not explicitly captured by the Epiq collection in October 2021 and of any duty to supplement their discovery responses pursuant to Rule 26(e). Molfetta Defendants' counsel confirmed as much during the discovery hearing on this issue. *See* Trans. of Dec. 15, 2022 Discovery Hearing at 15:3–6 (Ex. 9) ("We did everything we're supposed to do. So we don't disclaim a duty to supplement; there is just no reason to supplement because we have done our job. We have complied with the order."). Molfetta Defendants' offer no excuse and their counsel's meritless legal position leave no doubt as to the intent underpinning the discovery violations that are at issue here.

Molfetta Defendants have apparently not searched for any responsive records that came into existence after the Epiq collection concluded in October 2021, despite that they were continuing to produce documents long after the Epiq collection and despite that Rule 26(e) mandates that parties supplement their production. It is further unclear whether all potential sources for responsive materials were even searched.

### III.    LEGAL STANDARD

If a party fails to obey a discovery order, the Court "may issue further just orders," which can include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).  Likewise, if a party fails to provide supplemental discovery pursuant to Rule 26(e), on motion and after giving an opportunity to be heard, "may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi)." Fed. R. Civ. P. 37(c)(1)(C). Further, under Rule 37(b) or Rule 37(c), the Court may award attorney's fees. Fed. R. Civ. P. 37(b)(2)(C); Fed. R. Civ. P. 37(c)(1)(A). Courts have broad discretion to fashion appropriate sanctions for violations of discovery orders. *Nat'l Labs., LLC v. UnitedHealth Grp., Inc.*, 2018 WL 3814514, at *1 (S.D. Fla. Aug. 9, 2018); *see Aztec Steel Co. v. Fla. Steel Corp.*, 691 F.2d 480, 482 (11th Cir. 1982) ("Rule 37 sanctions are imposed not only to prevent unfair prejudice to litigants but also to insure the integrity of the discovery process."); *Wyndham Vacation Ownership, Inc. v. Am. Consumer Credit, LLC*, No. 18-80095-CIV, 2019 WL 4748328, at *1 (S.D. Fla. Aug. 30, 2019) ("A court may impose sanctions under Rule 37(b) for a variety of reasons, including; 1) compensating the court and other parties for the added expense caused by the abusive conduct; 2) compelling discovery; 3) deterring others from engaging in similar conduct; and 4) penalizing the guilty party or attorney.") (citation and internal quotation marks omitted).

### IV.    MEMORANDUM OF LAW

####    A.    Molfetta Defendants Should be Sanctioned

#####        1.    *Molfetta Defendants failed to produce documents under the Court's Order and/or under their Rule 26(e) duty to supplement*

The Court should impose discovery sanctions under Rule 37 because Molfetta Defendants have patently failed to obey the Court's three prior orders regarding the same discovery requests at issue here. The Court repeatedly ordered Molfetta Defendants to produce all responsive documents. Molfetta Defendants admittedly did not produce the Video and Communications, which were responsive to the Requests. More problematic, Molfetta Defendants now concede that the did not produce any documents that were created after the Epiq production. Thus, the breadth of what has not been produced and has been improperly withheld remains unclear. That conduct is egregious for multiple reasons.

First, despite the fact that Epic finished collecting documents on October 8, 2021, Molfetta Defendants did not complete the production of the document collection until December 13, 2022. Molfetta Defendants contention that they were under no obligation to produce documents in existence when it completed its rolling production defies logic.

But, even assuming Molfetta Defendants' contention that it only had the duty to produce the documents collected by Epiq were true (which it is not), Rule 26(e) mandates that the Molfetta Defendants supplement their earlier production. In *Coquina Investments v. Rothstein*, 2012 WL 3202273 (S.D. Fla. Aug. 3, 2012), the Court addressed whether documents created *after* discovery were still subject to discovery. While the Court recognized that some courts have not required documents created *after* discovery to produced, the Court citing *Pizza Public Co. v. Tricon Global Rests., Inc.*, No. 99 Civ 12056, 2000 WL 1457010, at *2 (S.D.N.Y. Sept.29, 2000), held that the document should have been provided to counsel.[7]  Clearly then, documents like the Video and Communications, which were created more than a year before the conclusion of the discovery period should have been produced.

In *Pizza Public*, the court explained the logic of why Rule 26(e) requires supplementation of documents that are both created prior to or after discovery:

> such a distinction could pose a serious risk of unfairness to the discovering party, since documents created or acquired after discovery but before trial might entirely undercut the gist of earlier discovery responses, thus placing the discovering party at a severe and entirely unfair disadvantage. Indeed, in some circumstances it might well create the opportunity for a producing party to seriously mislead its adversary, for example by deliberately delaying some of its informal fact investigations (including document acquisition) until after the close of discovery. Not surprisingly, the Advisory Committee Notes contemplate an approach contrary to that espoused by defendants. Thus, the Committee notes that "[s]upplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."

2000 WL 1457010, at *1 (citation omitted).

This logic is entirely applicable here. Molfetta Defendants did not even wait until after discovery to create these damaging documents; instead they just waited until Epiq did their collection, and then almost immediately began creating these damaging materials, apparently

---

[7] The Court did not address production because there were unresolved privilege issues.

knowing that they would not provide them to Bluegreen.  Molfetta Defendants knowingly and deliberately acted in bad faith. As Molfetta himself testified, he had no intention of producing documents even if the court ordered otherwise. *See* Ex. 11 at 45:4–7.

> 2.    *Molfetta Defendants knowingly asserted a non-existent attorney-client privilege to improperly withhold documents*

As discussed, Molfetta Defendants shielded numerous documents throughout this litigation by asserting a broad attorney-client relationship over virtually all communications with Bluegreen Owners. For example, in November and December 2021, Molfetta Defendants were claiming an expansive view of privilege to this Court. *See* [ECF 225], Ex. 5. However, the Video and Communications, created and sent *in or around October 2021*, establish that Molfetta Defendants knew such an assertion was patently false. Indeed, while representing to the Court that Molfetta Defendants represented these consumers, he was disclaiming that attorney-client relationship in bulk communications, undoubtedly to distance himself from TFG's scheme.

Further, Molfetta and his attorneys had to know that he could not have an attorney-client relationship with clients who retained Harold Miller as their attorney merely because Molfetta felt that Miller was inadequate and Molfetta unilaterally decided to represent them pro bono. Notably, Nelson Mullins acknowledged in its Opposition to Bluegreen's Motion to Overrule Privilege Objections that Molfetta was asserting privilege over certain documents of Miller clients, claiming that Molfetta "took over the representation." [ECF 225 at 7]. Nelson Mullins represented to the Court at that time that "at great expense, [they] assembled a team of Nelson Mullins lawyers working around the clock to review Prior Counsel's production, identify potentially privileged documents and investigate those potential privileges. *See id.* at 4. Presumably, Nelson Mullins' diligent investigation included ascertaining how these "clients" retained Molfetta, yet they, and Molfetta, never disclosed that the clients did not choose to be represented by Molfetta. The fraud was knowing and willful.

The evidence, which Molfetta Defendants deliberately withheld, establishes unequivocally that Molfetta Defendants, and their counsel, have improperly withheld countless documents based on the assertion of an attorney-client privilege Molfetta knew did not exist, while making misrepresentations to the Court to the contrary.

**B.    Default Judgment is the Only Appropriate Sanction**

The sustained discovery violations require a default judgment; lesser relief will not cure prejudice to Bluegreen. Applying Rule 37(b), the Eleventh Circuit, established the following

criteria for imposing a default judgment as a sanction: (1) a willful or bad faith failure to obey a discovery order; (2) a finding that default is a "just" sanction which complies with the court's due process requirements; and (3) less drastic sanctions would not ensure compliance with the court's orders. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993). Bluegreen can satisfy all of these criteria here.

1.     *Molfetta Defendants' Misconduct Was Willful*

A court may find conduct was willful where the party (1) fails to comply; (2) provides belated, evasive, and incomplete responses; (3) misrepresents facts in attempting to justify those responses; and (4) fails to show an inability to comply. *Johnson v. New Destiny Center Christian Church, Inc.*, 2017 WL 8948394, at *4-6 (M.D. Fla. 2017).

a.     Molfetta Defendants Failed to Comply with Orders

As discussed, Bluegreen has been required to set numerous discovery hearings in this case, and the Court has previously ordered the Molfetta Defendants to produce all responsive documents, even requiring a third-party vendor to conduct Molfetta Defendants' collection. This Motion provides indisputable evidence that Molfetta Defendants have failed to comply with the Discovery Order, First Sanctions Order, and Second Sanctions Order, and that they refuse to remedy this non-compliance. Perhaps worse, they are now weaponizing the Second Sanctions Order as a justification for failing to comply with their discovery obligations for over a year and in contravention, at a minimum, of Rule 26(e).

b.     Molfetta Defendants Provided Belated and Evasive Discovery Responses

Molfetta Defendants had numerous opportunities to provide complete discovery responses but failed to do so. The Court already waived all of Molfetta Defendants' non-privilege objections due to their untimely responses and sanctioned Molfetta Defendants for refusing to conduct a proper collection of responsive documents. Most troublingly, Molfetta Defendants' counsel is taking the position that Molfetta Defendants had no obligation to conduct any other collection or production other than what was ordered to be completed by Epiq in October 2021 pursuant to the Second Sanctions Order. Rather than trying to remedy this massive deficiency (and violation of multiple orders), Molfetta Defendants claim that "[w]e did everything we're supposed to do" and that "[w]e have complied with the order." Ex. 9 at 15:3–6.

### c.      Molfetta Defendants Misrepresented Facts

Molfetta Defendants repeatedly misrepresented to Bluegreen and the Court that he had a broad attorney-client privilege with these consumers, while at the same time he was denying to these "clients" that there was any attorney-client relationship.  Molfetta was therefore claiming an attorney-client benefit when it advanced his litigation strategy, but disclaiming it to avoid potential claims from disgruntled owners who TFG solicited on his behalf. Molfetta Defendants' wholly inconsistent positions with his "clients," on the one hand, and with the Court and Bluegreen, on the other, demonstrates Molfetta Defendants' deliberate and calculated deception. Worse, Molfetta Defendants' deception abused the sanctity of the attorney-client privilege.

Moreover, Molfetta testified under oath before the Court that TFG was providing services, yet months earlier he told his clients exactly the opposite.  Thus, Molfetta has made multiple misrepresentations. *See, e.g.* [ECF 365 at 81:20–82:7 (Molfetta testimony on alleged actual work provided by TFG)].

### d.      Molfetta Defendants Have Not Demonstrated an Inability to Comply

Finally, Molfetta Defendants have not shown an inability to produce documents. Instead, Molfetta Defendants are taking the position that they have fully complied with the Court's Orders, notwithstanding the Video and Communications created by Molfetta Defendants that are directly responsive to discovery requests seeking the same. Accordingly, because Molfetta Defendants take the untenable position that they have complied with the three prior orders, they have made no showing of an inability to comply with them.

### 2.      *A Default Judgment is Just*

A default judgment is the only just sanction in this case.  Bluegreen was forced to prepare its case with incomplete discovery, including taking the trial depositions of Bluegreen owners. These owners are spread throughout the country, and cannot be compelled to attend the trial in this case, so Bluegreen must use their incomplete testimony to prepare its case.  The depositions have concluded, and Bluegreen cannot change those depositions even if the Court compelled Molfetta Defendants to produce the missing documents. In addition, because Molfetta Defendants are the only remaining defendants litigating in this case, a default judgment would conclude this case other than an adjudication of damages and entry of an injunction.

Moreover, this is not an unsophisticated defendant. Mr. Molfetta is an attorney, who, according to him, is a "highly regarded California lawyer" who has been lead counsel on over 300 jury trials. *See* [ECF 297 at 2]. Mr. Molfetta unquestionably knows how discovery works and his obligations under the Federal Rules of Civil Procedure. Mr. Molfetta also knew his assertion of the attorney-client privilege was baseless. Beyond that, Molfetta Defendants have been represented by sophisticated trial counsel.

Also, the Court has provided Molfetta Defendants numerous opportunities to remedy their discovery failures, without imposing any substantial sanctions. Still, despite the fact that this is the **fourth** time the issue of Molfetta Defendants' deficient discovery has been raised with the Court, Molfetta Defendants refuse to remedy these discovery issues nor, at this juncture, and with Bluegreen having identified the withheld materials on the eve of discovery and discovery closed, can they. No lesser sanctions than those requested here will remedy the prejudice.

Notably, this is not the first time this Court has encountered significant discovery deficiencies by lawyers working with timeshare exit companies. In the case *Bluegreen Vacations Unlimited, et al. v. The Montgomery Law Firm, LLC*, Case No. 19-cv-24704, in the Southern District of Florida, the Court almost entered a default judgment against the Montgomery Defendants for failing to provide documents but elected not to *only because the Montgomery Defendants chose to fix the discovery issues in that case*. *See* Trans. of Nov. 9, 2021 Discovery Hearing at 18:14–16 (Ex. 10) (noting that the Montgomery Defendants "were happy to provide whatever [plaintiffs] needed that was within the scope of discovery because it would be foolish not to"). Molfetta Defendants have offered no such *mea culpa* here. Instead, they have dug in their heels, arguing that the Second Sanctions Order ended their discovery obligations in this case. The Court should impose serious consequences for this decision.

3. *Lesser Sanctions are Insufficient*

There is no evidence that anything less than a default judgment would change Molfetta Defendants' conduct, much less cure the prejudice. *See Johnson*, 2017 WL 8948394, at *7. Although not required, the Court already gave Molfetta Defendants several opportunities to produce all documents.[8]

---

[8] "When lesser sanctions would be ineffective, Rule 37 does not require the vain gesture of first imposing those ineffective lesser sanctions." *Malautea*, 987 F.2d at 1544.

The Discovery Order was entered on April 27, 2021. [ECF 88]. The First Sanctions Order was entered on June 16, 2021. [ECF 119]. The Second Sanctions Order was entered on August 25, 2021. [ECF 163]. If Molfetta Defendants had committed to providing discovery in accordance with the Rules at that time, they could have produced all necessary documents in sufficient time to minimize any prejudice and allow additional discovery before dispositive motions and trial. Instead, they denied wrongdoing, claimed their discovery obligations ended in October 2021, and still refuse to produce records directly on point that go to the heart of Bluegreen's claims.

Discovery is now closed. Dispositive motions have been filed. There is simply no longer sufficient time for any meaningful supplemental production to be made. Bluegreen is unable to remedy this prejudice because all trial depositions have already occurred.[9] Moreover, Bluegreen has no way of knowing what other documents Molfetta Defendants are improperly withholding. The record is undisputed that Molfetta Defendants never even considered producing documents after the Epiq collection, so there are potentially numerous other relevant documents that should have been produced. Nor can Bluegreen possibly know what communications were withheld based on the non-existent attorney-client privilege.

### C. The Court Should Award Plaintiffs Their Attorney's Fees and Costs

The Court should require Molfetta Defendants to pay Bluegreen its attorney's fees and costs associated with this Motion and with Bluegreen's efforts to address these issues throughout the litigation. The Court is required to award these fees unless Molfetta Defendants' failure to obey the Court's June 15, 2021 Order "was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). An award of attorney's fees and costs is particularly appropriate where the producing party failed to make any efforts to comply with a Court's order to respond to discovery or produce documents. *See McDaniel v. Bradshaw*, 2011 WL 2470519, at *4 (S.D. Fla. June 20, 2011). Here, Molfetta Defendants failed for over a year to supplement discovery responses in any way, despite the entry of multiple Court orders requiring these documents. Molfetta Defendants can present no reasons or circumstances that would substantially justify this failure or make the award of expenses unjust. To the contrary, it is the

---

[9] In addition, Judge Bloom has denied recent request to extend the discovery deadline. *See* [ECF 420 (only providing seven (7) additional days for discovery instead of the ninety days requested) and 429 (denying a renewed motion for the same relief)].

Molfetta Defendants' position that they had no duty of production beyond the collection of October 2021. Therefore, the Court should award Plaintiffs their attorney's fees and costs associated with this Motion.

WHEREFORE, for the reasons set forth above, Plaintiffs respectfully request that the Court enter an Order: (1) granting this Motion; (2) entering a default judgment against Molfetta Defendants for their repeated failure to comply with the Court's prior orders and for withholding critical evidence created after the entry of the Second Sanctions Order (all which remains unproduced and the breadth and scope of which remains unknown); (3) in the alternative, striking Molfetta Defendants' Answer and Affirmative Defenses; in either instance of the relief ordered as to either (2) or (3) above, (4) awarding Plaintiffs their reasonable attorney's fees and costs associated with this Motion and with Bluegreen's efforts to address these issues throughout the litigation; and (5) granting such other and further relief as the Court deems necessary and appropriate.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for Bluegreen conferred with counsel for Molfetta Defendants to resolve the issues raised by this Motion, but were unable to do so. Accordingly, the Court authorized the filing of this Motion. [ECF 440].

Dated: <u>December 29, 2021</u>              Respectfully submitted,

<u>/s/ Glennys Ortega Rubin</u>
**ERIC C. CHRISTU, ESQ.**
Florida Bar No. 434647
echristu@shutts.com
**SHUTTS & BOWEN, LLP**
200 South Biscayne Boulevard, Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile: (305) 381-9982

and

**ALFRED J. BENNINGTON, JR., ESQ.**
Florida Bar No. 0404985
bbennington@shutts.com
**GLENNYS ORTEGA RUBIN, ESQ.**
Florida Bar No. 556361
grubin@shutts.com
**MICHAEL QUINN, ESQ.**
Florida Bar No. 84587
mquinn@shutts.com
**SHUTTS & BOWEN LLP**
300 South Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: (407) 835-6755
Facsimile:  (407) 849-7255

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of December, 2022, a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the Court's CM/ECF filing system, which will serve a copy via electronic mail upon the following CM/ECF

Participants, and on the aforementioned date I caused a true and correct copy of the foregoing to

be served via U.S. Mail, postage prepaid, upon the following non-CM/ECF Participants:

| CM/ECF PARTICIPANTS | NON-CM/ECF PARTICIPANT |
|---|---|
| Jonathan Etra, Esq. <br> Email: jonathan.etra@nelsonmullins.com <br> Mark F. Raymond, Esq. <br> Email: mark.raymond@nelsonmullins.com <br> Christopher Cavallo, Esq. <br> Email: chris.cavallo@nelsonmullins.com <br> Becky Esquenazi, Esq. <br> Email: becky.esquenazi@nelsonmullins.com <br> Nelson Mullins <br> 2 S. Biscayne Blvd., 21st Floor <br> Miami, FL  33131 <br> Telephone: (305) 373-9400 <br> *Attorney for Molfetta Defendants* | Jordan Salkin <br> Freedom Consumer Services LLC <br> d/b/a Timeshare Freedom Group <br> Booking # 3213378 <br> Theo Lacy Jail <br> 501 The City Dr. S. <br> Orange, CA 92867 <br><br> Shayna G. Schroeder <br> Systema Marketing, Inc. <br> P.O. Box 2618, #426 <br> San Miguel Drive <br> Newport Beach, CA 92660 |

*/s/ Glennys Ortega Rubin*
**GLENNYS ORTEGA RUBIN, ESQ.**