### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:20-cv-25318-BLOOM/Otazo-Reyes

BLUEGREEN  VACATIONS  UNLIMITED,
INC., a Florida corporation, *et ano.*

      Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC, a
Colorado limited liability company, *et al.,*

      Defendants.

_____/

### MOLFETTA DEFENDANTS' RESPONSE IN OPPOSITION
### TO BLUEGREEN'S SUPPLEMENTAL SUPPORT FOR SANCTIONS

      Defendants, Michael Molfetta and Molfetta Law, LLC (together, "Molfetta") respectfully submit this response in opposition to Bluegreen's supplement to its Motion for Rule 37 Sanctions ("Supplement") [D.E. 522]. In opposition to the Supplement, Molfetta states:

### <u>INTRODUCTION</u>

      Bluegreen's Supplement neither corrects the myriad insufficiencies in its prior motion for sanctions nor serves as an independent basis to strike Molfetta's pleadings. Bluegreen baselessly asserts that Molfetta committed perjury to sustain improper privilege assertions, and that Molfetta has no attorney-client relationship with its clients. [Supplement at 2]. To prop up these incredible claims, Bluegreen relies on: (1) parts of Molfetta's testimony while leaving out his clarifying testimony and admissions; (2) two emails Molfetta produced in discovery *over a year ago* (which Bluegreen has used in depositions and hearings since) ("Supplement Emails"); and (3) documents Bluegreen recently obtained from Jordan Salkin ("TFG Emails"), the owner of Timeshare Freedom Group ("TFG"), none of which Bluegreen shows Molfetta should have produced. Based on speculation, Bluegreen asks the Court to make several leaps in logic to conclude that Molfetta committed perjury, Molfetta has no attorney-client relationships with any of his clients, and Molfetta's pleadings should be stricken.

      Bluegreen does not and cannot satisfy its burden of showing that Molfetta violated a discovery order, had the requisite willful bad faith to do so, or that Bluegreen suffered any

1

prejudice as a result. Bluegreen cannot even win a motion to compel. As in its original sanctions motion, Bluegreen hurls numerous fallacies, unsupported claims, and speculative arguments against the wall in hopes that something—anything—will stick. No sanctions are warranted under these circumstances, let alone the extreme, case-ending relief Bluegreen seeks and Molfetta should be awarded its fees for having to respond to these baseless motions to strike.

## HISTORY OF CLAWBACK LITIGATION

In the Supplement, Bluegreen refers to clawback litigation between the parties on several occasions, but glosses over relevant details.

1.     In September 2021, shortly after beginning its representation of Molfetta, undersigned counsel discovered that Molfetta's prior counsel had unknowingly produced privileged Molfetta documents to Bluegreen. These privilege documents included: (a) "letters of explanation" ("LOEs"); (b) SurveyMonkey questionnaires ("Questionnaires"); and (c) emails between Molfetta and its clients (collectively, the "Privileged Documents").

2.     Molfetta's clients use the LOEs and Questionnaires to share details of their experiences with Bluegreen, and their complaints about Bluegreen, for Molfetta to use in its representation of the clients.

3.     Molfetta's *clients* (not Molfetta) hold the privilege over these documents. Only Molfetta's clients can waive that privilege.

4.     Under the tight timeframes allowed for clawback claims, undersigned counsel investigated the Privileged Documents and the circumstances of their production by prior counsel and determined that Molfetta had an ethical obligation to protect its clients' privileged information by requesting a clawback of these documents.

5.     In late September 2021, undersigned counsel made formal written demand for clawback of the Privileged Documents. This was nearly six months after Molfetta's prior counsel had inadvertently produced the Privileged Documents to Bluegreen, such that Bluegreen had plenty of time to review these documents and admittedly did so. [*See* D.E. 206 at 7, n.16].

6.     Molfetta's sole purpose in demanding clawback of the Privileged Documents was to protect his clients' privilege pursuant to his ethical obligations to his clients.

7.     Bluegreen's principal argument in meet and confers (and at the hearing, shown below) was that the LOEs were not privileged to begin with based on its claim that the LOEs were sent by Molfetta to Bluegreen and therefore were not intended to be confidential.

8.      In response, Molfetta repeatedly requested proof that Bluegreen had received Molfetta LOEs, as these documents would necessarily be in Bluegreen's files if that were the case, but Bluegreen refused to provide any such proof.

9.      Finally, on October 29, 2021, Bluegreen filed its Motion to Overrule Molfetta's Privilege Objections ("Motion to Overrule Privilege"). [D.E. 206]. Molfetta filed its response to the Motion to Overrule Privilege on November 16, 2021. [D.E. 225].

10.      The Court held a hearing on the Motion to Overrule Privilege on December 7, 2021. [D.E. 263]. During the hearing:

a.   Undersigned counsel reiterated Molfetta's position that the clawback demand was made for one reason: to "protect the privilege of third parties, our client's client." [D.E. 263 at 7:21-22].

b.   Bluegreen's primary argument that the LOEs were not privileged was that Molfetta sent the LOEs to Bluegreen, not that the LOEs were sent to TFG. [*Id.* at 9:2-5];[1] [*Id.* at 31:20-32:2].[2]

c.   The Court warned Bluegreen that if it refused to search its files for proof that LOEs were sent to Bluegreen, it was taking a risk on the ruling. [*Id.* at 49:18-52:24].

d.   Undersigned counsel was straightforward with the Court and expressed a strong desire to give the Court a sample of all the different versions of the LOE it had seen in its review to date. [*Id.* at 47:1-4] ("MR. ETRA: You will just get a version of each form because I don't want to make any judgment calls. I just want to give you a version of each form. I don't want to be accused of holding anything back. None of them say CC.").

e.   When the Court *on its own* asked undersigned counsel whether the completed LOEs were sent to the exit companies, undersigned counsel answered candidly *that it did not know and was still learning what happened*. [*Id.* at 47:17-25].

[1] "The other argument, which was really one of the main focuses in the meet and confer, was that, Jonathan, they said, you know these documents were sent to Bluegreen. I said, Look, show them in your pile."

[2] "THE COURT: OK. Let's put that to the side for a moment. So your challenge is to privilege. You're saying they are not privileged because there is no retainer agreement and even if there was, some of the documents show that they were ultimately going to be sent to the timeshare plaintiff here and, therefore, some may be, some may not be privileged. Does that fairly summarize your argument? MR. LEGER: It does, your Honor."

3

11.      On December 10, 2021, undersigned counsel complied with the Court's request for a sample of LOEs to review *in camera*. Undersigned counsel included with the sample an extremely detailed description of the various types of LOEs it had requested be clawed back. *See* **Exhibit A**. In providing the sample, Molfetta disclosed:

> Doc. 11 – **In reviewing the LOEs after the hearing, it appears some clients may have routed their completed LOEs through Timeshare Freedom Group, intending for Timeshare Freedom Group to deliver them to Molfetta**. This LOE is one example of a few on the privilege log suggesting that a client may have been told to send the filled out forms to Timeshare Freedom Group. Insofar as this occurred, **Molfetta agrees those LOEs would not be privileged and must be produced**. Molfetta continues to investigate whether this occurred and if it can be determined with specificity for which clients it occurred. We located one LOE that has a fax cover sheet indicating it was faxed to Timeshare Freedom Group. We are producing that cover sheet and LOE to Plaintiffs' counsel.

*See* Ex. A (describing Sample Document #11 for the Court's review) (emphases added).

12.      As shown in Ex. A, Molfetta forwarded a copy of this same email to Bluegreen, including the same descriptions of the sample documents (but without the attachments themselves).

13.      After completing its *in camera* review of the documents, the Court found that the LOEs constituted privileged communications, except for the LOEs that had indicia of being returned to TFG, as represented by Sample Document #11. [D.E. 247].

14.      Thereafter, Molfetta reviewed in good faith the LOEs it was seeking clawback of, and re-produced to Bluegreen, among other things, LOEs it located with indicia of being sent to or involving TFG. *See* **Exhibit B**.

## ARGUMENT

### 1.  No Violation of Court Order

Bluegreen has not identified a specific order which Molfetta allegedly violated regarding the LOEs. *See Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (courts cannot strike pleadings or render default judgments without a showing of "willful or bad faith failure to obey a discovery order."). That, in and of itself, is enough for the Court to deny the relief sought. Bluegreen cites generally to the Court's prior orders from early 2021 requiring responses to Bluegreen's discovery requests [D.E. 522 at 6], but those orders were resolved and culminated

with the appointment of Epiq under the Epiq Order at [D.E. 163]. Molfetta has since produced tens of thousands of documents to Bluegreen and incurred over $150,000 in costs from Epiq alone. Bluegeen has not identified a single document of Molfetta that Molfetta should have but did not produce.

Moreover, since the Court's order on the Motion to Overrule Privilege, Molfetta has endeavored to produce to Bluegreen LOEs in Molfetta's possession containing indicia of being returned to or shared with TFG. This includes the continued production of these kinds of LOEs in Phase 1 and Phase 2 of the Epiq document production. Given the foregoing, not only has Molfetta *not* violated any order regarding these documents, but Molfetta has also continued to abide by the spirit of the Court's orders in connection with later discovery obligations.

### 2. No Willful Bad Faith Conduct

A. Molfetta asserted privilege in good faith

Molfetta's privilege assertions have always been made in good faith and relate to facially privileged documents. The only reason Molfetta has ever asserted privilege, including privilege over the LOEs, is to *protect his clients*. Molfetta's clients are the holders of the privilege, not Molfetta. Only Molfetta's clients have the right to choose to waive this privilege. Molfetta's clients are not parties to this action. While Bluegreen would like to attribute some nefarious purpose to Molfetta's privilege assertions, there is none. Molfetta has an obligation to his clients and must assert privilege on their behalf where it appears, on the face of documents, to be appropriate. Even if the Court finds that Molfetta made mistakes in his assertion of his client's privilege, that would not warrant the striking of the pleading because Molfetta was acting on his client's behalf under his ethical obligations. In filing this lawsuit, and in taking these actions, Bluegreen seeks to weaponize Molfetta's ethical obligations to his clients and put Molfetta in an impossible position Bluegeen created to secure an automatic win in this case.

B. Bluegreen has not proven Molfetta committed perjury

Bluegreen alleges two statements by Mr. Molfetta are perjurious: (i) a statement in a Declaration that Molfetta Law "sent blank LOEs" to clients and the clients "sent the LOEs back to Molfetta"; and (ii) testimony at the Rule 11 hearing, that Molfetta "sent out what's called a welcome packet," including the LOE. *Id.*

*First*, these statements were accurate generalized descriptions of how the process worked, and Bluegeen provides no evidence they were made with the intent to mislead. Plainly, they were

not intended to cover every possible variation involving the 7,000 TFG-referred clients in a process that was probably not as perfected as the participants recalled. Despite cross examining Molfetta four times (three days of deposition plus the Rule 11 hearing), there was never a time when Bluegeen asked Molfetta point blank: Are you saying that TFG never sent any LOE or that TFG never received any LOE? As shown below, in deposition testimony that preceded the Rule 11 testimony, **Molfetta admitted that it happened from time to time, discussed below, rendering this entire Motion completely frivolous.** At the time of the Declaration, as shown above, Bluegreen had insisted that the LOEs were sent to *Bluegreen*. Thus, Mr. Molfetta's only categorical assertion in the Declaration is that to his knowledge the LOEs were never sent to *Bluegreen*. [225-1 at ¶20]. The same is true with Rule 11 testimony. Mr. Molfetta was responding to a general question from his own counsel about "the nuts and bolts" of how Molfetta learns it has been referred a new client from TFG. [D.E. 365 16:6-17:1]. His answer was not intended to cover every variation on how the practice may have worked and he was subject to cross-examination on that using the Supplement Emails, discussed in the "Second" and "Third" points next.

      *Second*, on December 10, 2021, in the clawback litigation, **Molfetta voluntarily disclosed** to the Court and opposing counsel during that there were indicia that certain LOEs were returned to TFG, not Molfetta. *See* Ex. A. Molfetta agreed any LOEs that had any indicia they were returned to TFG were *not* privileged and should be produced.[3] *Id*. If Molfetta was truly willing to perjure himself to hide the fact that some LOEs were returned to TFG and lost privilege, and undersigned counsel was willing to suborn that perjury, it would have been easy for Molfetta to then withhold from the Court those LOEs with indicia of being returned to TFG. Molfetta was entirely in control over choosing which sample LOEs the Court reviewed *in camera*. Of course, that was never Molfetta's or undersigned counsel's intent, and disclosure was made to the Court and Bluegreen.

      *Third*, in May 2021, Bluegreen took the first day of Molfetta's corporate representative deposition. During that deposition, Bluegreen asked Mr. Molfetta about Molfetta's "Welcome Packet," including the LOEs. Mr. Molfetta testified: "Sometimes [clients] would return it to us, sometimes [clients] would send it to TFG and they would forward it to us." [D.E. 459:1 53:25-

---

[3] Molfetta's willing admission that there was no privilege attached to LOEs that were returned to TFG flies in the face of Bluegreen's claims that "Molfetta had no intention of relying upon reasonable assertions of privilege." [D.E. 522 at 4].

54:11]. Mr. Molfetta did not attempt to conceal the fact that some clients returned the LOEs to TFG. This testimony—and the December 2021 Molfetta disclosure—came *before* the Molfetta Rule 11 testimony that Bluegreen claims is perjurious.

Notably, following these two admissions, Bluegeen never asked to reopen the clawback litigation for more LOEs. Nor could they have because the Court had Molfetta's admission that TFG was involved from time to time when the Court issued its order on the clawback litigation. Also following these two admissions, Molfetta's corporate representative deposition testimony was still open, and they deposed him on two subsequent days—December 6 and December 20, 2022. Bluegreen had ample opportunity to further develop the extent of TFG involvement if it cared to, but it chose not to presumably because there was nothing important about it. But Bluegreen now seeks the litigation "death penalty" over it.

Fourth, the testimony of Jordan Salkin, the owner of TFG and Bluegreen's *star witness*, is consistent with Mr. Molfetta's testimony. During his deposition, Mr. Salkin maligned Molfetta at every opportunity and refused to answer undersigned counsel's questions. [D.E. 451 at 7-18]. That said, Mr. Salkin testified generally the same way that Molfetta testified generally: The LOEs were sent out by Molfetta and received by Molfetta. [D.E. 446-17 53:5-55:19]. When pressed by Bluegreen, including with Supplement Emails, Salkin conceded TFG may have been involved at times, but he believed it was in sending out the power of attorney forms, not the LOEs. [D.E. 446-17, 55:20-56:10; 56:11-25; 57:1-7; 57:8-23; 113:6-18; 114:17-19]; [D.E. 446-16, 8:5-13; 10:10-19; 18:1-22].[4] Salkin's general recollection of how the process worked most of the time is consistent with Molfetta's general recollection of how the process worked most of the time. Even if they were both mistaken, which there is no evidence of, this does not rise to the level of perjury.

Fifth, Molfetta *was* cross-examined on the Supplement Emails and Bluegreen and Molfetta provided its interpretation of them. Molfetta's testimony stands unrebutted. Regarding one of the Supplement Emails, Molfetta testified that the "documents" discussed in those emails are client

---

[4] Similarly, Jeremy Merrill, who ran TFG's day-to-day operations, testified that he could not remember who sent out Molfetta's documents, and he believed "that role actually went – it kind of bounced back and forth at different times." [D.E. 446-4 at 126:10-12]. Merrill added that before Molfetta got involved, TFG would send out the lawyer documents itself, but when Molfetta started representing clients, "that process was modified." [*Id*. at 129:11-14]. Merrill said he recalled Molfetta looking at the overall process and "trying to improve the process as to, you know, make it above – above reproach, if you will." [*Id*. at 131:6-12].

materials such as their contracts with Bluegeen, medical bills, proof of loss of employment and the like. [D.E. 459-1 136:21-137:16]; [D.E. 365 115:1-20]. Molfetta never denied that TFG played that role. Regarding the other Supplement Email, Molfetta testified he did not know what documents were being referred to and the assumption should not be made that the email is referring to Molfetta's "Welcome Packet" documents (or the LOEs in particular). [D.E. 459-1 119:1-120:18]. Bluegreen has not established that Molfetta was incorrect. In sum, even though Molfetta explained the Supplement Emails in a manner consistent with the testimony Bluegreen charges is perjury, Bluegreen incredibly asks the Court to rely on these emails to make a perjury finding and strike Molfetta's pleadings.[5]

Sixth, the new documents Bluegreen obtained from Salkin, the TFG Emails, do no prove Molfetta committed perjury or improperly withheld any documents. These are TFG documents that do not have any Molfetta employees on them which show TFG receiving LOEs from clients. There were no indicia of TFG's involvement in these LOEs in the clawback materials Molfetta reviewed in accordance with the Court's order. Bluegreen has not established that Molfetta had these TFG emails or was aware of them during the clawback litigation. Nor are they inconsistent with his prior testimony and counsel's prior disclosure that some LOEs were returned to TFG. In sum, Bluegreen has not identified a single Molfetta LOE that was not produced that Molfetta should have produced and would not prevail even on a motion to compel, much less a motion to strike pleadings.[6]

---

[5] Even if Molfetta had made inconsistent statements over the course of this action, which has been pending for over 2 years, that is not sufficient for a finding of bad faith. *See Phillips v. Mitchell's Lawn Maint. Corp.*, Case 13-20854, 2017 WL 11624295 (S.D. Fla. March 31, 2017) (denying motion for sanctions and holding that a false or inconsistent statement, standing alone, does not compel a conclusion of bad faith); *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed.Appx. 839 (11th Cir. 2009) (denying motion to strike pleadings for perjury where false statements were not made for frivolous or harassing purpose).

[6] The cases cited by Bluegreen do not support any of the relief sought. In *Art Remedy, LLC v. Lana Moes Art, LLC*, Case 18-61912, 2019 WL 13063496 (S.D. Fla. September 26, 2019), the defendant intentionally fabricated evidence that would dispose of the claims and then testified falsely about the fabrication. Similarly, in *Sprint Solutions, Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1295 (S.D. Fla. 2015), defendants colluded to provide false testimony throughout the action. Bluegreen has not come close to alleging similar facts here, let alone proving them.

C.  There was no fraud on the Court on the existence of attorney-client relationships

Bluegreen claims Molfetta's testimony was designed to commit a fraud on the Court concerning the existence of attorney-client relationships. [D.E. 522 at 7-8]. Only Bluegreen would argue that the Court should nullify all the attorney-client relationships between Molfetta and its clients because TFG, on occasion, may have been involved in the transmission of certain documents for some clients.[7] But Molfetta did not hide this as shown above. In May 2022, Molfetta testified that its "Welcome Packet" documents were sometimes returned to TFG. And undersigned counsel disclosed the same fact to the Court and Bluegreen back in December 2021 and produced LOEs with indicia they went to TFG. Bluegreen has not established perjury or fraud, as Molfetta has not withheld any information from the Court regarding privilege.

**3.  No Prejudice to Bluegreen**

Bluegreen has not been prejudiced by Molfetta's rightful attorney client privilege assertion over the LOEs. Before Salkin's recent production, Molfetta produced to Bluegreen LOEs with indicia that they were returned to TFG.[8] Bluegreen also had the Supplement Emails since December 2021. There was *nothing* stopping Bluegreen from reopening its request to overrule privilege at any time between December 2021 and the close of discovery in December 2022.

The prejudice is additionally misplaced because the LOEs support Molfetta's position, but Molfetta was ethically prevented from producing or affirmatively using them. As described above, the LOEs contain each client's story about why they wanted out of their contracts, including Bluegreen's fraud. Bluegreen cannot claim it has been prejudiced by not receiving all the LOEs in discovery when it has consistently taken the position that this evidence is irrelevant. Bluegreen had the opportunity to depose 20 clients in this action. Every time Molfetta asked questions in these depositions related to Bluegreen's fraud or misconduct and why they wanted out—the subject of the LOEs—Bluegreen objected. Bluegreen even asked for a standing objection during every client deposition to *any* questioning on this.

---

[7] *Jackson v. BellSouth Telecom.*, 372 F.3d 1250, 1281 (11th Cir. 2004) does not stand for the principle that no attorney-client relationship can be formed if an intermediary is involved in the transmission of certain documents. *Jackson*, at 1282.

[8] As mentioned above, Bluegreen had all the LOEs Molfetta sought to clawback for over 6 months. Bluegreen reviewed these documents and presumably saw indicia that a few were returned executed to TFG, unless it overlooked them because there were so few.

If anyone was prejudiced by Molfetta's privilege assertions over the LOEs, it was Molfetta. On many occasions during the client depositions, Molfetta wanted to refresh the clients' recollections concerning their complaints about Bluegreen's sales practices and other frauds using the LOEs but could not do so without risking a waiver. Many clients complained of egregious conduct by Bluegreen in the LOEs but could not remember details years later during their depositions. Molfetta has been severely prejudiced by Bluegreen filing this action in which Molfetta is hampered in its ability to defend itself due to its clients' privileges.

Bluegreen suggests it was prejudiced by Molfetta's privilege assertions because it did not have evidence needed to refute Molfetta's Rule 11 testimony concerning the document process. This is blatantly false. Bluegreen had the Supplement Emails it now relies upon since December 2021, *six months* before Molfetta's Rule 11 testimony. At the time of Molfetta's Rule 11 testimony, Bluegreen had also taken Molfetta's 30(b)(6) deposition and had Molfetta's admission that some of clients returned the executed Molfetta "Welcome Packet" documents to TFG, points it could have developed further with additional days of Molfetta corporate representative testimony. Finally, at the time of Molfetta's Rule 11 testimony, Bluegreen also had numerous LOEs with indicia they were returned to TFG, which Molfetta had produced both during the clawback litigation and during Phase 1 of the Epiq discovery process.

### 4. **Molfetta Entitled to Sanctions Related to Supplement**

Molfetta seeks an award of its attorneys' fees and costs in connection with the Supplement, pursuant to Rule 37(a)(5)(B), because, as with the original motion for sanctions, the Supplement was not substantially justified and there are no circumstances making an award of expenses to Molfetta unjust.

## CONCLUSION

Given the foregoing, Molfetta respectfully requests that the Court enter an order denying Plaintiffs' Motion, granting Molfetta its attorneys' fees and costs in connection with the Motion, and granting any other further relief the Court deems just and proper.[9]

---

[9] The Court has not set an evidentiary hearing on this matter, nor does Molfetta believe one is necessary. Bluegreen has not made a prima facie case that any sanctions are appropriate, let alone the ultimate sanction of striking Molfetta's pleadings. That said, if the Court is persuaded by Bluegreen's arguments, Molfetta requests that no sanctions order is entered without an evidentiary hearing.

Dated: February 10, 2023.          Respectfully submitted,

By: */s/ Christopher Cavallo*
Christopher Cavallo | Fla. Bar No. 092305
Jonathan Etra | Fla. Bar No. 0686905
NELSON MULLINS
One Biscayne Tower, 21st Floor
2 S. Biscayne Boulevard
Miami, FL 33131
Telephone: 305.373.9400
*Counsel for Michael A. Molfetta, Molfetta Law, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of February 2023, a true and correct copy of the foregoing has been served via electronic mail to the parties on the attached Service List.

By: */s/ Christopher Cavallo*
Christopher Cavallo