UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 20-cv-25318-BLOOM/Otazo-Reyes**

BLUEGREEN VACATIONS UNLIMITED, INC.,
and BLUEGREEN VACATIONS CORPORATION,

      Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC,
*et al.*

      Defendants.

_____/

## ORDER ON AMENDED MOTION FOR DEFAULT JUDGMENT

**THIS CAUSE** is before the Court on Plaintiffs Bluegreen Vacations Unlimited, Inc. and

Bluegreen Vacations Corporation's ("Plaintiffs" or "Bluegreen") Amended Motion for Default

Judgment Against Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and

Jordan Salkin, ECF No. [567].[1] The Court has carefully reviewed the Motion, the record in this

case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion is

granted in part and denied in part.

### I.     BACKGROUND

This case involves an alleged scheme by Defendants to offer owners of timeshares who

have contracted with Plaintiffs for those timeshares ("Bluegreen Owners") a guaranteed way to

get out of paying back the financing for the timeshares. According to the Amended Complaint,

filed on December 30, 2020, Plaintiffs are Florida entities and are collectively a global leader in

---

[1] Plaintiff also filed Plaintiffs' Motion for Default Judgment Against Defendants Freedom Consumer Services, LLC and Systema Marketing, Inc., ECF No. [557], and Plaintiffs' Motion for Default Judgment Against Defendant Jordan Salkin, ECF No. [560].

the development of timeshare properties. ECF No. [270] ¶¶ 1, 2. Individuals who purchase timeshare interests through Plaintiffs enter into valid and binding purchase agreements ("Purchase Agreements"). *Id.* ¶ 3. If an individual obtains financing to purchase a timeshare from Plaintiffs, then the individual executes a promissory note. *Id.* ¶ 4. The Court refers to these promissory notes, together with the Purchase Agreements, as "Timeshare Contracts." The Timeshare Contracts obligate Bluegreen Owners to make payments to Plaintiffs for the financing Plaintiffs provide for the timeshares. *Id.* ¶ 5.

The Defendants are Timeshare Termination Team, LLC ("TTT"); Vindaloo Travel Network, LLC; Freedom Consumer Services, LLC ("TFG"); Systema Marketing, Inc. ("Systema"); Jordan Salkin ("Salkin"); Brian Stephen Wilbur ("Brian Wilbur") and Holly Wilbur; Shayna Schroeder ("Schroeder"); Harold O. Miller ("Miller"); Michael A. Molfetta ("Molfetta"); and Molfetta Law, LLC ("Molfetta Law") (collectively, "Defendants"). *Id.* ¶¶ 24-41. Although Defendants are not parties to the Timeshare Contracts between Plaintiffs and the Bluegreen Owners, Defendants are alleged to have falsely advertised "timeshare exit services" that purport to cancel Timeshare Contracts. *Id.* ¶ 7. Plaintiffs contend that Defendants do not have the ability to cancel the Timeshare Contracts, and through their coordinated scheme, they eventually cause the Bluegreen Owners to default on their Timeshare Contracts. *Id.* ¶¶ 57-59. Plaintiffs further allege that the scheme involves (1) Marketing Defendants, which include TFG, Systema, and Salkin; and (2) Molfetta and Molfetta Law ("Molfetta Defendants"). *Id.* ¶ 60. The Marketing Defendants allegedly employ false and misleading advertising, enter into a contract with the Bluegreen Owner for the provision of the Marketing Defendants' fraudulent and illusory services, and cause the Bluegreen Owner to stop making payments to Plaintiffs. *Id.* ¶¶ 67-68. Molfetta Defendants then send form letters to Plaintiffs designed to cut off communication between

Plaintiffs and the Bluegreen Owners, with the overall purpose of diverting payments from Plaintiffs to the Marketing Defendants and Molfetta Defendants, damaging the Bluegreen Owners' credit and harming Plaintiffs. *Id*. ¶¶ 71, 84-85.

As a result of the alleged scheme, Plaintiffs assert the following claims:

1. False Advertising in Violation of 15 U.S.C. § 1125(a)(1) (Against TTT, Brian Wilbur, and Holly Wilbur) (Count I);

2. Contributory False Advertising in Violation of 15 U.S.C. § 1125(a)(1) (Against Miller) (Count II);

3. False Advertising in Violation of 15 U.S.C. § 1125(a)(1) (Against TFG and Salkin) (Count III);

4. Contributory False Advertising in violation of 15 U.S.C. § 1125(a)(1) (Against Systema, Schroeder, Miller, Molfetta, and Molfetta Law) (Count IV);

5. Tortious Interference with Contractual Relations (Against TFG, Salkin, Systema, Schroeder, and Miller) (Count V);

6. Tortious Interference with Contractual Relations (Against TTT, Brian Wilbur, Holly Wilbur, and Miller) (Count VI);

7. Conspiracy to Commit Tortious Interference with Bluegreen's Timeshare Contracts (Against TFG, Salkin, Systema, Schroeder, Miller, Molfetta, and Molfetta Law) (Count VII);

8. Conspiracy to Commit Tortious Interference with Bluegreen's Timeshare Contracts (Against TTT, Brian Wilbur, Holly Wilbur, and Miller) (Count VIII);

9.  Violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Against TFG, Systema, Salkin, Schroeder, Miller, Molfetta, and Molfetta Law) (Count IX); and

10. Violation of FDUTPA – Injunctive Relief Only (Against TTT, Brian Wilbur, Holly Wilbur, and Miller) (Count X). *Id.* ¶¶ 178-298.

On June 15, 2021, Counsel for Salkin and TFG moved to withdraw from the case. ECF No. [116]. On June 16, 2021, the Court ordered Salkin to either retain counsel or notify the Court of his intention to proceed *pro se*. ECF No. [117] at 1. The Court warned Salkin that failure to comply with the Court's June 16, 2021 Order would result in entry of default. *Id.* at 2. Thereafter, Plaintiffs moved for sanctions pursuant to Rule 37 of the Federal Rules of Civil Procedure for Salkin's failure to respond to the Court's Discovery Order[2] that the Court entered following Salkin's attorney's withdrawal. *See* ECF No. [179]. Salkin failed to respond to the motion for sanctions, so the Court entered an Order to Show Cause why that motion should not be granted. ECF No. [198]. After Salkin did not respond to the Order to Show Cause, the Court granted Plaintiffs' Motion for Sanctions and struck Salkin's Answer and Affirmative Defenses, ECF No. [43]. ECF No. [266] at 2.

On August 16, 2021, the Clerk filed an Entry of Default as to TFG. ECF No. [161]. On October 4, 2021, the Court entered an order staying the case against TTT, Vindaloo Travel Network, LLC, Brian Wilbur, and Holly Wilbur upon Plaintiffs' Notice of Filing of Advisement of Bankruptcy, ECF No. [187]. ECF No. [188]. On January 5, 2022, Plaintiffs filed a Notice of Joint Liability of Defendants Systema and Schroeder. ECF No. [258]. On April 20, 2022, the Court entered an order of dismissal with prejudice as to Miller, ECF No. [325], upon a joint stipulation

---

[2] See ECF No. [119].

of dismissal with prejudice on all claims, ECF No. [324]. On February 23, 2023, the Court entered

an Order dismissing with prejudice Molfetta and Molfetta Law. ECF No. [551].

### A. TFG, Systema, and Salkin Admissions

Because the Court struck Salkin's pleading, Salkin has admitted the well-pled allegations

in the Amended Complaint. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) ("Rule

37(d) of the Federal Rules of Civil Procedure . . . allows the court to strike out pleadings and render

default judgment against the disobedient party."). Because TFG and Systema never answered or

responded to the Amended Complaint, they have also admitted the well-pled allegations. Fed. R.

Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation

is not denied."); *see also Granda v. Schulman*, 372 F. App'x 79, 84 (11th Cir. 2010) (observing

that Rule 8(b) provides that an allegation is admitted if a responsive pleading is required and the

allegation is not denied). Thus, the following allegations are deemed admitted.

Plaintiffs are Florida corporations headquartered in Boca Raton, Florida. ECF No. [270]

¶¶ 22, 23. Plaintiffs have contractual obligations with Bluegreen Owners. *Id.* ¶¶ 3-5, 231. The

Marketing Defendants operate as a timeshare exit company that induces Bluegreen Owners

through advertising into hiring TFG to "cancel" or "exit" their timeshare. *Id.* ¶¶ 1, 61, 99, 206,

218. The Marketing Defendants operate across the United States and use the internet, radio,

television, and telephonic sales presentations to advertise its services into Florida and elsewhere.

*Id.* ¶¶ 34, 48, 49, 66, 98, 164, 165. TFG is the primary user of the advertising and Systema actively

participates in TFG's advertising. *Id.* ¶ 97. TFG and Systema are operated by Salkin, who owns

both companies, and Schroeder. *Id.* ¶¶ 35, 176. Salkin personally directs and controls the actions

of TFG and Systema. *Id.* ¶¶ 35, 36. Salkin operates the active, internet-based operations of TFG

and Systema that solicited individuals in Florida. *Id.* ¶ 48.

After the Marketing Defendants and Bluegreen Owners enter into a contract, the Marketing Defendants instruct or persuade Bluegreen Owners to stop fulfilling their contractual payment obligations to Plaintiffs and do not advise Bluegreen Owners about the consequences of stopping payments to Plaintiffs. *Id.* ¶¶ 68, 71, 99. Thereafter, the timeshare interests are foreclosed for non-payment, and the Marketing Defendants falsely claim they successfully obtained a cancellation or exit of a Bluegreen Owner's timeshare contract despite taking no actions to lawfully obtain such cancellation or exit. *Id.* ¶¶ 70, 71. The Marketing Defendants guarantee that they "will get [Bluegreen Owners] completely out of [their] timeshare contract[s]." *Id.* ¶¶ 7, 10, 57, 70, 206. In fact, the Marketing Defendants cannot get Bluegreen Owners "completely out" of their timeshare contracts; rather, the Marketing Defendants simply induce Bluegreen Owners to stop paying on their timeshare contracts and collect large up-front fees. *Id.* ¶¶ 11, 14, 15, 17, 58, 59, 67, 68, 69, 71. The Marketing Defendants divide fees collected from Bluegreen Owners amongst themselves. *Id.* ¶ 33.

The Marketing Defendants advise Bluegreen Owners that ceasing payments to Plaintiffs on their timeshare contracts will assist in the "exit" from those contracts or, alternatively, that the Marketing Defendants' "exit" services allow Bluegreen Owners to cease their payments "legally" or "safely" to Bluegreen.  Such representations convince Bluegreen Owners that the Marketing Defendants' services are equivalent to legal representation. *Id.* ¶¶ 17, 18, 71, 73, 74. The Marketing Defendants engaged in advertising through their website, www.timesharefreegroup.com. *Id.* ¶¶ 161, 162. Salkin personally owns the domain name www.timesharefreegroup.com. *Id.* ¶¶ 34, 36, 65(a), 161. The Marketing Defendants' website contains a number of statements, including that the Marketing Defendants can cancel a timeshare "legally and permanently." *Id.* ¶¶ 167, 168, 169, 172, 173, 174, 206. The Marketing Defendants' website advertisements conceal from

Bluegreen Owners that the Marketing Defendants' "method" of cancelling timeshares is simply to procure a breach of the Bluegreen Owners' Timeshare Contracts with Plaintiffs. *Id.* ¶¶ 170, 171. As a result of the Marketing Defendants' efforts, some Bluegreen Owners ceased communicating with Plaintiffs. *Id.* ¶¶ 59, 75, 99, 238. In addition, Plaintiffs experienced financial loss due to the cessation of payments by Bluegreen Owners. *See id.* ¶¶ 21, 267, 286, 287.

### B.  Evidence of the Marketing Defendants' Profits

The record contains documents from TFG and Systema that include contracts between Bluegreen Owners and TFG, as well as "Client Lists" that describe payments tendered to TFG. ECF Nos. [568-3] – [568-4]; *see also* Decl. of Adriana L. Pfeiffer ("Pfeiffer Decl."), ECF No. [567-3] ¶ 4. Plaintiffs provide a spreadsheet that summarizes the documents and reflects the names of the Bluegreen Owners that entered into contracts with TFG, the date of those contracts, and the amount paid by each of those owners to TFG. *Id.* ¶¶ 6-14. The Court considered this evidence in calculating disgorgement damages. *See infra* III.C.1.

### C.  Amended Motion for Default Judgment

Plaintiffs move pursuant to Rule 55(b) of the Federal Rules of Civil Procedure for entry of default judgment against Defendants TFG, Systema, and Salkin as to Counts III, IV, V, VII, and IX of the Amended Complaint. ECF No. [567] at 2. Plaintiffs request that the Court enter an award of $717,472.00 in disgorgement damages against TFG and Systema, but not Salkin, and a permanent injunction, in the form of the proposed Final Permanent Injunction Order, ECF No. [567-1], against TFG, Systema, and Salkin. ECF No. [567] at 2. Plaintiffs explain that the Court can enter the requested default judgment and grant the relief Plaintiffs request because there are no other defendants "who are still litigating the merits of the claims that are jointly and severally liable for the requested [disgorgement] damages against TFG and Systema," so there is no possibility of inconsistent judgments. *Id.* Moreover, the Court can calculate the disgorgement

damages without an evidentiary hearing based on a review of the documents produced in this action that indicate TFG and Systema's sales. *Id.*

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a defendant who fails to plead or otherwise defend. Fed. R. Civ. P. 55(b)(2). "[B]efore entering a default judgment for damages, the district court must ensure that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007) (emphasis in original). "[A] default judgment cannot stand on a complaint that fails to state a claim." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted).

If the Complaint states a claim, the Court must then determine the amount of damages and, if necessary, "may conduct hearings . . . [to] determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). However, where all the essential evidence to determine damages is on the paper record, an evidentiary hearing on damages is not required. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005) ("Rule 55(b)(2) speaks of evidentiary hearings in a permissive tone . . . no such hearing is required where all essential evidence is already of record.") (citations omitted); *see also Evans v. Com. Recovery Sys., Inc.*, No. 13-61031-CIV, 2013 WL 12138555, at *1 (S.D. Fla. Aug. 26, 2013) ("following the entry of a default judgment, damages may be awarded 'without a hearing [if the] amount claimed is a liquidated sum or one capable of mathematical calculation,' so long as all essential evidence is a matter of record." (citation omitted)).

### III.    DISCUSSION

### A.  The Propriety of Entering Default Judgment

Plaintiffs assert default judgment as to the Marketing Defendants is appropriate because there is no possibility of inconsistent liability. ECF No. [567] at 11. Plaintiffs explain they are not alleging that the Marketing Defendants are jointly and severally liable with respect to any other Defendants in this case, *see* ECF No. [565], and that Plaintiffs have resolved their claims with respect to Schroeder, Miller, Molfetta, and Molfetta Law. *Id.* Moreover, Plaintiffs state that they are not seeking to impose joint and several liability against Salkin for any disgorgement damages award. *Id.*

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court is authorized to enter a final judgment of default against a party who has failed to plead in response to a complaint. "A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F. 3d 1298, 1307 (11th Cir. 2009) (quoting *Nishimatsu Const. Co., Ltd. v. Houston Nat'l Bank*, 515 F. 2d 1200, 1206 (5th Cir. 1975)); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987). If there are multiple defendants, the plaintiff must state in the motion for default final judgment that there are no allegations of joint and several liability and set forth the basis why there is no possibility of inconsistent liability. Generally, if one defendant is alleged to be jointly and severally liable with other defendants, judgment should not be entered against that defendant until the matter is adjudicated against the remaining defendants. *See* 10A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 2690 (3d ed. 1998) (citing *Frow v. De La Vega*, 82 U.S. 15 Wall. 552, 554, 21 L. Ed. 60 (1872) ("[A] final decree on the merits against the defaulting defendant alone, pending the continuance of the cause, would be incongruous and illegal.")). "Even when

defendants are similarly situated, but not jointly liable, judgment should not be entered against a defaulting defendant if the other defendant prevails on the merits." *Gulf Coast Fans, Inc. v. Midwest Elecs. Imp., Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984).

Here, Plaintiffs have resolved this action with respect to certain Defendants and have clarified that the Marketing Defendants are not jointly or severally liable with those Defendants against whom claims remain to be adjudicated that are in bankruptcy proceedings. ECF No. [565]. As such, there is no possibility of inconsistent liability between the Marketing Defendants and the other Defendants. The Court thus finds there is a sufficient basis in the pleading and the Motion for default judgment to be entered with respect to the Marketing Defendants. *Max'is Creations, Inc v. Individuals*, No. 21-CV-22920, 2022 WL 104216, at \*2 (S.D. Fla. Jan. 11, 2022) (finding there was no possibility of inconsistent liability where plaintiff stated there are no allegations of joint and several liability with respect to damages and the remaining Defendants in case either had not appeared or had defaulted).

### B. Default Judgment

#### 1. *Count III*

To establish liability for a false advertising claim under § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a), a plaintiff must establish the following:

> (1) the advertisements of the opposing party were false or misleading; (2) the advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the movant has been—or is likely to be—injured as a result of the false advertising.

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citation omitted).

a.      *False or Misleading Advertising*

The first element of a false advertising claim requires that Plaintiffs show the statements at issue were either "commercial claims that are literally false as a factual matter" or "claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 1261.

Here, Plaintiffs allege that the Marketing Defendants represent that they can "legally and permanently" cancel a Timeshare Contract. ECF No. [270] ¶¶ 167-69, 172-74, 206. In addition, the Marketing Defendants convinced Bluegreen Owners that the Marketing Defendants' "exit" services were the equivalent to legal representation. *Id.* ¶¶ 17, 18, 71, 73, 74. The Marketing Defendants told Bluegreen Owners that the "exit" services provide a free and clear exit from their Timeshare Contracts when their services induced those owners to breach the Timeshare Contracts, causing a foreclosure on the Bluegreen Owners' timeshare interest. *Id.* ¶¶ 170, 171. Moreover, the Marketing Defendants instructed or implied to Bluegreen Owners that they could stop making payments under the Timeshare Contracts, which resulted in those owners defaulting on their obligations. *Id.* ¶¶ 66-71. The Marketing Defendants' statements are literally false because they lacked the capacity to "cancel" a Timeshare Contract. In addition, it was misleading for the Marketing Defendants to imply that their service is equivalent to legal representation, and that Bluegreen Owners could stop making payments on their Timeshare Contracts without consequence. Thus, the Marketing Defendants engaged in false and misleading advertising.

b.      *Consumer Deception*

The second element requires that Plaintiffs establish that the advertising is deceptive or had the capacity to deceive consumers, which depends on whether the advertisement was "literally" false or "literally true but misleading." *Club Exploria, LLC v. Austin*, No. 618CV576ORL28DCI, 2020 WL 6585802, at *11 (M.D. Fla. Nov. 10, 2020) (citing *Johnson & Johnson Vision Care, Inc.*

*v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1247 (11th Cir. 2002)). If an advertisement is literally false, the plaintiff need not present evidence of consumer deception, but if the advertisement is literally true but misleading, the plaintiff must show the relevant consumer population was actually deceived. *Id.*

Here, the Court has determined the allegations in the Amended Complaint establish that TFG's advertising was literally false, and thus that advertising is deceptive as a matter of law. In addition, the allegations, accepted as true, establish that Bluegreen Owners were deceived into breaching their Timeshare Contracts. Thus, the advertisements necessarily deceived, or had the capacity to deceive, consumers.

c.   *Materiality*

The third element requires that the Marketing Defendants' deception "is likely to influence [a] purchasing decision." *Johnson & Johnson*, 299 F.3d at 1250 (quoting *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 311 (1st Cir. 2002)). Plaintiffs may establish the third element by adequately alleging that "the defendants misrepresented an inherent quality or characteristic" of their services. *See id.* (citing *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997)).

In this case, Plaintiffs allege that the Marketing Defendants represented to Bluegreen Owners that they could "legally" or "safely" cease their payments when in fact they could not. ECF No. [270] ¶¶ 17, 18, 71, 73, 74. In addition, the Marketing Defendants misrepresented their "exit" services as equivalent to legal representation. *Id.* The ability of the Marketing Defendants to lawfully "cancel" a Bluegreen Owner's Timeshare Contract is a core feature of the service that Defendants purport to provide, and thus the Marketing Defendants' literal falsehoods and misrepresentations are material.

12

d.      *Interstate Commerce*

The fourth element requires that Plaintiffs allege that the Marketing Defendants' services traveled in interstate commerce. *See Glob. Tech Led, LLC v. Hilumz Int'l Corp.*, No. 2:15-CV-553-FTM-29CM, 2017 WL 588669, at *7 (M.D. Fla. Feb. 14, 2017) (quoting *Third Party Verification, Inc. v. Signaturelink, Inc.*, 492 F. Supp. 2d 1314, 1324 (M.D. Fla. 2007). TFG is a California limited liability company, ECF No. [270] ¶ 34, and directs its advertisements to consumers across the country, including Florida, and operates a website that is freely accessible nationwide, *id.* ¶ 210. As such, the Court finds Plaintiffs adequately alleged that the advertisements traveled in interstate commerce.

e.      *Injury*

Plaintiffs adequately allege their injuries from the Marketing Defendants' advertisements. The Marketing Defendants' practices resulted in the loss of Plaintiffs' revenue that would have been received from Bluegreen Owners but for the Marketing Defendants' communications with Bluegreen Owners. ECF No. [270] ¶¶ 21, 213. Specifically, Plaintiffs allege that the Marketing Defendants instructed Bluegreen Owners to stop making payments owed to Bluegreen under the Timeshare Contracts, resulting in pecuniary losses in the form of payments owed to Bluegreen going delinquent. *Id.* ¶¶ 67-71.

Accordingly, TFG and Systema are liable for Count III.

f.      *Salkin's Individual Liability for the Marketing Defendants' Violations Under the Lanham Act*

Plaintiffs contend Salkin is individually liable for TFG and Systema's violations under the Lanham Act. ECF No. [567] at 14. The Eleventh Circuit has explained that an individual is liable under the Lanham Act if he or she actively participated as a moving force in the decision to engage in false advertisement. *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir. 2022).

Here, Plaintiffs allege that Salkin is the sole owner of TFG, is the final decisionmaker, and personally directs and controls the actions of TFG and Systema. ECF No. [270] ¶ 36. Salkin approves the advertising made by TFG and Systema by virtue of the position he holds in those companies. *Id.* ¶¶ 34, 36, 176, 223. Thus, Salkin is personally liable for TFG and Systema's false and misleading advertising.

Accordingly, Salkin is liable for Count III.

### 2. Count IV

Plaintiffs contend that Systema is liable for contributory false advertising under the Lanham Act. ECF No. [567] at 15. A plaintiff may bring a claim for contributory false advertising under § 43(a) of the Lanham Act. *Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1277 (11th Cir. 2015). To state a claim for contributory false advertising, "the plaintiff must show that a third party in fact directly engaged in false advertising that injured the plaintiff." *Id.* at 1277. The plaintiff must also allege that "the defendant contributed to that conduct either by knowingly inducing or causing the conduct, or by materially participating in it." *Id.*

Plaintiffs allege that Systema actively participated in TFG's advertising, including by conducting business through the trade name "Timeshare Freedom Group." ECF No. [270] ¶¶ 34-37, 97, 176, 220, 221, 226, 262, 265. In addition, the Court has determined that the allegations that TFG's advertising violated the Lanham Act are adequately pled. As such, Systema materially participated in the false and misleading advertising, so Systema is liable under Count IV.

### 3. Count IX

Plaintiffs assert the Marketing Defendants are liable under FDUTPA, Count IX. Section 501.211(1) of the Florida Statutes provides that "anyone aggrieved by a violation" of FDUTPA may enjoin a person who has violated, is violating, or is otherwise likely to violate FDUTPA. Fla. Stat. § 501.211(1). To plead a FDUTPA claim for injunctive relief, a party must allege (1) a

deceptive act or unfair practice and (2) that the party was "aggrieved" by that act or practice. *CareerFairs.com v. United Bus. Media LLC*, 838 F. Supp. 2d 1316, 1324 (S.D. Fla. 2011). A deceptive act or practice is "one that is likely to mislead consumers" and an unfair practice is one that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Hucke v. Kubra Data Transfer, Corp.*, 160 F. Supp. 3d 1320, 1328 (S.D. Fla. 2015).

To satisfy the first element of a FDUTPA claim, a party may allege either a traditional or a *per se* violation. *State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1300 (S.D. Fla. 2018). A *per se* violation is established in one of two ways: (1) if the "law, statute, rule, regulation, or ordinance" expressly constitutes a violation of FDUTPA, or (2) if the statute, rule, regulation, or ordinance proscribes unconscionable, deceptive or unfair acts or practices and thus operates as an implied FDUTPA predicate. *Id.* Some courts have held that a violation of a legal ethics rule can constitute a *per se* violation of FDUTPA. *E.g.*, *Wyndham Vacation Ownership, Inc. v. Sussman*, No. 6:18-CV-2171-GAP-DCI, 2021 WL 5177339, at *2 (M.D. Fla. Nov. 5, 2021) (citing *Kelly v. Nelson, Mullins, Riley & Scarborough, L.L.P.*, No. 8:01CV1176T27, 2004 WL 4054841, at *8-9 (M.D. Fla. Nov. 17, 2004)).

To be "aggrieved by" a deceptive act or practice, a plaintiff must show that its rights have been, are being, or will adversely be affected by an unfair or deceptive practice which is injurious to consumers. *Stewart Agency, Inc.*, 266 So. 3d 207, 214 (Fla. 4th DCA 2019). A person is not aggrieved if the injury the person claims is "merely speculative." *Id.*

   a.   *Deceptive Acts or Unfair Practices*

Plaintiffs argue the Marketing Defendants committed deceptive acts or unfair practices because they engaged in deceptive advertising in the form of false and misleading marketing claims. ECF No. [567] at 16. Plaintiffs also argue that the Marketing Defendants alleged referral

of Bluegreen Owners to Molfetta and Molfetta law is a *per se* violation of FDUTPA because such referrals violate the California Business and Professions Code § 6155. *Id.* at 17.

In the Amended Complaint, Plaintiffs allege the Marketing Defendants (1) told Bluegreen Owners that the Marketing Defendants could "legally and permanently" cancel their timeshare contracts when the Marketing Defendants in fact could not, ECF No. [270] ¶¶ 167-69, 172-74, 206, (2) implied their services are equivalent to legal representation when they do not in fact provide legal services, *id.* ¶ 169, and (3) claimed their services provide a free and clear exit from a Bluegreen Owners' Timeshare Contracts when those services are incapable of doing so and result in the Bluegreen Owners' default on their payment obligations, *id.* ¶¶ 170-71. Because some Bluegreen Owners defaulted on their payments in reliance on the Marketing Defendants' representations, those statements are necessarily misleading, and the Marketing Defendants' advertising communications therefore constitute deceptive acts. Because the Court finds Plaintiffs adequately alleged that the Marketing Defendants committed deceptive acts, it need not reach the issue of whether the Marketing Defendants' referrals violate the California Business and Professions Code, or whether such a violation is a *per se* violation of FDUTPA.

> b.   *Consumer Harm*

Plaintiffs allege that the Marketing Defendants procured Bluegreen Owners' nonpayment of their Timeshare Contracts, resulting in the breach, default, and termination of the Bluegreen Owners' timeshare interest, and damaged Bluegreen Owners' credit. *Id.* ¶ 21. Thus, Plaintiffs' allegation adequately states consumer harm. *See Tymar Distribution LLC v. Mitchell Grp. USA, LLC*, 558 F. Supp. 3d 1275, 1289 (S.D. Fla. 2021) ("plaintiffs must point to specific damages done to consumers in the market" to allege consumer harm under FDUTPA) (cleaned up).

*c.*      *"Aggrieved by"*

Plaintiffs allege they have suffered the loss of contractual payments from Bluegreen Owners that breached their contracts due to the Marketing Defendants' advertising. ECF No. [270] ¶¶ 67-72. The Marketing Defendants' disruption of Bluegreen's rights under the Timeshare Contracts adversely affects those rights, so Plaintiffs adequately allege they are aggrieved by the Marketing Defendants' deceptive advertising.

*d.*      *Salkin's Individual Liability for the Marketing Defendants' FDUTPA Violation*

Once the liability of an entity for a violation of FDUTPA is established, a plaintiff can establish the liability of an individual defendant who (1) participated in the deceptive acts or unfair practices that gave rise to the entity's liability or had control over those actions and (2) had knowledge of those acts or practices. *See FTC v. Gem Merch. Corp.*, 87 F.3d 466, 470 (11th Cir. 1996) (holding that, under Federal Trade Commission Act, once corporate liability was established, individual defendant who participated directly in the violations or had authority to control them and had knowledge of the practices was also liable); *see also KC Leisure, Inc. v. Haber*, 972 So. 2d 1069, 1074 (Fla. 5th DCA 2008) (holding that plaintiff adequately pled individual defendant's violation of FDUTPA by alleging defendant's Federal Trade Commission Act violations as officer and shareholder of defendant corporate entity). The Amended Complaint alleges Salkin is the owner and operator of TFG and Systema, was the final decisionmaker at those companies, and personally directs and controls the actions of those companies as well as provides the means by which the Marketing Defendants' false advertising is disseminated. ECF No. [270] ¶¶ 34, 36, 176, 223. Thus, Salkin directly participated in, had control of, and had knowledge of the false advertising. Salkin is therefore personally liable for the Marketing Defendants' violations of FDUTPA. Accordingly, Plaintiffs are entitled to entry of a default judgment on Count IX.

### 4. *Count V*

In a footnote, Plaintiffs contend they are entitled to default judgment on Count V for tortious interference with Timeshare Contracts. ECF No. [567] at 18 n.10. "The elements of a Florida law tortious interference with contractual relations claim are: (i) the existence of a contract; (ii) the defendant's knowledge thereof; (iii) the defendant's intentional and unjustified procurement of a breach thereof; and (iv) damages." *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1215 (11th Cir. 2018) (citation omitted). Plaintiffs adequately allege each element of Count V. First, Plaintiffs allege the existence of the Timeshare Contracts. ECF No. [270] ¶¶ 3-5. Second, Plaintiffs allege the Marketing Defendants' knowledge of those contracts, *id.* ¶ 232, as supported by the Plaintiffs' allegation that the Marketing Defendants directed Bluegreen Owners to stop making payments on the timeshare contracts and that such conduct was an improper and/or illegal means to interfere with Plaintiffs' contractual relations, *id.* ¶¶ 59, 236, 239. Third, Plaintiffs allege they were harmed on account of the loss of the payments owed from Bluegreen Owners who were induced to stop making payments on the Timeshare Contracts. *Id.* ¶ 99. Thus, default judgment is warranted on Count V.

### 5. *Count VII*

In the same footnote, Plaintiffs also contend they are entitled to default judgment on Count VII for conspiracy to commit tortious interference. ECF No. [567] at 18 n.10. A civil conspiracy claim requires: (1) "an agreement between two or more parties," (2) "to do an unlawful act or to do a lawful act by unlawful means," (3) "the doing of some overt act in pursuance of the conspiracy," and (4) "damage to plaintiff as a result of the acts done under the conspiracy." *Cordell Consultant, Inc. v. Money Purchase Plan & Tr.*, 561 F. App'x 882, 886 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997)).

Plaintiffs cite to specific allegations in the Amended Complaint, but those allegations are conclusory. Plaintiffs allege that the Marketing Defendants conspired to harm Plaintiffs and Bluegreen Owners, ECF No. [270] ¶ 6, Defendants are part of a scheme, *id.* ¶ 60, and the Marketing Defendants acted in concert with each other in furtherance of and to carry out the conspiracy, *id.* ¶ 177. *See* ECF No. [567] at 18 n.10. It is blackletter law that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). To the extent Plaintiffs rely on the specific allegations they cite in the Motion in support of their argument that the Marketing Defendants are liable for Count VII, those allegations are legal conclusions, and thus cannot support default judgment. Thus, the Court denies default judgment on Count VII.

### C. Remedies

Plaintiffs seek an award of disgorgement damages against the Defendants TFG and Systema and a permanent injunction against the Marketing Defendants.

#### 1. *Disgorgement Damages*

Plaintiffs contend that they are entitled to disgorgement damages equal to TFG and Systema's profits. ECF No. [567] at 19. Plaintiffs assert that they are required only to prove the Marketing Defendants' sales. *Id.* The Court agrees. 15 U.S.C. Section 1117(a) provides,

> When . . . a violation under section 1125(a) or (d) of this title . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover [] defendant's profits[.]

15 U.S.C. § 1117(a). Thus, monetary recovery is available for violations of the Lanham Act. *Nutrivida, Inc. v. Inmuno Vital, Inc.*, 46 F. Supp. 2d 1310, 1315 (S.D. Fla. 1998). The Lanham Act specifically allows for the recovery of a defendant's profits because actual damages are often difficult to prove. *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1353 (11th Cir. 2019). In assessing the amount of a defendant's profits, "the plaintiff shall be required to prove defendant's sales only," and the "defendant must prove all elements of cost or deduction claimed." *Nutrivida*, 46 F. Supp. 2d at 1315 (quoting 15 U.S.C. § 1117(a)).

The Court has reviewed the 728 pages of the records that Plaintiffs offer as evidence of the Marketing Defendants' sales. Those records reflect payments from a total of 138 Bluegreen Owners that range from $2,400.00 to $21,883.00. The Court calculates that those payments total $717,292.00 in sales.[3] The record does not contain evidence of the Marketing Defendants' costs or deductions. Thus, the Court concludes Plaintiffs earned $717,292.00 in profit due to their conduct. Because the Court arrived at this calculation upon a review of the record, it need not set an evidentiary hearing to determine disgorgement damages. *See Max'is Creations*, 2022 WL 104216, at *7 ("An evidentiary hearing is not necessary where there is sufficient evidence on the

---

[3] The Court performed the calculation as follows: It cross-referenced the Marketing Defendants' contracts and Client Lists in ECF Nos. [568-3] and [568-4] against Plaintiffs' spreadsheet summarizing Bluegreen Owners' payments to TFG and noted discrepancies. It then converted the spreadsheet into a Microsoft Excel document, corrected the discrepancies it found when reviewing the sales records, and applied the SUM function to obtain a total of sales. The Pfeiffer Declaration calculates that the Marketing Defendants' profits total $717,420.00. The difference in the sums calculated by the Court and the Pfeiffer Declaration is attributable to the fact that Blue Owner number 112's payment is listed in Plaintiffs' summary of Bluegreen Owner payments as equal to $7,534.20. However, the Court finds Bluegreen Owner number 112's payment is actually $7,354.20. *See* ECF No. [568-4] at 198.

record to support the request for damages."). Accordingly, the Court awards Plaintiffs $717,292.00 in disgorgement damages.

### 2. *Permanent Injunction*

Plaintiffs argue they are entitled to a permanent injunction against the Marketing Defendants to prevent future violations of the Lanham Act by engaging in false advertising. ECF No. [567] at 19-20. In addition, Plaintiffs argue they are similarly entitled to a permanent injunction under FDUTPA. *Id.* at 20. The Lanham Act provides that the court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Injunctive relief under the Lanham Act is appropriate upon the entry of a final default judgment. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004). A plaintiff seeking a permanent injunction must satisfy the following four-factor test before a court may grant such relief: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The Court addresses each factor in turn.

### a. *Irreparable Harm*

According to the Amended Complaint, the Marketing Defendants caused irreparable harm to Plaintiffs because the Marketing Defendants disrupted customer and other contractual relations, including by causing Bluegreen Owners to cease all communications with Plaintiffs. ECF No. [270] ¶¶ 76, 297. As a result, Bluegreen Owners' timeshare interests were foreclosed. *Id.* ¶¶ 70, 71. The Amended Complaint thus supports that the relationship between Plaintiffs and Bluegreen Owners is irreversibly severed, further supporting that Plaintiffs suffered irreparable harm. *Cf.*

*Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 616CV366ORL40KRS, 2017 WL 3584906, at *5 (M.D. Fla. July 21, 2017) (finding that defendant's deceptive conduct caused irreparable harm to plaintiff's goodwill).

     *b.*    *Adequate Remedy at Law*

Plaintiffs' Amended Complaint alleges that the Marketing Defendants' unlawful conduct is ongoing, which is adequately supported by the allegations that state a claim for false advertising and support the inference that the Marketing Defendants' conduct will continue to engage in the conduct if allowed to do so. ECF No. [270] ¶ 260. In other words, the allegations support that money damages will not prevent future harm. As such, Plaintiffs have no adequate remedy at law.

     *c.*    *Balance of Hardships*

The Marketing Defendants will suffer no cognizable hardship from being enjoined from disseminating false and deceptive advertising, an activity to which they are not entitled. Accordingly, Plaintiffs' irreparable harm that results from the Marketing Defendants' alleged ongoing activities outweighs the Marketing Defendants' lack of hardship.

     *d.*    *The Public Interest*

Because the Court has found that the Marketing Defendants' conduct, as alleged, is unlawful, enjoining such conduct serves the public interest, particularly by preventing the Marketing Defendants from continuing to harm consumers by deceiving them into paying exorbitant fees for illusory and unnecessary services whereby they are misled into wrongfully breaching their contracts with Plaintiffs. *See id.* ¶¶ 11, 14, 15, 17, 58, 59, 67, 68, 69, 71.

Accordingly, the Court finds Plaintiffs have satisfied the four-factor test set forth in *eBay* and are entitled to the entry of a final permanent injunction against the Marketing Defendants.

**IV.**    **CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiffs' Amended Motion for Default Judgment Against Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and Jordan Salkin, **ECF No. [567]**, is **GRANTED**;

2. The Court will separately enter an order of final permanent injunction as to TFG, Systema, and Salkin;

3. Plaintiffs' Motion for Default Judgment Against Defendant Jordan Salkin, **ECF No. [560]**, is **DENIED AS MOOT**; and

4. Plaintiffs' Motion for Default Judgment Against Defendants Freedom Consumer Services, LLC and Systema Marketing, Inc., **ECF No. [557]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 20, 2023.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record