UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-25318-BLOOM/Otazo-Reyes

BLUEGREEN VACATIONS UNLIMITED, INC.,
and BLUEGREEN VACATIONS CORPORATION,

    Plaintiffs,

v.

TIMESHARE TERMINATION TEAM, LLC,
*et al.*

    Defendants.
_____/

**ORDER ON FINAL PERMANENT INJUNCTION AS TO
FREEDOM CONSUMER SERVICES, LLC d/b/a TIMESHARE FREEDOM
GROUP, SYSTEMA MARKETING, INC., AND JORDAN SALKIN**

**THIS CAUSE** is before the Court on Plaintiffs Bluegreen Vacations Unlimited, Inc. and Bluegreen Vacations Corporation's ("Plaintiffs" or "Bluegreen") Amended Motion for Default Judgment Against Defendants Freedom Consumer Services, LLC ("TFG"), Systema Marketing, Inc. ("Systema"), and Jordan Salkin ("Defendants" or "Marketing Defendants"), ECF No. [567] ("Motion"). In an Order dated June 20, 2023 that was docketed on June 21, 2023 ("June 20, 2023 Order"), the Court found that Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and Jordan Salkin are liable for Counts III, V, IX of the Amended Complaint, ECF No. [270]; and that Systema is liable under Count IV. *See* ECF No. [571]. However, the Court found Defendants were not liable on Count VII. *See id.* In addition, the Court found Plaintiffs are entitled to $717,292.00 in disgorgement damages against TFG and Systema Marketing only and determined that Plaintiffs are entitled to a final permanent injunction against Defendants ("Permanent Injunction"). *See id.* The June 20, 2023 Order stated that the Court would separately

enter an order of final permanent injunction as to TFG, Systema, and Salkin. *Id.* at 22-23. Accordingly, the Court enters the Permanent Injunction, as set forth below.[1]

## I. FINDING OF FACT

In its June 20, 2023 Order, the Court detailed the allegations Defendants have admitted through their default, but it restates those allegations pursuant to Rule 65 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 65(d)(1) (requiring every injunction issued by a district court to state the reasons why the injunction issued).

Plaintiffs are Florida corporations headquartered in Boca Raton, Florida. ECF No. [270] ¶¶ 22, 23. Plaintiffs have contractual obligations with Bluegreen Owners. *Id.* ¶¶ 3-5, 231. The Marketing Defendants operate as a timeshare exit company that induces Bluegreen Owners through advertising into hiring TFG to "cancel" or "exit" their timeshare. *Id.* ¶¶ 1, 61, 99, 206, 218. The Marketing Defendants operate across the United States and use the internet, radio, television, and telephonic sales presentations to advertise their services into Florida and elsewhere. *Id.* ¶¶ 34, 48, 49, 66, 98, 164, 165. TFG is the primary user of the advertising and Systema actively participates in TFG's advertising. *Id.* ¶ 97. TFG and Systema are operated by Salkin, who owns both companies, and Schroeder. *Id.* ¶¶ 35, 176. Salkin personally directs and controls the actions of TFG and Systema. *Id.* ¶¶ 35, 36. Salkin operates the active, internet-based operations of TFG and Systema that solicited individuals in Florida. *Id.* ¶ 48.

After the Marketing Defendants and Bluegreen Owners enter into a contract, the Marketing Defendants instruct or persuade Bluegreen Owners to stop fulfilling their contractual payment obligations to Plaintiffs and do not advise Bluegreen Owners about the consequences of stopping payments to Plaintiffs. *Id.* ¶¶ 68, 71, 99. Thereafter, the timeshare interests are foreclosed for non-

---

[1] In addition the entry of the Permanent Injunction, this Order clarifies below the scope of the Court's entry of default against Defendants in its June 20, 2023 Order.

payment, and the Marketing Defendants falsely claim they successfully obtained a cancellation or exit of a Bluegreen Owner's timeshare contract despite taking no actions to lawfully obtain such cancellation or exit. *Id.* ¶¶ 70, 71. The Marketing Defendants guarantee that they "will get [Bluegreen Owners] completely out of [their] timeshare contract[s]." *Id.* ¶¶ 7, 10, 57, 70, 206. In fact, the Marketing Defendants cannot get Bluegreen Owners "completely out" of their timeshare contracts; rather, the Marketing Defendants simply induce Bluegreen Owners to stop paying on their timeshare contracts and collect large up-front fees. *Id.* ¶¶ 11, 14, 15, 17, 58, 59, 67, 68, 69, 71. The Marketing Defendants divide fees collected from Bluegreen Owners amongst themselves. *Id.* ¶ 33.

The Marketing Defendants advise Bluegreen Owners that ceasing payments on their timeshare contracts to Plaintiffs will assist in the "exit" from those contracts or, alternatively, that the Marketing Defendants' "exit" services allow Bluegreen Owners to cease their payments "legally" or "safely" to Bluegreen; such representations convince Bluegreen Owners that the Marketing Defendants' services are equivalent to legal representation. *Id.* ¶¶ 17, 18, 71, 73, 74. The Marketing Defendants engaged in advertising through their website, www.timesharefreegroup.com. *Id.* ¶¶ 161, 162. Salkin personally owns the domain name www.timesharefreegroup.com. *Id.* ¶¶ 34, 36, 65(a), 161. The Marketing Defendants' website contains a number of statements, including that the Marketing Defendants can cancel a timeshare "legally and permanently." *Id.* ¶¶ 167, 168, 169, 172, 173, 174, 206. The Marketing Defendants' website advertisements conceal from Bluegreen Owners that the Marketing Defendants' "method" of cancelling timeshares is simply to procure a breach of the Bluegreen Owners' Timeshare Contracts with Plaintiffs. *Id.* ¶¶ 170, 171. As a result of the Marketing Defendants' efforts, some Bluegreen Owners ceased communicating with Plaintiffs. *Id.* ¶¶ 59, 75, 99, 238. In addition,

Plaintiffs experienced financial loss due to the cessation of payments by Bluegreen Owners. *See id.* ¶¶ 21, 267, 286, 287.

## II. CONCLUSIONS OF LAW

The Lanham Act provides that the court "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). Injunctive relief under the Lanham Act is appropriate upon the entry of a final default judgment. *PetMed Express, Inc. v. MedPets.Com, Inc.*, 336 F. Supp. 2d 1213, 1223 (S.D. Fla. 2004). A plaintiff seeking a permanent injunction must satisfy the following four-factor test before a court may grant such relief: "(1) that it has suffered an irreparable injury; (2) that remedies available at law . . . are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

The Court has previously found that Plaintiffs have satisfied the *eBay* test, entitling them to entry of a final permanent injunction against Defendants. *See* ECF No. [571] at 21-22. Pursuant to Rule 65, the Court restates here its reasons for that finding.

### a. Irreparable Harm

According to the Amended Complaint in the above-styled action, the Marketing Defendants caused irreparable harm to Plaintiffs because the Marketing Defendants disrupted customer and other contractual relations, including by causing Bluegreen Owners to cease all communications with Plaintiffs. ECF No. [270] ¶¶ 76, 297. As a result, Bluegreen Owners' timeshare interests were foreclosed. *Id.* ¶¶ 70, 71. The Amended Complaint thus supports that the relationship between Plaintiffs and Bluegreen Owners is irreversibly severed, further supporting

that Plaintiffs suffered irreparable harm. *Cf. Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 616CV366ORL40KRS, 2017 WL 3584906, at *5 (M.D. Fla. July 21, 2017) (finding that defendant's deceptive conduct caused irreparable harm to plaintiff's goodwill).

b. *Adequate Remedy at Law*

Plaintiffs' Amended Complaint alleges that the Marketing Defendants' unlawful conduct is ongoing, which is adequately supported by the allegations that state a claim for false advertising and support the inference that the Marketing Defendants' conduct will continue if allowed to do so. ECF No. [270] ¶ 260. In other words, the allegations support that money damages will not prevent future harm. As such, Plaintiffs have no adequate remedy at law.

c. *Balance of Hardships*

The Marketing Defendants will suffer no cognizable hardship from being enjoined from disseminating false and deceptive advertising, an activity to which they are not entitled. Accordingly, Plaintiffs' irreparable harm that results from the Marketing Defendants' alleged ongoing activities outweighs the Marketing Defendants' lack of hardship.

d. *The Public Interest*

Because the Court has found in the June 20, 2023 Order that the Marketing Defendants' conduct, as alleged, is unlawful, enjoining such conduct serves the public interest, particularly by preventing the Marketing Defendants from continuing to harm consumers by deceiving them into paying exorbitant fees for illusory and unnecessary services whereby they are misled into wrongfully breaching their contracts with Plaintiffs. *See id.* ¶¶ 11, 14, 15, 17, 58, 59, 67, 68, 69, 71.

Accordingly, a final permanent injunction against Defendants is warranted.

### III.     DEFINITIONS

The following definitions apply to the terms of the Permanent Injunction set forth below. As used herein, "Bluegreen" means Plaintiffs, as well as all the subsidiaries and affiliated companies, resorts and related homeowners associations, of Plaintiffs, and any additional subsidiaries, affiliates, resorts and homeowner associations that may come into existence after entry of this Permanent Injunction.

As used herein, "TFG" means Freedom Consumer Services, LLC d/b/a Timeshare Freedom Group, along with any other entity of which TFG is or will become a part of, directly or indirectly, whether presently established or established in the future or of which TFG is engaged with as an employee, business partner, agent, or assign, as well as all the subsidiaries, affiliated companies, or related entities of the same.

As used herein, "Systema" means Systema Marketing, Inc., along with any other entity of which Systema is or will become a part of, directly or indirectly, whether presently established or established in the future or of which Systema is engaged with as an employee, business partner, agent, or assign, as well as all the subsidiaries, affiliated companies, or related entities of the same.

As used herein, "Bluegreen Interest" shall be interpreted broadly to include any Bluegreen timeshare interest, Bluegreen points-based program, or other Bluegreen vacation ownership interest of any kind, including but not limited to, all current Bluegreen timeshare products and all legacy products affiliated with Bluegreen.

As used herein, "Bluegreen Owner" means:

1. a person who owns a Bluegreen Interest; or

2. a person who has an existing payment obligation in favor of Bluegreen; or

3. a person who is otherwise an owner, member, renter, and/or guest (regardless of whether they have yet purchased a Bluegreen Interest) of any Bluegreen Interest, regardless of the form, in

   a. any resort acquired or developed by, or that becomes an affiliated resort of Bluegreen or any of its subsidiaries and/or affiliates after the entry of this Permanent Injunction, or

   b. any owner of a points-based timeshare ownership program denominated as a Bluegreen points-based program.

As used herein, "Third-Party Exit Company" or "TPE" refers to any individual or business that advertises, markets, solicits, or provides, or alleges to provide (whether valid or not), any product, service, plan, or program represented, whether expressly or by implication, to:

1. Cancel, rescind, terminate, or otherwise effectuate an exit from a Bluegreen Interest and/or any other timeshare interest;

2. Cancel, rescind, terminate, reduce, or otherwise alleviate any Bluegreen Owner's payment obligation to Bluegreen and/or any homeowners association managed by or affiliated with Bluegreen, whether based upon a promissory note, mortgage, maintenance fee, credit card agreement, or any other contract;

3. Assist any Bluegreen Owner in obtaining a refund of any payments made by the Bluegreen Owner to Bluegreen and associated with any Bluegreen Interest, including but not limited to, mortgage payments, maintenance fees, club dues, and/or the purchase price of the Bluegreen Interest;

4. Represent, negotiate, obtain, or arrange a surrender, quit claim transfer, transfer back to an association, or a deed-in-lieu of foreclosure of a Bluegreen Interest;

5. Offer or provide timeshare listing, resale, rental, financing, transfer, permanent or temporary trade-in, or other services or programs to any Bluegreen Owner;

6. Provide, whether for profit or not for profit, any Bluegreen Owner with draft correspondence to send to Bluegreen, a governmental entity, regulator, or any consumer advocacy group, drafts or templates of papers or pleadings to be filed or submitted in any court action commenced in regard to a Bluegreen Interest and/or any payment obligation in favor of Bluegreen, or otherwise give any assistance, whether in the provision of forms, templates, samples, instructions or otherwise to any Bluegreen Owner; or

7. Provide advice or assistance in regard to any Bluegreen Owner's credit record, including but not limited to, credit repair and debt validation services.

It is **ORDERED AND ADJUDGED** as follows:

1. TFG, Systema and Salkin, their officers, employees, agents, affiliated entitles, and successors, and all other persons who are in active concert or participation with any of them, whether currently known or subsequently identified, shall be **PERMANENTLY RESTRAINED AND ENJOINED** from, directly or indirectly:

    a. Directing, suggesting, advising, or inducing any Bluegreen Owner to stop making payments under their existing contracts, stop paying their loans, stop paying their maintenance fees, transfer their Bluegreen Interest, rescind or terminate their Bluegreen Interest, exit their Bluegreen Interest, or to otherwise violate or breach their Bluegreen Interest, timeshare contracts and/or memberships;

b. Assisting any other person or entity in making any statement, directly or by implication, that directs, encourages, or induces a Bluegreen Owner to stop making payments related to his or her Bluegreen Interest;

c. Marketing to, soliciting or in any way communicating with or assisting others in marketing to, soliciting or communicating with any Bluegreen Owner concerning their Bluegreen Interest, timeshare contract, and/or membership;

d. Preparing, causing to be prepared, or otherwise assisting any other person or entity to prepare, whether directly or indirectly, any correspondence directed to Bluegreen on behalf of any Bluegreen Owner;

e. Contracting with, engaging in, or offering any TPE services, as defined herein, for Bluegreen Owners in relation to their Bluegreen Interests, including without limitation, impersonating a Bluegreen Owner, or advising or coaching a Bluegreen Owner with regard to correspondence to be sent to Bluegreen or a regulatory or governmental agency concerning termination of any such Bluegreen Interest;

f. Referring or directing any Bluegreen Owner to other persons or entities who offer or provide services as a TPE, any law firm or attorney, or any other legal services organization related to their Bluegreen Interest, timeshare contracts and/or memberships;

g. Using Bluegreen's name or otherwise referring to Bluegreen in any mailer, promotion, online web content, correspondence, advertisements or statements;

    h. Contacting and/or having any communication, written or otherwise, with any Bluegreen employee[2] for any purpose related to obtaining contact information for Bluegreen Owners;

    i. Attempting to obtain, transmit, purchase, or sell Bluegreen Owner lists, check-in lists, sales records, or any proprietary or non-public Bluegreen business records or data, regardless of where such information was obtained.

2. TFG, Systema, and Salkin, their officers, agents, employees and/or those acting at their direction or in active concert and/or participation with any of them, directly or indirectly, are notified that any act in violation of any of the terms hereof may be considered and/or prosecuted as contempt of this Court. The Court shall retain jurisdiction over the parties to this Permanent Injunction and this case for the purpose of construing, interpreting, implementing, and enforcing the terms of this Permanent Injunction, including but not limited to the imposition of sanctions and civil fines as a result of any violation of the terms contained herein.

3. If any provision of this Permanent Injunction shall be held invalid or unenforceable, the remainder shall nevertheless remain in full force and effect. If any provision is held invalid or unenforceable with respect to particular circumstances, it shall nevertheless remain in full force and effect in all other circumstances.

4. The Court's June 20, 2023 Order, **ECF No. [571]**, is **CLARIFIED** as follows.

---

[2] For purposes of the Permanent Injunction, Bluegreen Employee shall mean any employee of Bluegreen. This includes any employee of a Bluegreen property, the corporate offices of Bluegreen, and any of the outside consultants, affiliates, and/or related entities that may have access to Bluegreen Owner information.

    a. Plaintiffs' Amended Motion for Default Judgment Against Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and Jordan Salkin, **ECF No. [567]**, is **GRANTED IN PART AND DENIED IN PART**.

    b. The Court grants entry of default judgment against Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and Jordan Salkin on Counts III, V, and IX.

    c. The Court grants entry of default judgment against Defendant Systema Marketing, Inc., on Count IV.

    d. The Court denies entry of default judgment against Defendants Freedom Consumer Services, LLC, Systema Marketing, Inc., and Jordan Salkin on Count VII.

    e. The Court awards Plaintiffs $717,292.00 in disgorgement damages against Defendants Freedom Consumer Services, LLC and Systema Marketing, Inc. only.

5. Plaintiffs are **DIRECTED** to serve Defendant Jordan Salkin a copy of the Court's June 20, 2023 Order, ECF No. [571], and this Order, and file a Notice of Compliance with this Order, by July 5, 2023.

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 21, 2023.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record